# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK;
COMMONWEALTH OF MASSACHUSETTS;
STATE OF ARIZONA; STATE OF
CALIFORNIA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
STATE OF ILLINOIS; STATE OF MAINE;
STATE OF MARYLAND; THE PEOPLE OF
THE STATE OF MICHIGAN; STATE OF
MINNESOTA; STATE OF NEW JERSEY;
STATE OF NEW MEXICO; STATE OF
OREGON; STATE OF RHODE ISLAND; and
STATE OF WASHINGTON,

               Plaintiff,

               v.

DONALD J. TRUMP, in his official capacity as
President of the United States; UNITED
STATES OF AMERICA; DEPARTMENT OF
THE INTERIOR; DOUGLAS BURGUM,
Secretary of the Interior, in his official capacity;
BUREAU OF OCEAN ENERGY
MANAGEMENT; WALTER
CRUICKSHANK, Acting Director of Bureau of
Ocean Energy Management, in his official
capacity; BUREAU OF LAND
MANAGEMENT; JONATHAN RABY, State
Director of the Bureau of Land Management, in
his official capacity; UNITED STATES FISH
AND WILDLIFE SERVICE; PAUL SOUZA,
Regional Director of the United States Fish and
Wildlife Service, in his official capacity;
DEPARTMENT OF COMMERCE; HOWARD
LUTNICK, Secretary of Commerce, in his
official capacity; NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION;
LAURA GRIMM, Chief of Staff of the
National Oceanic and Atmospheric
Administration, in her official capacity;

CASE NO. 1:25-cv-11221

NATIONAL MARINE FISHERIES SERVICE;
EUGENIO PIÑEIRO SOLER, Director of the
National Marine Fisheries Service, in his
official capacity; UNITED STATES ARMY
CORPS OF ENGINEERS; LIEUTENANT
GENERAL WILLIAM H. "BUTCH"
GRAHAM, JR., Chief of Engineers for the
United States Army Corps of Engineers, in his
official capacity; ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
Administrator of Environmental Protection
Agency, in his official capacity;
DEPARTMENT OF AGRICULTURE;
BROOKE ROLLINS, Secretary of Agriculture,
in her official capacity; DEPARTMENT OF
ENERGY; CHRIS WRIGHT, Secretary of
Energy, in his official capacity;
DEPARTMENT OF THE TREASURY; and
SCOTT BESSENT, Secretary of the Treasury,
in his official capacity,

Defendants.

## MEMORANDUM IN SUPPORT OF ALLIANCE FOR CLEAN ENERGY NEW YORK'S MOTION TO INTERVENE

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................1

II.  BACKGROUND ................................................................................................................2

   A.   The Wind Presidential Memorandum. ............................................................................ 2

   B.   ACE NY's Purpose and Mission. ................................................................................... 2

   C.   ACE NY's Member Companies and Their Wind Projects. ............................................. 3

   D.   The Present Litigation. ................................................................................................... 3

III. ARGUMENT ....................................................................................................................4

   A.   ACE NY Is Entitled to Intervene as of Right. ............................................................... 4

      1.   ACE NY's Motion Is Timely. ..................................................................................4

      2.   ACE NY's Members Have a Substantial, Direct Interest in the Subject of This
         Action. ....................................................................................................................5

      3.   ACE NY's Interest May Be Impaired or Impeded by the Disposition of This Action....7

      4.   Other Parties Do Not Adequately Represent ACE NY's Interests. ................................7

   B.   In the Alternative, the Court Should Exercise Its Discretion to Grant ACE NY Permissive
      Intervention. .................................................................................................................. 9

IV.  CONCLUSION ................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*
    440 F.3d 541 (1st Cir. 2006)................................................................. 8, 9

*Banco Popular de P.R. v. Greenblatt,*
    964 F.2d 1227 (1st Cir. 1992)................................................................. 5

*Conservation Law Found. of New England, Inc. v. Mosbacher,*
    966 F.2d 39 (1st Cir. 1992)................................................................. 4, 5, 7

*Daggett v. Comm'n on Governmental Ethics & Election Practices,*
    172 F.3d 104 (1st Cir. 1999)................................................................. 10

*In re Thompson,*
    965 F.2d 1136 (1st Cir. 1992)................................................................. 10

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d. Cir. 1998)................................................................. 5

*Natural Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977)................................................................. 8

*Strahan v. Sec'y, Mass. Exec. Office of Energy & Envtl. Affairs,*
    No. 19-cv-10639-IT, 2021 WL 621202 (D. Mass. Feb. 17, 2021)....................... 4, 10

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972)................................................................. 8

*Ungar v. Arafat,*
    634 F.3d 46 (1st Cir. 2011)................................................................. 4

**Other Authorities**

7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1909 (3d. ed. 2025)................................................................. 8

90 Fed. Reg. 8,363 (Jan. 29, 2025)................................................................. 1

**Rules**

Fed. R. Civ. P. 24(a)(2)................................................................. 5, 7

Fed. R. Civ. P. 24(b)................................................................. 9

## I.     INTRODUCTION

Alliance for Clean Energy New York (ACE NY) should be granted intervention in this suit to defend its members' interests as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or, alternatively, permissively pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). State Plaintiffs challenge agencies' sudden and indefinite prohibition of any new or renewed federal agency approvals needed for offshore and onshore wind energy projects nationwide pursuant to the Presidential Memorandum entitled *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*, 90 Fed. Reg. 8,363 (Jan. 29, 2025) (Presidential Memorandum). This Presidential Memorandum directs agencies to indefinitely abdicate wind energy federal permitting responsibilities assigned to them by their enabling statutes and implementing regulations. This directive and its implementation have violated, and continue to violate, the Administrative Procedure Act (APA), the Outer Continental Shelf Lands Act (OCSLA), and a host of other statutes and regulations. State Plaintiffs seek declaratory and injunctive relief that would enjoin agency implementation of the Presidential Memorandum and require agencies to resume their respective permitting responsibilities.

This stoppage of federal wind permitting has greatly impaired ACE NY's members' interests in developing wind energy projects and is causing those members irreparable harm. ACE NY's participation in this action is critical to protect its members' direct, substantial, and legally protected interests. Moreover, ACE NY and its members possess unique insight and information that will aid the court in resolution of this case, and its interests are distinct from those of the State Plaintiffs. Finally, ACE NY's motion is timely, and intervention would not

disrupt the proceedings or prejudice any parties. It follows that intervention as a matter of right is appropriate. Alternatively, ACE NY should be granted permissive intervention.

Counsel for ACE NY has met and conferred with counsel for the parties in this matter. State Plaintiffs do not oppose this motion. Federal Defendants reserve their position on intervention until they are able to review ACE NY's filings.

## II.    BACKGROUND

### A.    The Wind Presidential Memorandum.

The Presidential Memorandum orders a nationwide ban on wind energy development. It directs agencies to abruptly cease all wind energy permitting on private lands and public onshore and offshore lands and waters. Individual agencies have since implemented the Presidential Memorandum and ceased issuing approvals for wind projects nationwide. This has brought hundreds of critical wind energy projects to an immediate halt, jeopardizing billions of dollars in investment and hundreds of thousands of American jobs. The Presidential Memorandum cursorily posits that the wind permitting stoppage is necessary so that Defendant Agencies can address "alleged legal deficiencies" and "potential inadequacies" in various environmental reviews, despite such reviews comprising several years and thousands of pages of detailed analysis for each wind project. *Id.* The Presidential Memorandum offers no time frame for the completion of this assessment, and there have been no reported updates on its status.

### B.    ACE NY's Purpose and Mission.

ACE NY's mission is to promote the use of clean, renewable electricity technologies and energy efficiency in New York State to increase energy diversity and security, boost economic development, improve public health, and reduce air pollution. Wells Declaration ¶ 3. ACE NY's

members are a mix of private companies and non-profit organizations interested in promoting clean energy and creating opportunities for growth in New York's clean energy economy. *Id.*

### C.     ACE NY's Member Companies and Their Wind Projects.

ACE NY's members include offshore and land-based wind energy owners and developers, as well as manufacturers in the wind energy supply chain. *Id.* ACE NY's members cannot proceed with project development without leases, permits, rights-of-way, and other necessary authorizations from various federal agencies. *Id.* ¶ 13. Wind projects operate on tight development timelines to complete complex interdependent activities and are vulnerable to unexpected permitting delays. *Id.* ¶ 10. When unnecessary and unlawful uncertainty is injected into the permitting process, ACE NY's developer companies cannot advance their wind energy projects, make necessary business and investment decisions, or deliver on contractual obligations. *Id.* ¶ 10-16. Several of ACE NY's member companies face economic losses each day of the wind permitting stoppage. *Id.* ¶¶ 17, 24. Some developer-members face an imminent risk of needing to abandon projects and forfeit investments made to date. *Id.* ¶ 24. The uncertainty also has greatly disrupted the domestic supply chain. *Id.* ¶¶ 24-25. This has led to economic harms across the sector, which will continue if federal agencies can simply elect to cease issuing wind permitting decisions altogether. *Id.* ¶ 16.

### D.     The Present Litigation.

On May 5, 2025, State Plaintiffs filed this suit. ECF No. 1:25-cv-11221.  Plaintiffs request that the Court declare the Presidential Memorandum and its implementation unlawful and issue appropriate injunctive relief. State Plaintiffs Prayer for Relief ¶¶ 1-6.

### III.     ARGUMENT

#### A.     ACE NY Is Entitled to Intervene as of Right.

For a party to intervene as of right under Fed. R. Civ. P. 24(a)(2): (1) "[t]he application must be timely"; (2) "[t]he applicant must claim an interest relating to the property or transaction which is the subject of the action;" (3) "[d]isposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest;" and (4) "[t]he applicant must show that the interest will not be adequately represented by existing parties." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992) (citations omitted); *Strahan v. Sec'y, Mass. Exec. Office of Energy & Envtl. Affairs*, No. 19-cv-10639-IT, 2021 WL 621202, at *2 (D. Mass. Feb. 17, 2021). Given the "inherent imprecision of Rule 24(a)(2)'s individual elements," this Circuit applies the Rule 24(a) analysis "with an eye toward the commonsense view of the overall litigation." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011) (internal quotations and citations omitted).

The interests of ACE NY's members will be directly and uniquely impacted by the outcome of this lawsuit, and State Plaintiffs cannot adequately represent ACE NY's interests. Consequently, ACE NY is entitled to intervene in this action as of right.

#### 1.     ACE NY's Motion is Timely.

ACE NY's motion to intervene is timely. ACE NY promptly filed this motion to intervene two days after Plaintiffs filed their Complaint. Currently, Defendants have not responded to the Complaint, no substantive issues have been raised or decided, and the Court has not set a briefing schedule. Allowing ACE NY to intervene will not cause any disruption or delay to the case, given its infancy, and will therefore not prejudice any existing parties.  *See Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992) ("[T]he purpose of the

4

basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court.").

### 2. ACE NY's Members Have a Substantial, Direct Interest in the Subject of This Action.

As the owners, developers, and sponsors of the projects directly impacted by the stoppage of federal wind permitting at issue in this case, ACE NY's members possess "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Courts consistently have found that trade groups have a direct interest in the outcome of litigation where their members' business interests are threatened by the relevant government action. *See, e.g.*, *Conservation Law Found.*, 966 F.2d at 43 ("[F]ishing groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future."); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d. Cir. 1998) ("Timber companies have direct and substantial interests in a lawsuit aimed at halting logging . . . ."). The wind permitting stoppage challenged in this suit directly impacts ACE NY's members' wind project development timelines, existing investment interests, and day-to-day business activities.

For offshore projects, ACE NY's members hold leases on the Outer Continental Shelf and sponsor individual offshore wind energy projects thereon. To date, ACE NY's offshore member companies have invested billions to develop their leases and projects. Wells Decl. ¶ 18, 20. These developers face damages or penalties if they are unable to fulfill contractual obligations or reliably forecast when these projects will be completed and begin to generate revenue. *Id.* ¶ 18. The federal stoppage of wind permitting makes it impossible for these offshore wind companies to realize a return on investments made to date and puts these companies at substantial risk of financial losses. *Id.* ¶¶ 17-19.

Land-based wind developers' business activities are similarly threatened by the challenged government actions. ACE NY's land-based members have also made substantial investments in their projects and are incurring daily losses. *Id.* ¶ 24. To the extent that these members' land-based wind projects are subject to federal approvals, an opportunity to secure a return on these investments will only materialize if these members can obtain necessary federal permits and authorizations. *Id.* ¶ 23. If they must abandon their projects, they will not be able to deliver on contractual obligations and may incur substantial financial losses. *Id.* ¶¶ 22, 24.

Finally, the federal government actions challenged here are causing ACE NY member companies in the manufacturing and construction sectors to suffer direct and significant harm. *Id.* ¶¶ 25, 27. Due to the uncertainty as to when federal permitting will resume, investment in new projects has halted, and developers are not setting new construction timelines or entering into new construction or manufacturing contracts. *Id.* ¶ 15. Demand for specialized materials, equipment, and labor has plummeted. *Id.* ¶¶ 26, 28. Therefore, these stakeholders in the supply chain also have a concrete stake in this action.

These harms are ongoing, directly impact ACE NY and its members, and are capable of redress by this court. Notably, given the harms suffered and interests held by ACE NY's members, ACE NY would have independent standing to challenge the government actions here had it filed a separate lawsuit. However, any such separate action would likely be consolidated with this proceeding. Granting intervention at this juncture promotes judicial economy and protects the resources of all parties.

In sum, ACE NY is populated by a diverse set of members who have substantial business interests in wind projects directly impacted by the government actions that are challenged in this action.

6

### 3.     ACE NY's Interests May Be Impaired or Impeded by the Disposition of This Action.

ACE NY's members are "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). If Plaintiffs fail to obtain the relief they seek, further significant delays to the project development schedules will result. Wells Decl. ¶ 13-16, 19, 24. As noted above, ACE NY's member developers have complex commercial obligations, stringent construction timelines, and limited options in terms of contractor and material resources needed to complete construction. Consequently, delay leads to daily economic losses that may ultimately jeopardize the economic viability of projects and result in their abandonment. *Id.* ¶¶ 16, 24. Indeed, the viability of the land-based and offshore wind industries largely hinges on the outcome of this lawsuit. *Id.* ¶ 16. That urgency is underscored by State Plaintiffs' indicated intent to seek preliminary injunctive relief, and ACE NY's similar intent to support such relief.

In other words, if the State Plaintiffs do not prevail in this suit, an "adverse effect [to industry] is certain." *Conservation Law Found.*, 966 F.2d at 43. It is imperative that ACE NY defend the interests of industry in this litigation.

### 4.     Other Parties Do Not Adequately Represent ACE NY's Interests.

The Supreme Court has held that movant has a right to intervene in a suit where it "shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also* 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d. ed. 2025) ("[T]here is good reason in most cases to suppose that . . . one who is willing to bear the cost of separate representation may not be

adequately represented by the existing parties."). "One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (internal citations omitted). Here, no existing party adequately represents the unique interests of ACE NY and its members, who are best suited to speak to the direct, project-specific and industry-wide impacts of the federal wind energy permitting ban.

ACE NY possesses unique knowledge that will aid the court in determining appropriate relief. For example, while State Plaintiffs can speak to the irreparable harms the public will face if wind projects are abandoned (including a loss of reliable source of renewable energy, job losses, and lost tax revenues), they are not best suited to address why the government actions challenged here will cause disruptions to ongoing wind projects and harms to the broader wind industry and its suppliers. That issue requires a detailed understanding of complex factors such as project financing timelines, construction schedules, and contractor availability, which is information distinctively in the possession of ACE NY and its members. ACE NY and its members are also familiar with the extensive environmental analysis that government agencies have prepared for wind projects, as well as the numerous environmental safeguards that developers have put in place. *See, e.g., Natural Res. Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (allowing intervention where the companies' "experience and expertise in their relevant fields" can "contribute to the informed resolutions of these questions" by the district court).

Additionally, the "kind or degree" of ACE NY's members' interests is materially different from those of the State Plaintiffs. *B. Fernandez & Hnos.*, 440 F.3d at 546. The government's blanket and indefinite stoppage of wind permitting presents an existential threat to

the offshore and land-based domestic wind industries and the supply chains upon which these industries depend. Though State Plaintiffs experience substantial harm from delay or abandonment of wind projects, including potential electricity blackouts, job losses, and economic harms, those harms are distinct from industry harms. Moreover, because the future of the U.S. wind industry may be contingent on the outcome of this litigation, industry harms are potentially more concrete and acute than those of the State Plaintiffs. As such, ACE NY, an industry representative, has a right to intervene as a party to the case. *Cf. B. Fernandez & Hnos., Inc.*, 440 F.3d at 547 (cereal distributor faced a potentially more adverse impact from the litigation than cereal manufacturer).

Accordingly, this Court should grant ACE NY intervention to represent and protect its members' considerable, legally protected interests.

**B.      In the Alternative, the Court Should Exercise Its Discretion to Grant ACE NY Permissive Intervention.**

ACE NY easily satisfies the legal standard for permissive intervention as well: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

ACE NY's claims share common questions of law and fact with the main action. As outlined in its proposed Complaint in Intervention accompanying this motion, ACE NY's claims parallel those of State Plaintiffs in challenging the same wind permitting ban and asserting similar legal claims. Any administrative record filed by the government in this case will apply to both State Plaintiffs' and ACE NY's claims. Beyond that, this Court has "broad discretion" to grant intervention to ensure that a movant's interests are protected and where "intervention

9

would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992); *see also Strahan*, 2021 WL 621202, at *7 (considering "almost any factor rationally relevant" to grant permissive intervention where the motion did not prejudice or delay adjudication of the dispute between the original parties and where movant's defenses shared common questions of law and fact with the main action) (citation omitted)).

Because its members' wind projects cannot proceed without the withheld government approvals where necessary, ACE NY has a substantial and identifiable stake in the disposition of this action. And as a voice of the industry, ACE NY brings a unique perspective and technical expertise not represented by any existing parties to this action. *See Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999) ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention."). Finally, ACE NY's motion is timely, so its intervention will not unduly delay or prejudice the rights of any existing party to this action. As such, this Court at a minimum should grant ACE NY permissive intervention.

## IV.    CONCLUSION

For the foregoing reasons, ACE NY respectfully requests that the Court enter an order granting it leave to intervene in support of State Plaintiffs in this action and accept the accompanying proposed Complaint in Intervention for docket filing.

Dated: May 7, 2025.

Respectfully submitted,

BEVERIDGE & DIAMOND, P.C.

*/s/ Brook J. Detterman*
Brook J. Detterman, BBO No. 675396
James M. Auslander, *pro hac vice pending*
155 Federal Street

Suite 1600
Boston, MA 02110-1716
(617) 419-2345
bdetterman@bdlaw.com
jauslander@bdlaw.com

*Attorneys for Proposed Intervenor-Plaintiff*
*Alliance for Clean Energy New York*