UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Civil Action No. 1:25-cv-11221 |

**DECLARATION OF TUNIS MCELWAIN**

I, Tunis McElwain, hereby declare and state as follows:

1. I am the Deputy Chief and currently Acting Chief of the Regulatory Program for the U.S. Army Corps of Engineers ("Corps"). I have been the Deputy Chief for six years. The Corps is responsible for processing applications for permits under Section 404 of the Clean Water Act (CWA) and Section 10 of the Rivers and Harbors Act (as well as permissions under Section 14 of the Rivers and Harbors Act, also known as 408 permissions).

2. The Corps has adopted regulations concerning the processing and administrative appeals of both Section 404 and Section 10 permits. *See* 33 C.F.R. pts. 325, 331. Before issuing either a Section 404 or Section 10 permit, the Corps also conducts a public interest review (33 C.F.R. § 320.4(a)) as well as other requirements pursuant to 33 C.F.R. parts 320-332.

3. In evaluating a Section 404 permit application, the Corps considers a series of substantive criteria developed by the U.S. Environmental Protection Agency pursuant to Section 404(b)(1) of the CWA, known as the 404(b)(1) Guidelines. Regulations regarding these guidelines are at 40 C.F.R. part 230. The Corps also must comply with other federal

environmental laws before issuing a Section 404 and Section 10 permit, such as the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. Some discharge activities also require a certification from the affected state under section 401 of the CWA, 33 U.S.C. § 1341.

4. Wind-related projects currently represent less than 1% of the Corps' total pending actions.

5. I have been involved with the Regulatory Program's implementation of the January 20, 2025 Presidential Memorandum entitled *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (the "Presidential Memorandum") for the Corps.

6. In accordance with Section 2(a) of the Presidential Memorandum, the Corps has not issued new or renewed approvals, rights of way, permits, leases or loans for onshore or offshore wind projects consistent with the Presidential Memorandum. The Corps continues to evaluate and accept permit applications for proposed wind projects but does not intend to issue any permits until the comprehensive assessment discussed in Section 2(a) of the Presidential Memorandum is completed.

7. On February 5, 2025, the Corps paused the processing of permit applications for 168 renewable energy projects to ensure alignment with Executive Order 14154, *Unleashing American Energy*. That pause was lifted by February 6, 2025, for renewable energy projects not affected by the Presidential Memorandum.

8. The effect of the Presidential Memorandum on specific permit applications has varied depending on several factors, such as whether the Corps is the lead federal agency or a cooperating agency, the extent of impacts to waters associated with the project, the permit type,

and the need for coordination under other authorities (e.g., the Endangered Species Act and National Historic Preservation Act). Absent the Presidential Memorandum, however, most offshore wind projects would not have reached permit issuance in the near term, as environmental review and interagency coordination under various statutory authorities remains ongoing and incomplete.

9. In the case of SouthCoast Wind Energy LLC, for example, the FAST-41 final milestone to issue a permit under Section 404 of the Clean Water Act and Section 10 of the Rivers and Harbors Act was extended from March 27, 2025, to June 26, 2025, to September 24, 2025, and may require further extension as a result of the Presidential Memorandum. The U.S. National Oceanic and Atmospheric Administration is evaluating Marine Mammal Protection Act incidental take authorization and the U.S. Environmental Protection Agency is evaluating Clean Water Act Section 402 authorization associated with the project.

10. In the case of the Arthur Kill Terminal facility, the Corps paused publication of a notice opening a 30-day public comment period for Clean Water Act Section 404 and Rivers and Harbors Act Section 10 permits as a result of the Presidential Memorandum. Multiple other steps would need to occur before the Corps could issue a decision. The Corps would have to consider public comments, conduct an alternatives analysis under the 404(b)(1) guidelines, complete a public interest review, and hold a public hearing if requested. The U.S. Maritime Administration is the lead agency for National Environmental Policy Act review, and the Corps is waiting to see that agency's environmental assessment before a decision can be made on the permit application. The permit applicant must also obtain a certification under Section 401 of the Clean Water Act from the New York State Department of Environmental Conservation before the Corps could make a permit decision.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of May, 2025.

*Tunis W McElwain*
_____

Tunis W. McElwain