# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
ARIZONA; STATE OF CALIFORNIA;
STATE OF COLORADO; STATE
OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
STATE OF ILLINOIS; STATE OF MAINE;
STATE OF MARYLAND; THE
PEOPLE OF THE STATE OF MICHIGAN;
STATE OF MINNESOTA; STATE OF NEW
JERSEY; STATE OF NEW MEXICO;
STATE OF OREGON; STATE OF RHODE
ISLAND; and STATE OF WASHINGTON,

            Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States; UNITED
STATES OF AMERICA; DEPARTMENT
OF THE INTERIOR; DOUGLAS
BURGUM, Secretary of the Interior, in his
official capacity; BUREAU OF OCEAN
ENERGY MANAGEMENT;WALTER
CRUICKSHANK, Acting Director of Bureau
of Ocean Energy Management, in his official
capacity; BUREAU OF LAND
MANAGEMENT; JONATHAN RABY,
State Director of the Bureau of Land
Management, in his official capacity;
UNITED STATES FISH AND WILDLIFE
SERVICE; PAUL SOUZA, Regional
Director of the United States Fish and
Wildlife Service, in his official capacity;
DEPARTMENT OF COMMERCE;
HOWARD LUTNICK, Secretary of
Commerce, in his official capacity;
NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION;
LAURA GRIMM, Chief of Staff of the
National Oceanic and Atmospheric
Administration, in her official capacity;

Civil Action No. 1:25-cv-11221

NATIONAL MARINE FISHERIES
SERVICE; EUGENIO PIÑEIRO SOLER,
Director of the National Marine
Fisheries Service, in his official capacity;
UNITED STATES ARMY CORPS OF
ENGINEERS; LIEUTENANT GENERAL
WILLIAM H. "BUTCH" GRAHAM, JR.,
Chief of Engineers for the United
States Army Corps of Engineers, in his
official capacity; ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
Administrator of Environmental Protection
Agency, in his official capacity;
DEPARTMENT OF AGRICULTURE;
BROOKE ROLLINS, Secretary of
Agriculture, in her official capacity;
DEPARTMENT OF ENERGY; CHRIS
WRIGHT, Secretary of Energy, in his official
capacity; DEPARTMENT OF THE
TREASURY; and SCOTT BESSENT,
Secretary of the Treasury, in his official
capacity,

                    Defendants.

## DECLARATION OF TRAVIS VOYLES
### ASSISTANT DEPUTY ADMINISTRATOR OF U.S. ENVIRONMENTAL PROTECTION AGENCY

1.  I, Travis Voyles, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information contained in the records of the United States Environmental Protection Agency ("EPA" or "the Agency"), or information supplied to me by EPA employees under my supervision at EPA. *See* 28 U.S.C. § 1746. 2.

2.  I am the Assistant Deputy Administrator of the EPA. I have held this position since January 20, 2025.

3.  In my role as Assistant Deputy Administrator for EPA, I am responsible for overseeing implementation of federal environmental laws administered by EPA and Executive Orders applicable to EPA.

4.  The Agency has not issued any guidance on implementation of Section 2(a) of the January 20, 2025, Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*.

5.  The Agency continues to review air and water permit applications related to wind power projects and is continuing to conduct certain activities associated with permit application reviews for many projects but has not issued proposed actions for public comment or final actions.

6.  The federal Clean Water Act ("CWA") is codified at 33 U.S.C. §§ 1251–1387. The CWA is intended to protect "the chemical, physical, and biological integrity of the Nation's water." 33 U.S.C. § 1251(a). To fulfill this objective, the CWA generally prohibits "the discharge of any pollutant by any person." *Id.* § 1311(a). This prohibition is subject to certain exceptions, one of which is described below.

7.  The Administrator may issue a National Pollutant Discharge Elimination System (NPDES) permit for the discharge of any pollutant with certain conditions on the discharge, pursuant to Section 402(a) of the CWA. *See* 33 U.S.C. § 1342(a). *See also* 40 C.F.R. § 122.1. Any State may submit to EPA a proposal to administer the NPDES program under state law, for discharges within its jurisdiction, and EPA must approve a proposed state program that meets certain statutory criteria. 33 U.S.C. 1342(b). EPA administers the NPDES program for discharges of pollutants to waters outside of state jurisdiction (*i.e.*, to federal waters).

8. Neither the CWA nor EPA's CWA regulations specify a specific, enforceable timeline by which final NPDES permits must be issued for either new or existing facilities.

9. According to EPA regulations at 40 C.F.R. § 124.3(c), within 30 days of receiving an NPDES permit application, EPA shall inform the applicant whether its application is complete. This is not a deadline for issuance of the final permit.

10. For permit applications submitted by a "major new discharger," EPA regulations specify that no later than the "effective date of the application," which is defined as the date that EPA finds the application complete, *see* 40 C.F.R. § 124.3(f), EPA shall provide a "project decision schedule" with "target dates" for issuance of the draft permit, completion of the public review process, and issuance of the final permit. See 40 C.F.R. §§ 124.3(g)(1)–(4). In accordance with the regulations, this schedule is comprised of "target dates," not enforceable deadlines.

11. Following receipt of a complete permit application, where EPA is the permitting authority, EPA decides whether to prepare a draft permit and accompanying "fact sheet," 40 C.F.R. §§ 124.3(a); 124.6(a), (d) and (e); 124.8(a), which is then subject to a public comment period of at least 30 days, *id.* § 124.10(b)(1). In some cases, EPA holds a public hearing on the draft permit in accordance with 40 C.F.R. § 124.12. After its review of public comments, EPA issues a final permit decision and a response to comments. 40 C.F.R. §§ 124.15(a) and 124.17(a). While EPA may issue many final individual NPDES permits within one year after the preparation of a draft permit, it is not unusual for permits to take up to a year or more for final issuance following the draft permit stage.

12. If issued, the final permit decision becomes effective 30 days later, unless the permitting office sets a later effective date or review by the EPA Environmental Appeals Board ("EAB") is requested. *Id.* at § 124.15(b). Established in 1992, the EAB is an impartial appellate tribunal

tasked with *inter alia* adjudicating permit appeals. *See* 86 Fed. Reg. 31172, 31172 (June 11, 2021) (citing 57 Fed. Reg. 5320 (Feb. 13, 1992)). If EAB review is requested, a permit decision is not final until after that review is completed and the final permit decision is issued by the permitting office. *Id*. § 124.19(l).  After EAB review, permit decisions are subject to judicial review in federal circuit courts pursuant to 33 U.S.C. § 1369(b)(1).

13. For the SouthCoast Wind offshore wind energy project, the project's offshore electrical converter station requires an NPDES permit to authorize its pollutant discharges and cooling water withdrawals. SouthCoast Wind, therefore, submitted a permit application to EPA Region 1, as the permitting authority for discharges to federal waters off the coast of New England. On September 29, 2023, EPA Region 1 found the applicant's permit application to be complete, and on October 3, 2024, EPA issued the draft NPDES permit for SouthCoast Wind converter station for public comment (NPDES Permit No. MA0006018). https://www.epa.gov/system/files/documents/2024-10/draftma0006018permit-2024.pdf.   On November 4, 2024, EPA held a public hearing to take oral comments on the draft permit. The comment period closed on November 6, 2024.  *Id.*

14. EPA received a substantial volume of public comments from many interested stakeholders raising a variety of issues and viewpoints on the draft permit. The comments relate, for example, to the proposed siting of the converter station, the choice of technology for the converter station's cooling water intake structures, the proper application of EPA cooling water intake structure regulations, the assessment of environmental impacts from the converter station's cooling water withdrawals and pollutant discharges, and more.

15. Since the public comment period closed, EPA has been working on considering, and writing responses to, the comments received. *See* 40 C.F.R. § 124.17. EPA has not yet finished this work.

16. The SouthCoast Wind offshore wind energy project is a covered project under Title 41 of the Fixing America's Surface Transportation Act ("FAST-41"). Pursuant to the FAST-41 permitting timetable for this project, EPA had a March 27, 2025, completion date for issuance of the final NPDES permit. Consistent with FAST-41, EPA sought a modification of that permitting timetable milestone to move it to June 25, 2025. In accordance with the process specified in FAST-41 for modifying permitting timetable milestones, BOEM submitted the modification request to the Permitting Council on EPA's behalf. The request explained that "[t]his extension of time is necessary for EPA to adequately consider and respond to the many complex public comments it received in response to the draft permit issued in October 2024." The request also explained that "[t]he extension of the milestone date will also enable EPA to evaluate the applicability of the January 20, 2025, Presidential Memorandum, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects – The White House, to this permitting action." On February 26, 2025, the Permitting Council extended the completion date for the final NPDES permit to June 25, 2025. A true and correct copy of that decision is attached as Exhibit 1.

17. In late April 2025, while continuing to work on considering public comments on the draft NDPES permit for the SouthCoast Wind project, EPA decided that it should seek another modification of the completion date for the final permit. Recognizing that a completion date cannot be modified within 30 days of that date, *see* 42 U.S.C. §§ 4370m-2(c)(2)(D)(ii), EPA

decided that it should seek another extension of the final NPDES permit completion date. On May 5, 2025, BOEM submitted the request to the Permitting Council on EPA's behalf. The request explained EPA's desire to extend the June 25, 2025 NPDES permit completion date to September 23, 2025, as being based on the need for "additional time to evaluate the applicability of the January 20, 2025, Presidential Memorandum, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects – The White House (the "Offshore Wind Presidential Memorandum"), prior to taking final action on the NPDES permit application." On May 23, 2025, the Permitting Council extended the completion date for the final NPDES permit to September 23, 2025. A true and correct copy of that decision is attached as Exhibit 2.

18. The federal Clean Air Act is codified at 42 U.S.C. § 7401 et seq. The Clean Air Act requires that the EPA establish requirements to control air pollution from Outer Continental Shelf (OCS) sources off of the Pacific and Atlantic Coasts, and portions of the Arctic and Gulf Coasts. 42 U.S.C. § 7627(a)(1).  For such sources located within 25 miles of a state's seaward boundary, such requirements shall be the same as would be applicable if the source were located in the corresponding onshore area.  *Id.*  States may request delegated authority from EPA to implement and enforce these requirements. *Id.* § 7627(a)(3).

19. EPA's regulations implementing the OCS provisions of the Clean Air Act ("CAA") are set forth in 40 C.F.R. Part 55.  These regulations incorporate by reference Prevention of Significant Deterioration, Nonattainment New Source Review, and Clean Air Act Title V permitting requirements, among others.  40 C.F.R. §§ 55.13, 55.14, and Appendix A to Part 55.  Part 55 requires air permitting for the construction and operation of OCS sources.  40 C.F.R. § 55.6.

EPA follows the administrative procedures of 40 C.F.R. part 71 or 40 C.F.R. part 124 (the procedures for PSD permits) in processing applications for OCS air permits. 40 C.F.R. § 55.6(a)(3). In either case, EPA issues a draft permit, accepts public comment and may hold a public hearing, and responds to public comment when issuing a final permit decision. 40 C.F.R. §§ 71.11 & 124.6-124.15. Any final permit is subject to review first by the EAB and then federal circuit courts. *See* 42 U.S.C. § 7607(b)(1). An appeal to the EAB defers final agency action on the permit application. 40 C.F.R. § 124.19(*l*).

20. With respect to OCS air permit applications for sources subject to the Clean Air Act's Prevention of Significant Deterioration requirements, generally, EPA should make determinations as to the completeness of permit applications within 30 days. 40 C.F.R. § 124.3(c). Under the CAA, EPA must grant or deny a PSD construction permit within one year of receiving a complete permit application. 42 U.S.C. § 7475(c).

21. With respect to OCS air permit applications for sources subject to the Clean Air Act's Title V requirements, generally, EPA must make determinations as to the completeness of permit applications within 60 days. *See* 40 C.F.R. §§ 71.5(a)(2), 71.7(a)(4). EPA must issue or deny a Title V operating permit within 18 months of receiving a complete permit application. 42 U.S.C. § 7661b(c).

22. With respect to the Atlantic Shores South Project, EPA Region 2 issued an OCS air permit for Atlantic Shores Project 1 and Project 2 on September 30, 2024, which was appealed to the EAB by a group called Save Long Beach Island, Inc. on October 15, 2024 (EAB Appeal No. OCS 24-01). EPA Region 2 submitted to the EAB a Motion for Voluntary Remand of the permit on Feb. 28, 2025, indicating on page 4 of its Motion that it sought remand in order to:

[I]nclude this permit application in the comprehensive review of permitting

practices called for in the Memorandum. . .. As part of this review, Region 2

intends to confer with other executive branch agencies regarding further

evaluation of various impacts that may result from the Project, including impacts

on birds, wildlife, fishing, and other relevant environmental concerns described

in the Presidential Memorandum.

23. The EAB granted EPA Region 2's Motion for Voluntary Remand on March 14, 2025, and

denied an Atlantic Shores Offshore Wind, LLC motion seeking reconsideration of the remand

on April 15, 2025. A true and correct copy of the EAB's remand order is attached as Exhibit 3,

and a true and correct copy of the EAB's decision denying reconsideration is attached as

Exhibit 4. The OCS air permit application is now with EPA Region 2 for further review.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2025, in New York City, New York.

TRAVIS
VOYLES

Digitally signed by
TRAVIS VOYLES
Date: 2025.05.29
14:27:06 -04'00'

Travis Voyles
Assistant Deputy Administrator
U.S. Environmental Protection Agency

Exhibit 1



**Permitting Council**

Where projects see progress

**Executive Director Determination on Request to Extend FAST-41
Final Completion Date by More Than 30 Days**

**February 26, 2025**

**SouthCoast Wind Energy Project — NPDES Permit**

**I.      Summary**

The SouthCoast Wind Energy Project (Project), sponsored by Ocean Winds North America, LLC on behalf of SouthCoast Wind Energy, LLC (Project Sponsor), is a covered project under Title 41 of the Fixing America's Surface Transportation Act (FAST-41), 42 U.S.C. §§ 4370m. The Department of the Interior, Bureau of Ocean Energy Management (BOEM), has principal responsibility for environmental review of the Project under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321, which makes BOEM the lead agency for both NEPA and FAST-41.

BOEM submitted a request to the Federal Permitting Improvement Steering Council Executive Director (Executive Director) to extend the final completion date for a National Pollutant Discharge Elimination System (NPDES) permit decision under Section 402 of the Clean Water Act from the Environmental Protection Agency (EPA). This is the third extension request for final completion dates on the Project's permitting timetable.[1]

For the following reasons, BOEM's extension request is **GRANTED**, and the Project permitting timetable will be revised accordingly.

**II.     Legal Standard**

Pursuant to 42 U.S.C. §§ 4370m-2(c)(2)(D)(i)(II) & (IV), a lead agency may extend a final completion date by more than 30 days beyond the original final completion date only after consulting with the project sponsor and obtaining Executive Director approval. After receiving an extension request, the Executive Director must consult with the project sponsor and make a determination on the record whether to grant the requested date change. The Executive Director's determination is based on consideration of "relevant factors," including, but not limited to:

      **(i)**      the size and complexity of the covered project;
      **(ii)**     the resources available to each participating agency;
      **(iii)**    the regional or national economic significance of

---

[1]  The previous Executive Director Determinations approving permitting timetable modifications are available here:
2023-11-30 SouthCoast Executive Director Determination
2024-4-23 SouthCoast Executive Director Determination



the project;

    **(iv)**    the sensitivity of the natural or historic resources that may be affected by the project;

    **(v)**    the financing plan for the project; and

    **(vi)**    the extent to which similar projects in geographic proximity to the project were recently subject to environmental review or similar procedures under State law.

42 U.S.C. §§ 4370m-2(c)(2)(B) and 4370m-2(c)(2)(D)(i)(IV). Executive Director determinations made pursuant to 42 U.S.C. § 4370m-2(c)(2)(D)(i)(IV) are not subject to judicial review. 42 U.S.C. § 4370m-2(c)(2)(D)(iv)(I).

## III.    Background

BOEM, on behalf of EPA, requests to modify the final NPDES permit completion date from March 27, 2025, to June 25, 2025. EPA needs additional time to evaluate the applicability of the January 20, 2025, Presidential Memorandum, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects – The White House (the "Offshore Wind Presidential Memorandum"), to issuance of the final NPDES permit decision.[2]

<u>Consultation with Project Sponsor on Extension Requests</u>

Prior to submitting an extension request to the Executive Director, BOEM consulted with the Project Sponsor per 42 U.S.C. § 4370m-2(c)(2)(D)(i)(I) and represents that the Project Sponsor would prefer a 30-day rather than a 90-day extension of the NPDES final completion date.

The Executive Director also consulted with the Project Sponsor, as required by 42 U.S.C. § 4370m-2(c)(2)(D)(i)(IV), and similarly found that the Project Sponsor objects to the requested permitting timetable modification.

## IV.    Discussion

The Offshore Wind Presidential Memorandum directs that agencies shall not issue new permits for offshore wind projects "pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices" led by the Secretary of the Interior in consultation with a number of agencies, including EPA. Given the need to assess applicability and implementation of the Presidential Memorandum, extending EPA's final NPDES permit decision date is warranted.

---

[2] <u>Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects – The White House</u>

## IV.    Determination

BOEM's extension request is **GRANTED**, and the permitting timetable is revised as requested.

Manisha D. Patel
Executive Director (Acting)
Federal Permitting Improvement Steering Council

 permitting.gov

Exhibit 2



Where projects see progress

**Executive Director Determination on Request to Extend FAST-41
Final Completion Date by More Than 30 Days**

**May 23, 2025**

**SouthCoast Wind Energy Project — NPDES Permit**

**I.      Summary**

The SouthCoast Wind Energy Project (Project), sponsored by Ocean Winds North America, LLC on behalf of SouthCoast Wind Energy, LLC (Project Sponsor), is a covered project under Title 41 of the Fixing America's Surface Transportation Act (FAST-41), 42 U.S.C. §§ 4370m. The Department of the Interior, Bureau of Ocean Energy Management (BOEM), has principal responsibility for environmental review of the Project under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321, which makes BOEM the lead agency for both NEPA and FAST-41.

BOEM submitted a request to the Federal Permitting Improvement Steering Council Executive Director (Executive Director) to extend the final completion date for a National Pollutant Discharge Elimination System (NPDES) permit decision under Section 402 of the Clean Water Act from the Environmental Protection Agency (EPA). This is the fourth extension request for final completion dates on the Project's permitting timetable.[1]

For the following reasons, BOEM's extension request is **GRANTED**, and the Project permitting timetable will be revised accordingly.

**II.      Legal Standard**

Pursuant to 42 U.S.C. §§ 4370m-2(c)(2)(D)(i)(II) & (IV), a lead agency may extend a final completion date by more than 30 days beyond the original final completion date only after consulting with the project sponsor and obtaining Executive Director approval. After receiving an extension request, the Executive Director must consult with the project sponsor and make a determination on the record whether to grant the requested date change. The Executive Director's determination is based on consideration of "relevant factors," including, but not limited to:

        **(i)**      the size and complexity of the covered project;
        **(ii)**      the resources available to each participating agency;

---

[1] The previous Executive Director Determinations approving permitting timetable modifications are available here:
2023-11-30 SouthCoast Executive Director Determination
2024-4-23 SouthCoast Executive Director Determination
2025-02-26 SouthCoast Executive Director Determination



    **(iii)**    the regional or national economic significance of the project;

    **(iv)**    the sensitivity of the natural or historic resources that may be affected by the project;

    **(v)**    the financing plan for the project; and

    **(vi)**    the extent to which similar projects in geographic proximity to the project were recently subject to environmental review or similar procedures under State law.

42 U.S.C. §§ 4370m-2(c)(2)(B) and 4370m-2(c)(2)(D)(i)(IV). Executive Director determinations made pursuant to 42 U.S.C. § 4370m-2(c)(2)(D)(i)(IV) are not subject to judicial review. 42 U.S.C. § 4370m-2(c)(2)(D)(iv)(I).

## III.    Background

BOEM, on behalf of EPA, requests to modify the final NPDES permit completion date from June 25, 2025 to September 23, 2025, based on the January 20, 2025, Presidential Memorandum, "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects," (the "Presidential Memorandum").[2] Section 2(a) of the Presidential Memorandum provides that "the Administrator of the Environmental Protection Agency . . . shall not issue new or renewed . . . permits . . . for onshore or offshore wind projects pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices." The Presidential Memorandum directs the Secretary of the Interior to lead the assessment and review.

<u>Consultation with Project Sponsor on Extension Requests</u>

Prior to submitting an extension request to the Executive Director, BOEM consulted with the Project Sponsor per 42 U.S.C. § 4370m-2(c)(2)(D)(i)(I) and represents that the Project Sponsor would prefer a 30-day rather than a 90-day extension of the NPDES final completion date.

The Executive Director also consulted with the Project Sponsor, as required by 42 U.S.C. § 4370m-2(c)(2)(D)(i)(IV), and similarly found that the Project Sponsor objects to the extension. The Project Sponsor noted that there is pending litigation in which plaintiffs are seeking a preliminary injunction against the Presidential Memorandum. However, any decision in that matter is expected after the deadline by which the lead agency must extend the final completion date at issue. The Project Sponsor further represents that a 90-day extension could cause harm insofar as it interferes with the Project Sponsor's ability to make use of its Lease.

---

[2] <u>Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects – The White House</u>

## IV.    Discussion

The Offshore Wind Presidential Memorandum directs that agencies shall not issue new permits for offshore wind projects "pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices" led by the Secretary of the Interior in consultation with a number of agencies, including EPA. Given the need to assess applicability and implementation of the Presidential Memorandum, extending EPA's final NPDES permit decision date is warranted.

## IV.    Determination

BOEM's extension request is **GRANTED**, and the permitting timetable is revised as requested.

Manisha D. Patel
Executive Director (Acting)
Federal Permitting Improvement Steering Council

Exhibit 3

F I L E D

**Mar 14, 2025**

Clerk, Environmental Appeals Board

INITIALS _____ *TLM*

**ENVIRONMENTAL APPEALS BOARD**
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C.**

|  |  |
|---|---|
| ) | |
| ) | |
| In re Atlantic Shores Offshore Wind, LLC ) | OCS Appeal No. 24-01 |
| ) | |
| Permit No. OCS-EPA-R2 NJ 02 ) | |
| ) | |
| ) | |

**ORDER GRANTING MOTION FOR VOLUNTARY REMAND**

On October 15, 2025, Petitioner Save Long Beach Island, Inc. ("SLBI") filed a petition

for review of an Outer Continental Shelf ("OCS") Clean Air Act permit ("Permit") issued by

U.S. Environmental Protection Agency Region 2 to Atlantic Shores Offshore Wind Project 1,

LLC ("Atlantic Shores") pursuant to section 328 of the Clean Air Act ("CAA"), 42 U.S.C.

§ 7627.[1]  The OCS Permit[2] authorizes Atlantic Shores to construct and operate two wind energy

---

[1] Section 328 of the CAA directs EPA to establish air pollution controls for OCS sources
in certain areas and to comply with the Prevention of Significant Deterioration ("PSD") statutory
provisions in CAA Title I, part C.  The federal requirements for preconstruction permits are set
forth in the PSD regulations at 40 C.F.R. § 52.21.

[2] In September 2022 Atlantic Shores submitted an OCS air permit application to
Region 2.  Additional information and updates to the application were submitted to EPA until
June 28, 2024, when Atlantic Shores submitted an updated OCS permit application.  Region 2,
U.S. EPA, *Fact Sheet for an OCS Air Permit to Construct and Operate Atlantic Shores Offshore
Wind Project 1, LLC*, at 5 (July 11, 2024) (A.R. 1.3) ("Fact Sheet"); Letter from Richard Ruvo,
Director Air and Radiation Division, EPA Region 2, to Jennifer Daniels, Vice President, Atlantic
Shores Offshore Wind Project 1, LLC (Sept. 29, 2024) (A.R. A.1) ("Final Permit Letter").
Changes to the application included a June 25, 2024, request to change the ownership of the
project for the air permit.  Final Permit Letter at 1.  The June 28, 2024, revised permit application
is the only permit application in the administrative record, and it is attached to Atlantic Shores'

generation projects off the coast of New Jersey—Atlantic Shores Offshore Wind Project 1 and 2, collectively referred to as "the Project."  *See* Region 2, U.S. EPA, *OCS Air Permit Issued to Atlantic Shores Offshore Wind Project 1, LLC for the Atlantic Shores Project 1 and Project 2, EPA Permit No. OCS-EPA-R2 NJ 02*, at 1 (Sept. 30, 2024) (A.R. A.2).  The Region and Atlantic Shores each filed a response to the petition on November 5, 2024.

On February 28, 2025, the Region filed a motion for a voluntary remand pursuant to 40 C.F.R. § 124.19(j) requesting that the Board remand the Permit back to the Region so that the Region has the opportunity to reevaluate the Project and its environmental impacts in light of the January 20, 2025 Presidential Memorandum entitled *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects.*  EPA Region 2's Motion for Voluntary Remand 1 (Feb. 28, 2025) ("Motion"); *see* Presidential Memorandum, 90 Fed. Reg. 8363 (Jan. 29, 2025).  The Presidential Memorandum directs an immediate review of Federal wind leasing and permitting practices and provides that the heads of various executive department agencies, including the Administrator of the Environmental Protection Agency, "shall not issue new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects pending the completion of a comprehensive assessment and review of Federal wind

---

brief in this matter.  Atlantic Shores Offshore Wind, *Outer Continental Shelf Air Permit Application* (Sept. 1, 2022; revised June 2024) (A.R. 2.1.1).  The Region issued a draft permit for public comment shortly thereafter on July 11, 2024, and the Region issued its final permit decision on September 30, 2024.  Final Permit Letter at 1-2; Region 2, U.S. EPA, *OCS Air Permit Issued to Atlantic Shores Offshore Wind Project 1, LLC for the Atlantic Shores Project 1 and Project 2, EPA Permit No. OCS-EPA-R2 NJ 02*, at 1 (Sept. 30, 2024) (A.R. A.2).

leasing and permitting practices." Presidential Memorandum, 90 Fed. Reg. at 8363-64. The

Region's Motion states that SLBI does not oppose the Motion but that Atlantic Shores objects to

it. *Id.* at 5.

On March 7, 2025, Atlantic Shores filed a response objecting to the Motion, arguing that

the Region has not provided "good cause" for its Motion and that the motion is not in the interest

of administrative or judicial efficiency. Atlantic Shores Offshore Wind, LLC's Opposition to

EPA Region 2's Motion for Voluntary Remand 1 (Mar. 7, 2025) ("Opposition").

It is well established that the Board has broad discretion to grant a voluntary remand, and

we have held that "[a] voluntary remand is generally available where the permitting authority has

decided to make a substantive change to one or more permit conditions, *or* otherwise wishes to

reconsider some element of the permit decision before reissuing the permit." *In re Desert Rock*

*Energy Co., LLC*, 14 E.A.D. 484, 493 (EAB 2009) (emphasis added) (granting a voluntary

remand in a PSD permit where, among other things, the Agency was contemplating changes to

the permit). Under 40 C.F.R. part 124, a "permit issuer may unilaterally withdraw a permit that

is the subject of a petition for review within a specified time during the review

proceeding * * * and may request by motion a voluntary remand of the permit (or a portion

thereof) at *any time* after that." *In re GSP Merrimack, LLC*, 18 E.A.D. 524, 542 (EAB 2021)

(emphasis added); *see* 78 Fed. Reg. 5281, 5282 (Jan. 25, 2013) (specifying that "[n]othing in

[section 124.19] prevents the Region from seeking to withdraw the permit by motion at any

time").

In its Opposition, Atlantic Shores argues that the Region has failed to show "good cause"

for a voluntary remand because "it has not identified any condition in the Final Permit it is

seeking to substantively change, nor any element of the Final Permit decision it wishes to

reconsider before reissuing the permit." Opposition at 5. Atlantic Shores misstates the Board's precedent when it states that the Board will "only" grant a motion for voluntary remand in specific circumstances. *Id.* at 4. This reading is far too restrictive. *Id.* at 4. The applicable regulation, its history, and Board precedent is the opposite of restrictive. The Board treats requests for voluntary remand liberally and is not limited to circumstances where the Region provides specific substantive changes to the final permit or specific elements of the permit decision it seeks to reconsider. *See Desert Rock*, 14 E.A.D. at 498 ("Similarly, the federal courts tend to liberally grant agency motions for remand where an agency seeks to reconsider its prior decision."). The Board has generally exercised its broad discretion to grant a permit issuer's voluntary remand request where the permitting authority is reevaluating its permit decision, because in this situation "it would be highly inefficient for the Board to issue a final ruling on a permit." *Id.* at 497; *see also In re City of Nezperce*, NPDES Appeal No. 19-02, at 2 (EAB Sept. 30, 2019) (Order Granting Unopposed Motion for Voluntary Remand and Dismissing Petition for Review) (granting motion for voluntary remand where the Region "clearly expressed its intent to reconsider its final permit decision"). Granting a permitting authority's request for a voluntary remand also furthers the Agency policy of ensuring that "most permit conditions should be finally determined at the Regional level." Consolidated Permit Regulations, 45 Fed. Reg. 33,290, 33,412 (May 19, 1980); *GSP Merrimack*, 18 E.A.D. at 543; *see also Desert Rock*, 14 E.A.D. at 495. Furthermore, the Board typically grants a motion for remand where it "makes sense from an administrative or judicial efficiency standpoint." *In re Peabody W. Coal Co.*, 14 E.A.D. 712, 718 (EAB 2010) (quoting *Desert Rock*, 14 E.A.D. at 497). The Board has done so in cases even after the parties have filed briefs. *See, e.g.*, *GSP Merrimack*, 18 E.A.D. at 526; *Desert Rock*, 14 E.A.D. at 486-87.

The circumstances here support a voluntary remand.  In this case, the Region has clearly

stated its intent to reconsider the Project and permit decision in light of the Presidential

Memorandum.  As the Region explained, it seeks remand of the Permit to include it and the

permit application "in the comprehensive review of permitting practices called for in the

Memorandum."  Motion at 4.  As part of this review, the Region plans to "confer with other

executive branch agencies regarding further evaluation of various impacts that may result from

the Project, *including* impacts on birds, wildlife, fishing, and other relevant environmental

concerns described in the Presidential Memorandum."  *Id.* (emphasis added).  The Presidential

Memorandum's scope and direction is broad, and the Region's Motion offered an example of

part of the permit decision it seeks to reconsider.  *Id.*  This example is not an exclusive list.  The

overall intent expressed by the Region is to reevaluate the Project and its environmental impacts,

something called for in issuing CAA PSD permits and grounded in applicable law.[3]  As

_____

[3] Atlantic Shores argues that the Presidential Memorandum "calls for assessment of impacts [that
are] outside the scope of EPA's air permitting decision" such as "wildlife, fishing, navigational
safety, national security, and economic and commercial issues."  Opposition at 10.  To the
contrary, the scope of EPA's permitting decision includes an evaluation of the impact of the
project's air emissions on the environment, and it appears this would be part of the
environmental impact review Region 2 seeks to undertake and is grounded in the applicable law.
In addition, one of the examples of the review the Region intends to conduct involves impacts to
fish, wildlife, and other species and habitat which is required by the Region's obligations to
comply with the Endangered Species Act (the "ESA") in issuing CAA PSD permits.  Motion at
4; *see also* ESA § 7(a)(2), 16 U.S.C. § 1536 (requiring each federal agency "to insure that action
authorized by * * * [the] agency * * * is not likely to jeopardize the continued existence of any
endangered [] or threatened species" or destroy critical habitat).  The cases relied on by Atlantic
Shores do not change this analysis.  Both *In re Shell Offshore, Inc.*, and *In re Knauf Fiber Glass,
GmbH* involved issues the Board found to be beyond the scope of Board review because they
were not "requirements of the PSD provisions of the CAA or EPA's implementing regulations
and have not been otherwise linked to the federal PSD program in the context of this case."  8
E.A.D. 121, 162 (EAB 1999); 13 E.A.D. 357, 405-06 n.66 (EAB 2007).  However, the issues
raised here, including air emissions and the ESA, are linked to the federal PSD program.  With

discussed above, and contrary to Atlantic Shores' argument, the Board's broad discretion to

grant a voluntary remand is not limited to circumstances where the Region provides specific

substantive changes to the final permit it wishes to make or specific elements of the permit

decision it seeks to reconsider.

For the Board to adjudicate the challenge to a permit decision that the permit issuer

intends to reconsider would be the height of administrative inefficiency. The Board "cannot

predict what the Region may, or may not, do on remand nor is it appropriate for the Board to

provide a legal opinion on the merits of these theoretical outcomes." *Desert Rock*, 14 E.A.D. at

507. In fact, issuing an opinion on the merits before the Region's reevaluation of its permit

decision would essentially be offering an advisory opinion, which the Board does not do. *Id.*;

*see also GSP Merrimack*, 18 E.A.D. at 544. Given the Region's expressed intent to review and

reconsider the permit decision, we find that granting the Motion is in the interest of

administrative and judicial efficiency. *See In re Peabody W. Coal Co.*, 14 E.A.D. 712, 716

(EAB 2010) ("In the part 124 context, * * * the Board has exercised broad discretion to manage

its permit appeal docket by ruling on motions presented to it for various purposes, including

motions for voluntary remand."); 78 Fed. Reg. at 5282-83 (noting the Board's "inherent

_____

respect to the ESA, and as appropriate, the Region explained in its response to comments that it
relied on other agencies' analyses related to many of these impacts when issuing the Permit. *See*
Region 2, U.S. EPA, *Response to Public Comments*, OCS Air Permit EPA Permit No. OCS-
EPA-R2 NJ 02, at 13, 27-28, 34 (Sept. 29, 2024) (A.R. A.3) (Responses 4.1, 4.39, and 4.55);
Fact Sheet at 63-66 (summarizing the interrelated roles of various agencies in approving the
Project). Importantly, a Region may choose *not* to rely on those other agencies' analyses. *See In
re Ariz. Pub. Serv. Co.*, 18 E.A.D. 245, 319 (EAB 2020); *In re Phelps Dodge Corp.*, 10 E.A.D.
460, 487 (EAB 2002). The Presidential Memorandum contemplates coordination across
executive branch agencies during the review process, which could impact the Region's reliance
on the analysis related to the above issues it considered in issuing PSD permits.

- 6 -

authority to manage its docket" and that nothing in part 124 prevents a motion for voluntary remand at any time).

Atlantic Shores further contends that the Presidential Memorandum "does not require or even allow Region 2 to withdraw or reconsider the Final Permit" because the Permit was final and issued on September 30, 2024, and therefore any action after this would not be the issuance of a new permit.[4]  Opposition at 7-8.  Apparently, Atlantic Shores bases this argument on its view that the Region has already issued a "final permit."  *Id.* at 8.  Here, a petition was filed challenging the Region's permit decision and the Region has now filed its Motion to reconsider the permit application and permit decision in light of the Presidential Memorandum before the Permit becomes final agency action.  The Agency's final action does not occur "until the Regional Administrator issues a subsequent 'final permit decision' under section 124.19 *after* administrative review proceedings are exhausted."  78 Fed. Reg. at 5284-85; *see also* 40 C.F.R. § 124.19(*l*)(2).  As noted above, the scope of the Presidential Memorandum is broad, and the Region has indicated that it plans to include the permit application and permit decision in the review of permitting practices under the Presidential Memorandum.  Motion at 4.  The Board finds that granting remand is appropriate because no final decision on the permit decision has

---

[4] Atlantic Shores cites to Agency guidance for the proposition that a permit is "issued" when the Region "makes a final decision to grant the application."  Opposition at 8.  However, the cited guidance is inapposite and relates to when permits that are issued, but not yet effective, should address new regulatory requirements.  Office of Air Quality Planning & Standards, U.S. EPA, *PSD and Title V Permitting Guidance for Greenhouse Gases*, at 3 n.6 (March 2011).  As the Board has held, "the Agency has the discretion to remand permit conditions for reconsideration in light of legal requirements that change before the permit becomes final agency action."  *In re Dominion Energy Brayton Point, LLC, Brayton Point Station*, 12 E.A.D. 490, 618 (EAB 2006).

taken place and no final agency action has yet occurred. *See* 40 C.F.R. § 124.19(*l*). Atlantic

Shores does not at this time have a PSD permit to construct or operate its project. In fact, the

definition of permit does not include "any permit which has not yet been the subject of final

agency action." *Id.* § 124.2; *see also id*. §§ 124.15(b), .16(a). Moreover, the regulations provide

that when a permit involves a new source review permit, "the applicant shall be without a permit

for the proposed new facility, injection well, source or discharger pending final agency action."

*Id*. § 124.16(a). Thus, Atlantic Shores is incorrect when they assert the permit has already been

issued. This may occur only after the completion of any remand proceedings and the Regional

Administrator issues a final permit decision.

Finally, Atlantic Shores argues that moving for a voluntary remand "without good cause"

has the effect of circumventing the statutory timeframe provided in section 165(c) of the Clean

Air Act and contravening the terms of Atlantic Shores' lease. *See* CAA § 165(c), 42 U.S.C.

§ 7475(c). "As an initial matter, nothing in section 165(c) prohibits the Board from granting a

motion for voluntary remand." *Desert Rock*, 14 E.A.D. at 501. Whether any challenges to the

timeframes in this permit proceeding are now or in the future valid, particularly considering the

revised permit application, such claims are outside the scope of Board review. *See* CAA

§ 304(a)(2), 42 U.S.C. § 7604(a)(2) (granting district courts of the United States the jurisdiction

to compel nondiscretionary agency action unreasonably delayed); *see also* note 2, above. Nor

are the terms of Atlantic Shores' lease or lease rights within the scope of Board review. In any

event, we find that neither issue prevents the Region from requesting a remand, or the Board

from granting it under the circumstances.

For the reasons provided above, the Board hereby **GRANTS** the Region's Motion for

Voluntary Remand. Accordingly, OCS Appeal No. 24-01 is dismissed. Upon completion of the

- 8 -

remand proceedings, the final permit decision becomes the final agency action subject to judicial review.  40 C.F.R. § 124.19(*l*)(2).  Following a Board remand of a permit decision, an appeal to the Board is not required unless the Board "specifically provides that appeal of the remand decision will be required to exhaust administrative remedies."  *Id.* § 124.19(*l*)(2)(iii).  Under the circumstances of this case and to expedite consideration of the permit decision the Board is not requiring, and will not accept, an appeal to the Board on the final permit decision following remand in this case.

So ordered.[5]

**ENVIRONMENTAL APPEALS BOARD**

Dated:  March 14, 2025                              By:  _____

Mary Kay Lynch
Environmental Appeals Judge

---

[5] The three-member panel deciding this matter is composed of Environmental Appeals Judges Aaron P. Avila, Ammie Roseman-Orr, and Mary Kay Lynch.

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing *Order Granting Motion for Voluntary Remand* in the matter of Atlantic Shores Offshore Wind, LLC, OCS Appeal No. 24-01, were sent to the following persons in the manner indicated:

**By Email:**

**For Petitioner:**
Thomas Stavola Jr. Esq.
Law Office of Thomas Stavola, Jr., LLC
tstavolajr@stavolalaw.com

**For Atlantic Shores Offshore Wind, LLC:**
Hilary Tompkins
Hogan Lovells US LLP
hilary.tompkins@hoganlovells.com

Brian Malat
Hogan Lovells US LLP
brian.malat@hoganlovells.com

Hayley Fink
Hogan Lovells US LLP
hayley.fink@hoganlovells.com

**For EPA Region 2:**
Liliana Villatora
Air Branch Manager
Office of Regional Counsel
U.S. EPA Region 2
Villatora.Liliana@epa.gov

Sara Froikin
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA Region 2
Froikin.Sara@epa.gov

Robert DeLay
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA Region 2
Delay.Robert@epa.gov

Brian Doster
Air and Radiation Law Office
EPA Office of General Counsel
Doster.Brian@epa.gov

Dated: Mar 14, 2025

*Tommie Madison*
Tommie Madison
Clerk of the Board

Exhibit 4

F I L E D
Apr 15, 2025
Clerk, Environmental Appeals Board
INITIALS _____ TLM

**ENVIRONMENTAL APPEALS BOARD**
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C.**

|  |  |  |
|---|---|---|
| In re Atlantic Shores Offshore Wind, LLC | ) ) ) | OCS Appeal No. 24-01 |
| Permit No. OCS-EPA-R2 NJ 02 | ) ) ) ) |  |

**ORDER DENYING MOTION FOR RECONSIDERATION**

On March 14, 2025, the Environmental Appeals Board issued an Order Granting Motion for Voluntary Remand of an Outer Continental Shelf ("OCS") Clean Air Act permit ("Permit") issued by EPA Region 2 to Atlantic Shores Offshore Wind Project 1, LLC ("Atlantic Shores") and dismissing OCS Appeal No. 24-01. Atlantic Shores filed a Motion for Reconsideration, which petitioner Save Long Beach Island, Inc. and the Region oppose. Mot. for Recons. ("Motion") at 1 (Mar. 24, 2025); Pet'r Save Long Beach Island's Br. in Opp'n to Atlantic Shores Offshore Wind LLC's Mot. for Recons. (Mar. 31, 2025); EPA Region 2's Resp. to Atlantic Shores Offshore Wind, LLC's Mot. for Recons. (Apr. 3, 2025). The Board granted Atlantic Shores' unopposed motion to set a schedule for a consolidated reply and the reply was filed on April 10, 2025. Atlantic Shores Offshore Wind, LLC's Consol. Reply in Supp. of Mot. for Recons. (Apr.10, 2025). The Board denies the Motion for Reconsideration because it fails to identify any demonstrable error in the Order Granting Motion for Voluntary Remand.

A motion for reconsideration "must set forth the matters claimed to have been erroneously decided and the nature of the alleged errors." 40 C.F.R. § 124.19(m). "The Board reserves reconsideration for cases in which the Board has made a demonstrable error, such as a

mistake on a material point of law or fact." *In re City of Taunton Dep't of Pub. Works*, NPDES Appeal No. 15-08, at 1 (EAB June 16, 2016) (Order Denying Reconsideration). A motion for reconsideration is not an opportunity to raise new legal theories for the first time or to "'reargue the case in a more convincing fashion.'" *In re Gen. Elec. Co.*, RCRA Appeal No. 16-01, at 2 (EAB Mar. 7, 2018) (Order Denying Motion for Partial Reconsideration) (quoting *In re Town of Newmarket Wastewater Treatment Plant*, NPDES Appeal No. 12-05, at 2 (EAB Jan. 7, 2014)); *In re Deseret Generation and Transmission Coop. Bonanza Power Plant*, CAA Appeal No. 24-01, at 2 (EAB Nov. 8, 2024) (Order Denying Motion for Reconsideration); *see also In re Russell City Energy Ctr., LLC*, PSD Appeal Nos. 10-01 through 10-05, at 2-3 (EAB Dec. 17, 2010) (Order Denying Motion and Supplemental Motion for Reconsideration and/or Clarification and Stay).

Here, the Region's motion for voluntary remand is consistent with Agency regulation and Board precedent. The Board fully considered Atlantic Shores' opposition to the Region's request for a voluntary remand of the permit, its motion for reconsideration, and its consolidated reply, and we have found no merit in the arguments advanced by Atlantic Shores. Following well-established precedent, the Board exercised its broad discretion and granted the Region's request for a voluntary remand so that it could reconsider some element of its permit decision. *Id.* at 3-6; *see, e.g., In re Desert Rock Energy Co., LLC,* 14 E.A.D. 484, 493 (EAB 2009). The regulations governing Agency permitting are grounded in a system that ensures that "most permit conditions should be finally determined at the Regional level." Consolidated Permit Regulations, 45 Fed. Reg. 33,290, 33,412 (May 19, 1980). And, as stated in the order granting remand, the Board "cannot predict what the Region may, or may not, do on remand nor is it appropriate for the Board to provide a legal opinion on the merits of these theoretical outcomes."

Remand Order at 6 (quoting *Desert Rock*, 14 E.A.D. at 507). Among other things, to do so would be the height of inefficiency. In the instant motion, Atlantic Shores simply reiterates its arguments that misconstrue applicable law, regulations, and Board precedents and posits at least one new argument. This is not sufficient to warrant reconsideration. And contrary to Atlantic Shores' attempt to flip the burden, it is not incumbent upon the opposing parties or the Board to establish that the Board *should not* reconsider the decision. *See* Consol. Reply in Supp. of Mot. for Recons. at 5-7.

In its motion, Atlantic Shores fails to demonstrate any matter erroneously decided in the Board's Order in exercising its discretion and following the well-established precedent that guided the Board's decision. For the reasons explained in the order granting remand, the Board has long allowed permit issuers to withdraw permits and file motions for remands or for stays of the proceedings. *See* Remand Order at 3; *Desert Rock*, 14 E.A.D. at 493 & n.14; *In re Indeck-Elwood, L.L.C.*, PSD Appeal No. 03-04, at 5-6 (May 20, 2004) (Order Denying Respondent's Motion for Voluntary Partial Remand and Petitioners' Cross Motion for Complete Remand, and Staying the Board's Decision on the Petition for Review). This was true even before the current regulations in 40 C.F.R. § 124.19 were promulgated and before the regulations addressed withdrawal of permits. *See* Revisions to Procedural Rules to Clarify Practices and Procedures Applicable in Permit Appeals Pending Before the Environmental Appeals Board, 78 Fed. Reg. 5281, 5282 (Jan. 25, 2013) ("Specifically, before today, § 124.19 authorized the Regional Administrator to unilaterally withdraw a permit and prepare a new draft permit at any time prior to the Board's grant of review under what was § 124.19(c)."); Amendments to Streamline the NPDES Program Regulations: Round Two, 61 Fed. Reg. 65,268, 65,281 (Dec. 11, 1996)

- 3 -

(proposed rule) ("In practice, EPA has withdrawn and reissued permits under all statutes prior to decisions of the EAB as well as prior to ALJ decisions.").

Section 124.19(j) only addresses the Region's authority to unilaterally withdraw a permit, not the Board's authority to grant a voluntary remand.  *See* 40 C.F.R. § 124.19(j); *see also Desert Rock*, 14 E.A.D. at 492; *In re West Bay Expl. Co.*, UIC Appeal Nos. 13-01 & -02, at 2 (EAB May 29, 2013) (Order Denying Reconsideration).  The promulgation of regulations allowing for unilateral withdrawal of a permit in certain circumstances did not alter the Board's wide discretion to grant a motion for voluntary remand and it does not limit the Region's ability to request a voluntary remand at any time.  78 Fed. Reg. at 5282 ("Nothing in this regulation prevents the Region from seeking to withdraw the permit by motion at any time.").  The time provisions on the Region's actions were intended to avoid a unilateral withdrawal after the Board "devoted significant resources to the substantive consideration of an appeal."  *Id.*  Thus, the addition of the unilateral withdrawal authority to the part 124 regulations and the timing provision provided the Board with a mechanism to efficiently manage the Board's docket, without limiting the Board's discretion to grant a voluntary remand at any time.  *See Desert Rock*, 14 E.A.D. at 493; *In re West Bay Exploration Co.*, UIC Appeal Nos. 13-01 & -02, at 2 (EAB May 29, 2013) (Order Denying Reconsideration); 78 Fed. Reg. at 5282 ("Nothing in this regulation prevents the Region from seeking to withdraw the permit by motion at any time.").  Atlantic Shores misconstrues section 124.19(j) to somehow limit the Board's discretion to grant a request for withdrawal and ignores precedent that makes it clear the Board may, and has, granted requests for voluntary remands at *any time*.

And despite Atlantic Shores' renewed attempts to very narrowly construe when the Board may grant a permit issuer's motion for voluntary remand, the Board's discretion is broad and

does not require a permit issuer to specify particular permit provisions that it intends to reconsider. This is not new, and Board precedent incorporates this point. In fact, Atlantic Shores repeatedly ignores language from prior cases that provide that the Board will generally grant a request when the region advises the Board that it intends to reconsider "some element of the permit decision." *Desert Rock*, 14 E.A.D. at 493 & n.14 (citing *Indeck-Elwood, L.L.C.* at 5-6). The Region is not required to identify a specific element of its permit decision. Atlantic Shores appears to add words and requirements to suit its own purposes. The Region's expressed intent to reevaluate the Project and its environmental impacts as part of a review called for under the Presidential Memorandum is reasonable, and granting a remand under these circumstances is within the Board's discretion.[1] The Region explained the reason for its request and the Board explained why it was granting the request, including not engaging in the issuance of an advisory opinion and long standing Agency policy that most permit conditions should be finally determined at the Region level. Atlantic Shores appears to disagree with this decision because of the *potential* results.

Moreover, allowing permit issuers within the executive branch to reconsider pending decisions at the request of an Administrator or during Administration transitions is reasonable and consistent with past precedent. For example, in 2009, during the proceedings in the *Desert Rock* PSD permit appeal, EPA Region 9 sought a remand because "'the Administrator's office ha[d] requested that Region 9 reconsider its permitting decision,'" and the Board granted Region

---

[1] The Region's reading of the Presidential Memorandum as applicable to this permit in the absence of final agency action is reasonable. In any event, the request for a voluntary remand to reevaluate an element of the permit decision is reasonable and consistent with past practice even in the absence of a Presidential Memorandum.

9's request. *Desert Rock*, 14 E.A.D. at 488 (quoting EPA Region 9's Motion for Voluntary

Remand 1 (Apr. 27, 2009)). And in *In re GSP Merrimack LLC*, the Region sought a

continuation of the oral argument date and abeyance of sixty days so that EPA leadership under a

new Administration, "could 'be briefed on the cases and the underlying action to determine the

Agency's position going forward in this matter.'" 18 E.A.D. 524, 526 (EAB 2021) (quoting

EPA Region 1 Motion for Continuance of the Date for Oral Argument and Abeyance 1 (Feb 3,

2021)); *see also In re GSP Merrimack LLC*, NPDES Appeal Nos. 20-05, 20-06, at 2-3 (Feb. 9,

2021) (Order Granting Motion for Continuance of Oral Argument Date and Abeyance) (granting

opposed motion for abeyance after Executive Order requiring review of prior Administration's

actions to allow time to brief incoming Agency leadership and allowing the Region to request a

voluntary remand, among other options); *In re Limetree Bay Terminals, L.L.C.*, CAA Appeal

Nos. 20-02, 20-03, at 2-3 (Feb. 12, 2021) (Order Granting Motion for Extension of Time to File

Response) (granting extension to allow time to brief incoming leadership after Executive Order

requiring review of prior Administration's actions).

It is also important to note that while neither the Board nor Atlantic Shores can presume

to know what Region 2 will determine, Region 2 may or may not change its position on some

element of the permitting decision following its review on remand. And "[a]n agency may

change its existing position on an issue 'as long as [it] provide[s] a reasoned explanation for the

change.'" *Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 270 (1st Cir. 2023) (quoting

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). Here, the Region seeks to

reevaluate a permitting decision that is not yet final.[2]  We emphasize that neither the Board nor

Atlantic Shores can predict the result of the Region's reevaluation or determine in advance

whether any change in the decision would be supported by the administrative record for the final

permit decision.  *See id.*; *see also In re GMC Delco Remy*, 7 E.A.D. 136, 167 n.61 (EAB 1997)

(noting that courts "refuse to assume in advance that federal agencies will not follow legal

---

[2] In a footnote, Atlantic Shores acknowledges that the applicable regulations state that
final agency action does not occur until the "EAB appeal is complete" and after the
administrative review proceedings are exhausted.  Motion at 10 n.10.  Atlantic Shores argues,
however, that "this raises the very real question * * * as to whether EAB's regulations are legal
in the context of air construction permits, where they mandate use of an administrative review
procedure that all but ensures Section 165(c) of the CAA is violated."  *Id.*  Not so.  Nothing in
the regulations governing EAB appeals precludes the Agency from granting or denying a permit
application, including review by the EAB, with a final permit decision within the statutory
timeframe.  Atlantic Shores' allegation that the timeframe was exceeded for the permit at issue in
this matter does not render the EAB regulations invalid, and, as discussed further below, based
on the current record before the Board, it is unclear when the statutory timeframe began to run
and the issue is not properly raised in this forum.  *See* page 9 below.

Furthermore, Atlantic Shores' assertion that the Region issued a "final permit" on
September 30, 2024, simply restates an erroneous argument Atlantic Shores made in opposition
to the Motion for Voluntary Remand and rejected by the Board, which is not a basis for
reconsideration.  *Id.* at 10 & n.11; *see also Deseret*, CAA Appeal No. 24-01, at 2.  Apparently,
Atlantic Shores revisits this mistaken position to reargue that the Presidential Memorandum does
not apply to the permit in this case and its argument that EPA has run afoul of the one-year
timeframe in the CAA.  As explained previously, the Region did not need to rely on the
Presidential Memorandum for its remand request and any challenge to whether the Agency has
exceeded the CAA timeframe lies elsewhere.  Atlantic Shores also had other legal tools at its
disposal if it had concerns about section 165(c).

requirements").  Accordingly, remand is both reasonable and in the interest of administrative

efficiency.[3]

In its Motion, Atlantic Shores also asserts that the Board made a demonstrable error in

concluding that the one-year deadline in CAA section 165(c), 42 U.S.C. § 7475(c), does not

apply to remand.  Motion at 3.  What the Board concluded was that any challenge to the

Agency's compliance with CAA section 165(c) is outside the scope of Board review and lies in

federal court.  Remand Order at 8.[4]  Atlantic Shores misconstrues the Board's conclusion and

now argues that the EAB erred in failing to acknowledge that the statutory "deadline had already

---

[3] The federal court decisions cited by Atlantic Shores are inapposite.  In *Am. Waterways Operators v. Wheeler*, the court noted that granting a request for remand of final agency action to reopen the agency's decision-making process would "potentially disrupt[] a years-long initiative by the State of Washington."  427 F. Supp. 3d 95, 99 (D.D.C. 2019).  This is not the case here, where the final agency action has not yet occurred.  *See* 40 C.F.R. § 124.19(*l*)(2) (defining what constitutes a final permit decision).  And, in *Miss. River Transmission Corp. v. FERC*, the court noted in a footnote that the agency filed a motion to remand "two business days before oral argument" and "did not obtain, did not even request, leave to file the motion," violating local procedural rules meant to conserve the resources of the court and other parties.  969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992).  The court concluded: "For that reason alone, we deny [the motion to remand]."  *Id.*  Here, the Region followed the applicable regulations and Board precedent.

[4] Adjudicating a claim regarding the Region's failure to act as set forth in CAA section 165(c) is beyond the scope of Board review.  *Desert Rock*, 14 E.A.D. at 501-02.  Any potential remedy for an alleged violation of section 165(c) lies with the federal district courts.  *See* CAA § 304(a)(2), 42 U.S.C. § 7604(a)(2) (granting district courts of the United States the jurisdiction to compel nondiscretionary agency action unreasonably delayed).  Atlantic Shores' assertion that *Desert Rock* is "no longer good law" after *Avenal Power Ctr., LLC v. U.S. EPA*, is incorrect.  *See* Motion at 7 n.6.  *Avenal* held that the Board's review was included in the one-year timeframe set forth in section 165(c).  787 F. Supp. 2d 1, 4 (D.D.C. 2011).  It did not address the Board's ability to remand a permit or the Board's conclusion that adjudication of a section 165(c) claim lies elsewhere.

passed as applied to the Final Permit, and that remand would further exacerbate this delay."
Motion at 8. According to the arguments now raised in the Motion, Atlantic Shores avers that
EPA was already in violation of section 165(c) when the Region issued its permit decision on
September 30, 2024, before the petition in this appeal was even filed. *Id*. at 8-10. Yet Atlantic
Shores discussed neither this statutory limit nor the alleged violation in its response to the
petition. *See* Response of Atlantic Shores Offshore Wind, LLC and Atlantic Shores Offshore
Wind Project 1, LLC to Petition for Review (Nov. 5, 2024) ("Atlantic Shores Resp. Br."). As we
previously noted, the June 28, 2024, revised permit application was the only application included
in the administrative record before the Board[5] and attached to Atlantic Shores' response brief in
this matter. Remand Order at 1-2 n.2; *see also* Atlantic Shores Offshore Wind, *Outer
Continental Shelf Air Permit Application* (Sept. 1, 2022; revised June 2024) (A.R. 2.1.1). Given
Atlantic Shores' current argument, it is notable that Atlantic Shores did not raise any argument
related to the one-year statutory timeframe in its filed response to the petition for review.

Atlantic Shores seems to interpret section 165(c) to mean that "Region 2 may not seek,
and EAB may not grant, a voluntary remand that violates or exacerbates the violation of the
statutory deadline." Motion at 4. This is a mistaken interpretation of section 165(c). Based on
the current record before the Board, it is unclear when the statutory timeframe began to run. *See*
also Remand Order at 1-2 n.2. If Atlantic Shores believed that the one-year deadline had already
passed as of the date of the filed petition for review, it could have filed a motion to expedite
review with the Board. The Board has previously issued orders in prevention of significant

---

[5] The record indicates that the application in the record includes additional information
and updates, and it is not clear if this application superseded some earlier application.

- 9 -

deterioration ("PSD") cases in response to a permittee's motion to expedite that cited an ongoing violation of the statutory timeframe in section 165(c). *See, e.g.*, *In re La Paloma Energy Ctr., LLC*, PSD Appeal No. 13-10, at 1-2 (EAB Jan. 15, 2014) (Order Scheduling Status Conference/Expedited Oral Argument); *In re Tucson Elec. Power*, PSD Appeal No. 18-02, at 3 (EAB Oct. 18, 2018) (order directing parties to correct record issues to assist the Board's expedited review). We also note that, in this case, either the one-year timeframe of section 165(c) expired even before the appeal was filed or, based on the application in the record, the issue of the one-year timeframe has not yet arisen. In either case, a challenge to a Region's failure to act within the section 165(c) timeframe is beyond the scope of Board review. Therefore, Atlantic Shores fails to establish demonstrable error in the Board's decision not to interpret section 165(c) as limiting the Board's authority to remand the permit.[6]

Finally, Atlantic Shores argues that reconsideration should be granted because the Motion for Voluntary Remand was "motivated at least in part by political pressure." Motion at 17. Atlantic Shores misapplies federal court precedent to the facts of this case. Federal courts have recognized that agency action "may be arbitrary and capricious if political pressure influenced

_____

[6] Atlantic Shores appears to argue that section 165(c) requires the Board to issue a decision denying review of the permit. *See* Motion at 3-10. Putting aside other parties' administrative appeal rights for the moment, in so arguing, Atlantic Shores presumes the outcome of a Board decision on the merits in this matter will be a denial. We note, however, if the Board were to issue a decision on the merits remanding the permit, it is likely that further delay in the permitting decision would result. In fact, by granting the Region's Motion for Voluntary Remand and noting that the Board is not requiring an appeal on the final permitting decision following remand, the Board is acting to expedite the matter. *See* Order Granting Motion for Voluntary Remand at 9.

the decision in a manner not dictated by the relevant statutes and regulations." *Connecticut v. U.S. Dept. of Interior*, 363 F. Supp. 3d 45, 63 (D.D.C. 2019).

The federal court decisions cited in the Motion are inapposite. The political pressure asserted in those cases came from outside the executive branch or communications between outside parties and a decisionmaker. *See Aera Energy LLC v. Salazar*, 642 F.3d 212, 215-16 (D.C. Cir. 2011) (concerning political pressure from state officials and members of Congress); *Press Broad. Co v. Fed. Commc'n Comm'n*, 59 F.3d 1365, 1368 (D.C. Cir. 1995) (concerning *ex parte* communications between agency decision-maker and outside parties); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1236 (D.C. Cir. 1971) (concerning political pressure from member of the House of Representatives); *Connecticut*, 363 F. Supp. 3d at 64 (concerning political pressure exerted in private meetings between executive branch officials and members of Congress). Here, the Region requested a voluntary remand to reconsider an element of its permitting decision—to review among other things the environmental impacts of the permit— and to coordinate within the executive branch on the review. Remand Order at 2-3. As discussed above, allowing permit issuers within the executive branch to reconsider pending decisions during Administration transitions is reasonable and consistent with past precedent.

Moreover, there is nothing to indicate that applicable requirements prescribed by statute or regulation will not be followed. In fact, as the Board noted in its Order granting voluntary remand, the Region seeks to reevaluate element(s) of the permitting decision within the scope of its statutory authority. Remand Order at 5. Any challenge to the Region's final permit decision is premature given that the Region's reevaluation has not yet occurred, and the Region proposes to consider factors within its discretion and grounded in applicable law.

While Atlantic Shores expresses disagreement with the Board's conclusions, it fails to demonstrate that the Board made any demonstrable error on a material point of law or fact or otherwise.  The Board therefore denies the Motion for Reconsideration.

So ordered.

Dated: <u>April 15, 2025</u>                                    <u>Per Curiam</u>
                                                                                Environmental Appeals Board[7]

_____

[7] The three-member panel deciding this matter is composed of Environmental Appeals Judges Aaron P. Avila, Mary Kay Lynch, and Ammie Roseman-Orr.

- 12 -

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing *Order Denying Motion for Reconsideration* in the matter of Atlantic Shores Offshore Wind, LLC, OCS Appeal No. 24-01, were sent to the following persons in the manner indicated:

**By Email:**

**For Petitioner:**
Thomas Stavola, Jr., Esq.
Law Office of Thomas Stavola, Jr., LLC
tstavolajr@stavolalaw.com

**For Atlantic Shores Offshore Wind, LLC:**
Hilary Tompkins
Hogan Lovells US LLP
hilary.tompkins@hoganlovells.com

Brian Malat
Hogan Lovells US LLP
brian.malat@hoganlovells.com

Hayley Fink
Hogan Lovells US LLP
hayley.fink@hoganlovells.com

**For EPA Region 2:**
Liliana Villatora
Air Branch Manager
Office of Regional Counsel
U.S. EPA Region 2
Villatora.Liliana@epa.gov

Sara Froikin
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA Region 2
Froikin.Sara@epa.gov

Robert DeLay
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA Region 2
Delay.Robert@epa.gov

Brian Doster
Air and Radiation Law Office
EPA Office of General Counsel
Doster.Brian@epa.gov

Dated: Apr 15, 2025

*Tommie Madison*
Tommie Madison
Clerk of the Board