IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Civil Action No. 1:25-cv-11221-WGY |

**Declaration of Elizabeth Maclin**

I, Elizabeth Maclin, declare that the following statements are true and correct to the best of my knowledge and belief

1. I am Acting Deputy Assistant Director for the Ecological Services Program of the U.S. Fish and Wildlife Service ("FWS"), an agency of the U.S. Department of the Interior ("DOI"), located in Washington, D.C. I have served in this position since February 10, 2025. In my capacity as the Acting Deputy Assistant Director for the Ecological Services Program, I am responsible to the Acting Assistant Director of the Ecological Services, Director of the FWS, and to the Secretary of the Interior for, among other things, the administration of the Endangered Species Act ("ESA") (16 U.S.C. §§ 1531-1544) and the Marine Mammal Protection Act ("MMPA") (16 U.S.C. § 1361 et seq.) with respect to marine mammals under the jurisdiction of FWS.

2. In my capacity as Acting Deputy Assistant Director, I oversee consultations under ESA Section 7(a)(2) for species and designated critical habitat under the jurisdiction of FWS, ESA

    Section 10 incidental take permitting, and the administration of incidental take authorizations for marine mammals under the MMPA.

3. I am familiar with President Trump's Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (January 20, 2025) ("Wind Memo").

4. FWS became aware of the Wind Memo on January 20, 2025 (90 Fed. Reg. 8363; Jan. 29, 2025).

5. I also am aware of the lawsuit and motion for preliminary injunction filed by the State of New York and other plaintiffs challenging the alleged implementation of the Wind Memo. I understand that the motion asserts that FWS has certain legal duties to act under the ESA and MMPA. I am submitting this declaration in support of the Federal Defendants' Response to that motion.

6. New York's complaint does not identify any ESA Section 7(a)(2) consultations that are allegedly being unlawfully withheld or unreasonably delayed as a result of the Wind Memo's temporary cessation directive.

7. Since the Wind Memo was issued, the Ecological Services Program has not issued any formal policy in response. FWS continues to engage in ESA Section 7(a)(2) consultations for both land-based and offshore wind projects, pursuant to its long-standing practice that the issuance of a concurrence letter or biological opinion under ESA Section 7(a)(2), or engaging in technical assistance pursuant to ESA Section 7(a)(2), does not constitute an approval, permit, or any of the other temporarily paused activities outlined in the Wind Memo.

8. Ecological Services Headquarters performed a query of its ECOSphere project tracking system for ESA Section 7 consultation activities (e.g., issuance of an official species list, technical assistance provided, final letters of concurrence signed, final biological opinions signed) related to onshore and offshore wind projects occurring between January 20, 2025, and May 19, 2025. The results indicated that FWS provided action agencies with over 100 species lists, nine instances of technical assistance, and one letter of concurrence. According to the ECOSphere system searched on May 19, 2025, FWS has not issued any ESA Section 7 biological opinions for wind energy projects since the Wind Memo was issued, but this is because FWS has not received any complete consultation initiation packages for which to prepare such a biological opinion, notwithstanding the Wind Memo or any other policy.

9. Moreover, the 90-day consultation period in the ESA is not absolute; rather, the deadline may be extended upon mutual agreement by FWS and the Federal action agency and any applicant. 16 U.S.C. § 1536(b)(1)(A), (b)(1)(B)(ii); 50 C.F.R. § 402.14(e).

10. New York's complaint also does not identify any ESA Section 10 incidental take permits under FWS's primary jurisdiction that are allegedly being unlawfully withheld or unreasonably delayed as a result of the Wind Memo's temporary cessation directive.

11. Additionally, while FWS has not issued any wind-related ESA Section 10 permits between January 20, 2025, and May 19, 2025, FWS continues to provide support and assistance to ESA Section 10 incidental take permit applicants on the development of habitat conservation plans and continues to process incidental take permit applications following the issuance of the Wind Memo. Applicants seeking incidental take permits are required under ESA Section 10(a)(2)(A) to develop a (habitat) conservation plan to support their permit application. Developing these plans can take months or longer.

12. New York's complaint does not identify any MMPA incidental take exemptions for wind projects that are allegedly being unlawfully withheld or unreasonably delayed by FWS as a result of the Wind Memo's temporary cessation directive. Since the issuance of the Wind Memo, FWS has not received any applications for incidental take authorizations or incidental harassment authorizations under the MMPA for any wind development activities.

13. Moreover, while FWS' regulations for uniform administration of permits issued under its various authorities state that "[FWS] will process all applications as quickly as possible," the regulations make it clear that we "cannot guarantee final action within the time limit [applicants] request." 50 C.F.R. § 13.11(c). Further, the regulations explain that "processing time may be increased by the procedural requirements of the National Environmental Policy Act (NEPA), the requirement to publish a notice in the Federal Register requesting a 30-day public comment period when [FWS] receive[s] certain types of permit applications, and/or the time required for extensive consultation within [FWS], with other Federal agencies, and/or State or foreign governments." *Id.* The regulations further state that, "[w]hen applicable, [FWS] may require permit applicants to provide additional information on the proposal and on its environmental effects as may be necessary to satisfy the procedural requirements of NEPA." *Id.*

14. This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of May, 2025.

ELIZABETH MACLIN
Digitally signed by ELIZABETH MACLIN
Date: 2025.05.28 17:54:36 -04'00'

Elizabeth Maclin

Acting Deputy Assistant Director for Ecological Services

U.S. Fish and Wildlife Service