IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>      Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>      Defendants. | Civil Action No. 1:25-cv-11221-WGY |

**Declaration of Jerome Ford**

I, Jerome Ford, declare and state as follows:

1. I am the Assistant Director for the Office of Migratory Bird Management in the U.S. Fish and Wildlife Service ("FWS"), an agency of the U.S. Department of the Interior ("Interior"), located at 1849 C Street NW, Washington, D.C. In my capacity as Assistant Director, I am responsible to the Director of the Fish and Wildlife Service and to the Secretary of the Interior for, among other things, the administration of the Bald and Golden Eagle Protection Act ("Eagle Act") (16 U.S.C. §§ 668–668e).

2. I am familiar with President Trump's Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (January 20, 2025) ("Wind Memo").

3. FWS became aware of the Wind Memo on January 20, 2025 (90 Fed. Reg. 8363; Jan. 29, 2025).

1

4. I also am aware of the lawsuit and motion for preliminary injunction filed by the State of New York and other plaintiffs challenging the alleged implementation of the Wind Memo. I understand that the motion asserts that FWS has certain legal duties to act under the Eagle Act. I am submitting this declaration in support of the Federal Defendants' Response to that motion.

5. The Eagle Act imposes criminal and civil penalties against "whoever" shall "take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import" bald and golden eagles, except as permitted by the Secretary of the Interior. 16 U.S.C. § 668(a)–(b). The statute does not mandate that the Secretary issue incidental take permits or impose any deadline for issuing permit decisions. *Id.* § 668a (the Secretary of Interior "may authorize the taking of such eagles pursuant to regulations which he is hereby authorized to prescribe").

6. Pursuant to delegated authority on behalf of the Secretary, FWS has promulgated regulations governing issuance of permits for incidental take of eagles that "results from, but is not the purpose of, an activity." 50 C.F.R. §§ 22.200(d), 22.210(d). Exempted incidental take must be "compatible with the preservation of the bald eagle and the golden eagle" and "necessary to protect a legitimate interest in a particular locality," and "[c]annot practicably be avoided." *Id.* §§ 22.210(d), 22.210(d).

7. Included in the incidental take regulations are those that specifically pertain to wind energy projects. 50 C.F.R. § 22.250. Applicants may apply for general or specific permits, according to certain eligibility criteria. *Id.* There is no time limit for processing permit applications, but general permits are issued automatically upon completion of registration,

2

assuming the applicant certifies they are eligible and willing to carry out all the associated conditions.

8. FWS also has promulgated regulations for uniform administration of permits issued under its various authorities.  50 C.F.R. § 13.11.  Although these regulations state that "[FWS] will process all applications as quickly as possible," they make it clear that "[it] cannot guarantee final action within the time limit [applicants] request." Id. § 13.11(c). Further, "processing time may be increased by the procedural requirements of the National Environmental Policy Act (NEPA), the requirement to publish a notice in the Federal Register requesting a 30-day public comment period when [FWS] receive[s] certain types of permit applications, and/or the time required for extensive consultation within [FWS], with other Federal agencies, and/or State or foreign governments." Id.  The regulations further state that, "[w]hen applicable, [FWS] may require permit applicants to provide additional information on the proposal and on its environmental effects as may be necessary to satisfy the procedural requirements of NEPA." Id.

9. Since issuance of the Wind Memo, the Migratory Bird Program has temporarily paused issuance of permits to wind facilities, including all incidental take permits for bald and golden eagles.  Consistent with the Wind Memo, the Migratory Bird Program has added a notice to the ePermits webpage that applicants use to register for general permits for wind energy projects and power lines, but it has not issued any formal policy. The website notice states:

> NOTICE TO APPLICANTS: The U.S. Fish and Wildlife Service, pursuant to Presidential Memorandum "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects" is temporarily ceasing issuance of permits to wind facilities until further notice.

In the interim, ePermits will no longer automatically issue general permits for eagle Incidental Take. Applicants may still complete a general permit application (Form 3-200-71). Eagle Incidental Take applicants should email migratorybirdpermits@fws.gov with the subject GENERAL PERMIT APPLICATION to notify us of a submitted Eagle Incidental Take application.

10. However, New York's complaint does not allege that any incidental take permit under the Eagle Act is being unlawfully withheld or unreasonably delayed with respect to any specific wind project that is named therein. Indeed, upon information and belief, there are no incidental take permit applications for bald or golden eagles currently pending before the Migratory Bird Program for any of the wind projects named in the complaint.

11. FWS continues to allow applications for incidental take permits under the Eagle Act to be submitted and the agency continues to manually process and evaluate permit applications up until the point of permit issuance. Additionally, the Migratory Bird Program continues to provide limited technical assistance upon request.

12. A true and correct copy of the ePermits webpage notice is attached as Exhibit 1.

13. This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 29th of May, 2025.

JEROME FORD
Digitally signed by JEROME FORD
Date: 2025.05.29 11:14:09 -04'00'

Jerome Ford

Assistant Director for the Migratory Bird Program

U.S. Fish and Wildlife Service

EXHIBIT #1



# U.S. Fish & Wildlife Service

Login/Register

HOME    DO I NEED A PERMIT    SEARCH APPLICATIONS    HELP CENTER

# 3-200-71: Eagle Incidental Take

## Eagle Incidental Take (General Permit)

Bald and Golden Eagle Protection Act, 50 CFR 22.250, 22.260

NOTICE TO APPLICANTS: The U.S. Fish and Wildlife Service, pursuant to Presidential Memorandum "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects" is temporarily ceasing issuance of permits to wind facilities until further notice.

In the interim, ePermits will no longer automatically issue general permits for eagle Incidental Take. Applicants may still complete a general permit application (Form 3-200-71). Eagle Incidental Take applicants should email migratorybirdpermits@fws.gov with the subject GENERAL PERMIT APPLICATION to notify us of a submitted Eagle Incidental Take application.

Before beginning your application, gather all required legal documents, permits, licenses, breeder statements, photos to support your request for a permit.

**ELIGIBILITY QUESTIONNAIRE**

**START APPLICATION ONLINE**

For mail-in submission: Download a complete blank application form which must be completed on paper and submitted by mail.