# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | No. 25-cv-11221-WGY |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | Leave to file granted June 2, 2025 |
| Defendants. | |

## PLAINTIFF STATES' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.   The States Are Likely to Succeed on the Merits...................................................... 1

   A.  The States Have Established Standing......................................................... 1

   B.  The States Challenge Final Agency Action. ............................................... 5

   C.  The States Are Likely To Succeed on the Merits........................................ 7

II.  An Injunction Would Prevent Irreparable Harm And Serve the Public Interest. ................ 9

III. Defendants' Requested Bond Is Inappropriate................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Azar*,
  964 F.3d 1230  (D.C. Cir. 2020)....................................................................... 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................................ 6

*Biden v. Nebraska*,
  600 U.S. 477 (2023)......................................................................................... 4

*City & Cnty. of S.F. v. Trump*,
  897 F.3d 1225 (9th Cir. 2018)......................................................................... 9

*Concord Hosp. v. NH Dep't of Health & Hum. Servs.*,
  743 F. Supp. 3d 325 (D.N.H. 2024) ................................................................ 9

*Dantzler, Inc. v. Empresas Berrios Inventory & Ops., Inc.*,
  958 F.3d 38 (1st Cir. 2020).............................................................................. 3

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)......................................................................................... 3

*Ensco Offshore Co. v. Salazar*,
  781 F. Supp. 2d 332 (E.D. La. 2011) ............................................................ 10

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)......................................................................................... 3

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018)......................................................................... 6

*Hornbeck Offshore Serv., LLC v. Salazar*,
  696 F. Supp. 2d 627 (E.D. La. 2010) ......................................................... 7, 10

*Louisiana v. Biden*,
  622 F. Supp. 3d 267 (W.D. La. 2022) .................................................. 4, 5, 6, 7, 8

*Louisiana v. Biden*,
  No. 2:24-cv-00406, 2024 WL 3253103 (W.D. La. July 1, 2024) ................... 6

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................ 6

*Maine v. U.S. Dep't of Agric.*,
  No. 1:25-cv-00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025)................... 10

*Massachusetts v. U.S. Dep't of Health & Hum. Servs.*,
    923 F.3d 209 (1st Cir. 2019) ................................................................................ 4

*McQuiggin v. Perkins*,
    569 U.S. 383 (2013) ........................................................................................... 8

*Nantucket Residents Against Turbines v. U.S. Bur. of Ocean Energy Mgmt.*,
    100 F.4th 1 (1st Cir. 2024) ................................................................................. 3

*Nantucket Residents Against Turbines v. U.S. Bur. of Ocean Energy Mgmt.*,
    145 S.Ct. 1050 (U.S. Jan. 13, 2025) (No. 24-337) ............................................ 3

*Nantucket Residents Against Turbines v. U.S. Bur. of Ocean Energy Mgmt.*,
    675 F. Supp. 3d 28 (D. Mass. 2023) .................................................................. 3

*New Jersey v. EPA*,
    989 F.3d 1038 (D.C. Cir. 2021) ......................................................................... 2

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ....................................................................................... 10

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ............................................................................... 6

*New York v. Trump*,
    No. 1:25-cv-00039 (D.R.I. Mar. 6, 2025), 2025 WL 715621 ................................. 9

*Nieves–Márquez v. Puerto Rico*,
    353 F.3d 108 (1st Cir. 2003) ............................................................................... 9

*Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*,
    461 U.S. 190 (1983) ........................................................................................... 4

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ........................................................................................... 8

*Responsible Offshore Dev. All. v. DOI*,
    No. 24-966, 2025 WL 1287066 (U.S. May 5, 2025) ............................................ 5

*Rotinsulu v. Mukasey*,
    515 F.3d 68 (1st Cir. 2008) ................................................................................. 3

*Seafreeze Shoreside, Inc. v. DOI*,
    123 F.4th 1 (1st Cir. 2024) ................................................................................. 5

*Seafreeze Shoreside, Inc. v. DOI*,
    No. 24-971, 2025 WL 1287076 (U.S. May 5, 2025) ............................................ 5

iii

*Telecomms. Rsch & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ................................................................................. 7

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.,*
    578 U.S. 590 (2016) ............................................................................................... 6

*Webb v. Injured Workers Pharmacy, LLC,*
    72 F.4th 365 (1st Cir. 2023) ................................................................................... 1

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ............................................................................................... 6

*Zivitofsky v. Kerry,*
    576 U.S. 1 (2015) ................................................................................................... 8

**Executive Actions**

90 Fed. Reg. 8363 (Jan. 29, 2025) ............................................................................. 1, 9

The Defendants admit that federal agencies have altogether halted wind-energy approvals pending the extra-statutory assessment ordered by the President. *See* 90 Fed. Reg. 8363 (Jan. 29, 2025), § 2(a) (Wind Directive) (ECF 71-17); ECF 123 (Opp. 32). They admit that the assessment is in early stages and provide no timeline for completion. Defendants make no attempt to dispute the halt's dire impacts on the wind-energy industry. Indeed, they make no claim that the halt had any reasoned basis. Opp. 32. Instead, Agency Defendants claim stunningly broad authority to halt all approvals, without explanation, until some unknown time in the future. And rather than muster any defense on the merits, they contend that such action—which sent shockwaves through the industry—is essentially unreviewable. They claim it may be challenged only through unreasonable delay cases on specific projects, Opp. 31–32, and where, *inter alia*, plaintiffs can show those projects are entitled to their permits, Opp. 15. Defendants' admissions, omissions, and sweeping claims underscore that Agency Defendants' categorical and indefinite cessation of wind-energy permitting will cause significant cognizable and irreparable harms to the States; that the States are likely to succeed on at least one claim; and that the equities tilt sharply in favor of promptly resuming wind-energy approvals. The States' motion should be granted and the halt lifted.

## I.  The States Are Likely to Succeed on the Merits.

### A.  The States Have Established Standing.

The States have established Article III standing. As to injury, the States have established an imminent and substantial risk of future harm. *See Webb v. Injured Workers Pharmacy*, *LLC*, 72 F.4th 365, 375 (1st Cir. 2023). Agency Defendants admit they are "complying with the temporary cessation directed by the Wind Memo." Opp. 32; *see also* ECF 123-2 (McElwain ¶ 6) (Army Corps "has not issued new or renewed approvals"); ECF 123-6 (Ford ¶ 9) (Fish and Wildlife Service "has temporarily paused issuance of permits to wind facilities"). Defendants also provide no end date for the assessment, obliquely averring only that it "has begun." *See* ECF 123-3 (Giacona ¶ 5).

1

That indefinite halt has had and will continue to have massive on-the-ground impacts, and risks significant harms to the States. *Contra* Opp. 12–20, 35–39. A cloud of uncertainty now shrouds the industry, causing economic losses and imminently risking the scuttling of projects altogether. *See* ECF 71-12 (NJ-Perry ¶¶ 41–42); ECF 63 (Wells ¶¶ 10–16, 22) (current and threatened harms from halt to offshore and onshore projects); ECF 64 (Burdock ¶ 10) (indefinite halt poses "existential" threat to offshore wind industry); ECF 66 (McNutt ¶ 13) (halt continuing until 2029 would result in 40,000 jobs lost and $96 billion in lost investment). Indeed, Defendants do not dispute that since the halt began, investment in the industry has dried up. *See* Burdock ¶¶ 18–21. They also admit that the Wind Directive now has *further* delayed three permits for the SouthCoast offshore-wind project, which was supposed to be online by 2030, SouthCoast Wind COP ES-1 (Nov. 2024), https://perma.cc/93X3-K5HG, with more delays to come. *See* McElwain ¶ 9; ECF 123-4 (Voyles ¶ 17). The resulting uncertainty is interfering with negotiation of power purchase agreements for that energy. *See* ECF 71-11 (MA-Mahony ¶¶ 31, 34); ECF 1 (Compl. ¶¶ 197–98). As another example, the once fully permitted Atlantic Shores project, which was to be up and running before 2030, Atlantic Shores COP ES-1 (May 2024), https://perma.cc/6NNM-HMY4, is also now held up after the Environmental Protection Agency (EPA) remanded its air permit citing the Wind Directive. Voyles ¶ 23. The States are counting on these and other projects now in limbo to deliver reliable, affordable energy to local markets, realize economic benefits, and meet clean-energy, procurement, and emission-reduction targets. *See* ECF 70 (States' Br.) 9–18; Compl. ¶¶ 213, 215, 312, 319. As just one example, the increasing costs of finding new ways to meet statutory goals, *see id.* ¶ 215, constitutes injury-in-fact. *See New Jersey v. EPA*, 989 F.3d 1038, 1045–49 (D.C. Cir. 2021) (standing to challenge rule that made the state's task of devising an adequate state plan more onerous).

2

As to traceability, the States have shown the necessary link to Agency Defendants' permitting halt not through Defendants' perplexing causal chain, Opp. 17, but through "a predictable chain of events leading from the government action to the asserted injury." *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (States showed "that third parties will likely react in predictable ways to the citizenship question"). Here, the indefinite halt throws a wrench in the works of the complex multiyear process for developing wind-energy projects by assuring that projects will no longer be considered in due course under applicable laws. *See* NJ-Perry ¶¶ 41–42; States' Br. 9–10. The unrebutted evidence shows that developers, manufacturers, and investors are indeed reacting to the indefinite halt in predictable ways: by curtailing wind-project activities now and evaluating whether to abandon them if the halt were to remain in place. *See* Wells ¶ 10; Burdock ¶¶ 11–12, 17–49; ECF 65 (Donadio ¶¶ 7–9). These delays and cancellations will cause injuries to State interests in pursuing affordable, clean, and reliable energy. *See* Compl. ¶¶ 4, 6–7, 142–43, 159–354.

As to redressability, "[i]f a government action causes an injury, enjoining the action usually will redress that injury." *Nantucket Residents Against Turbines v. U.S. Bur. of Ocean Energy Mgmt.*, 675 F. Supp. 3d 28, 47 (D. Mass. 2023), *aff'd,* 100 F.4th 1 (1st Cir. 2024), *cert. denied*, 145 S.Ct. 1050 (U.S. Jan. 13, 2025) (No. 24-337) (quotation omitted). A plaintiff "need not demonstrate that its entire injury will be redressed by a favorable judgment" but that it "will at least lessen its injury." *See Dantzler, Inc. v. Empresas Berrios Inventory & Ops., Inc*., 958 F.3d 38, 49 (1st Cir. 2020). Here, if the halt were lifted, Agency Defendants would process and issue approval decisions according to the laws they are bound to follow, *Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008), and industry would move ahead with projects now in limbo, *see e.g.*, Wells ¶ 17; States' Br. 6 (but for the Wind Directive, SouthCoast project was poised to move forward

after issuance of final permits in March 2025); *see* Compl. ¶ 12; *Louisiana v. Biden*, 622 F. Supp. 3d 267, 286 (W.D. La. 2022) (enjoining stop on oil and gas leasing would redress economic harms).

Defendants' attempts to undercut the States' standing all fail. The harms the States identify are not harms to "people generally," Opp. 13, but to distinct State interests in "the need for additional generating capacity" and "the type of generating facilities to be licensed." *See Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190, 212 (1983). Defendants' contention that the risk of future harm to the States is not "imminent," Opp. 16, collapses under the weight of their admissions that the halt is both categorical and open-ended. If left in place *now*, the halt is substantially likely to injure those interests in the future. And even if the halt did not result in project cancellations, an open-ended delay nonetheless would unquestionably hinder the States' ability to meet offshore-wind procurement, clean energy, and climate targets coming due in the near future. *See* States' Br. 14–16 (citing, *inter alia*, halt's threat to Massachusetts's 2027 offshore-wind procurement goal); *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 923 F.3d 209, 225–27 (1st Cir. 2019) (substantial risk of state healthcare costs from federal rule expanding exemption of federal contraceptive care mandate). Defendants cite no authority—and none exists—for their claim that developers must be "entitled" to pending permits. Opp. 15. And they're wrong to suggest the States must show they cannot conjure up other new sources of energy, like nuclear or geothermal, to meet energy needs or find other ways to reduce pollution. Opp. 17.[1]

Finally, Defendants err in claiming the States fall outside the zone of interests of the law on which their claims are based. Opp. 18–19. The APA does not require "any indication of congressional purpose to benefit the would-be plaintiff." *See Seafreeze Shoreside, Inc. v. DOI*, 123

---

[1] Defendants' alternative request to dismiss the claims of certain States, Opp. 14 n.17, is wrong as a matter of law. *See Biden v. Nebraska*, 600 U.S. 477, 489 (2023).

F.4th 1, 20 (1st Cir. 2024), *cert. denied sub nom. Seafreeze Shoreside, Inc. v. DOI*, No. 24-971, 2025 WL 1287076 (U.S. May 5, 2025), and *Responsible Offshore Dev. All. v. DOI*, No. 24-966, 2025 WL 1287066 (U.S. May 5, 2025) (citations and quotations omitted). Agency Defendants are required to consider wind-energy approvals under the standards and timeframes set forth in applicable laws. *See* Compl. ¶¶ 58–112, 411. The States have significant interests in having these projects considered in due course, States' Br. 9–18, bringing them squarely within the zone of interests of the laws invoked to challenge the halt. *See Louisiana*, 622 F. Supp. 3d at 290–91 (states bringing APA claims against halt on oil-and-natural-gas leasing met zone-of-interests test). The States simply do not seek a substantive outcome under the environmental statutes invoked, as Defendants' theory would require. Opp. 19.

### B. The States Challenge Final Agency Action.

Defendants' APA arguments mischaracterize both the actions they have taken and the nature of the States' claims. The States have neither raised any APA claims against the President, nor sought to enjoin the Wind Directive itself. *Compare* Compl. ¶¶ 355–413, *with* Opp. 24–25. Nor do the States challenge Agency Defendants' exercise of discretion to conduct further review within particular permitting proceedings, Opp. 26, 28—because that is not what happened here. Instead, Agency Defendants sidestepped all applicable law and erected an insurmountable barrier to *any* approvals for *any* project, onshore or offshore, no matter the circumstances of a project or proceeding, pending a "comprehensive" extra-statutory review that has only just begun. *E.g.*, Opp. 32; Giacona ¶ 5; McElwain ¶ 6; Ford ¶ 9.

Contrary to Defendants' claim, Opp. 25–31, that indefinite all-of-government halt "mark[s] the consummation of the agency's decisionmaking process" as to issuance of wind-energy approvals under myriad federal statutes. *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)); *see*

*Louisiana*, 622 F. Supp. 3d at 291–93 (listing extensive support for holding that pause in oil and gas leasing constituted consummation of decisionmaking process); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001) (agency's "own behavior [] belies the claim that its interpretation is not final"). And that halt indisputably has "legal consequences," impacting the federal government's permitting actions and the States' rights, felt through daily, mounting harms with no end in sight. *See supra* 1–4; States' Br. 9–18. Like prior efforts to halt offshore energy leasing, that halt is final agency action reviewable under the APA. *See Louisiana v. Biden*, No. 2:24-cv-00406, 2024 WL 3253103 (W.D. La. July 1, 2024) (holding liquid natural gas export ban was final agency action).

Against that reality, Defendants parse the finality of each of the many individual actions they have taken to implement the halt. Opp. 25–31. But those actions, like Defendants' admissions before this Court, are but evidence of the final action challenged here: "the decisions by the Agency Defendants to implement broad, categorical freezes on" wind-energy approvals. *New York v. Trump*, 133 F.4th 51, 67 (1st Cir. 2025); *see, e.g.*, Opp. 32; McElwain ¶ 6; Ford ¶ 9. That is, the scope of the States' claims properly mirrors the scope of Agency Defendants' across-the-board halt on wind permitting.

Next, Defendants zoom out, claiming Plaintiffs "seek 'wholesale improvement of [the government's permitting] program[s].'" Opp. 30 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)). But unlike the challenge to the "continuing (and thus constantly changing) operations" of the land withdrawal program in *Lujan*, the States seek here to vacate a discrete *barrier* to *every* operation of an applicable permitting program. 497 U.S. at 890; *see Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (challenge to across-the-board agency practice violating statutory command not impermissibly programmatic).

6

**C. The States Are Likely To Succeed on the Merits.**

The crux of Defendants' response on the merits is that plaintiffs are limited to bringing a missed deadline or unreasonable delay suit under Section 706(1) of the APA, and not any claims under Section 706(2), even when multiple agencies affirmatively and explicitly decide—in concert and for reasons that are patently unlawful—to freeze performance of their statutory duties as to large classes of pending and future adjudications. Opp. 31–33. That is not the law. To be sure, if plaintiffs want a court order compelling action on specific adjudications by dates certain, they must sue under Section 706(1). *See Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). But if they want the less intrusive remedy of holding a freeze unlawful and setting it aside, clearing the way for agencies to perform their statutory duties in accordance with law, they may sue under Section 706(2), as the States have done here. *See Louisiana*, 622 F. Supp. 3d at 296 (finding it "unnecessary" to reach Section 706(1) claim where court found agencies' oil and gas lease pause arbitrary and capricious and unlawful under Section 706(2)); *Hornbeck Offshore Serv., LLC v. Salazar*, 696 F. Supp. 2d 627, 638 (E.D. La. 2010) (enjoining six-month moratorium on deepwater oil drilling based on likelihood of success on Section 706(2) claims). To obtain that more modest remedy of lifting the halt, the States need not show that *any* delay in concluding a wind-related adjudication missed a deadline or would be unreasonable; they need only show that this wholesale and indefinite delay of all wind-related approvals is invalid. The States' motion amply makes that showing, States' Br. 21–34, and Defendants offer no serious response.

*First*, Agency Defendants offer no response—zero—to the States' claims that they failed to explain the halt on approvals, its abrupt shift from longstanding federal policy and practice, its inconsistency with federal actions curtailing review of other types of energy, or its impact on the States' reliance interests in securing clean, reliable, and affordable energy. Opp. 32 ("Agency Defendants will provide the necessary explanations when . . . issuing permit decisions."). The halt

is thus arbitrary and capricious. States' Br. 22–30; *see Hornbeck Offshore Serv.*, 696 F. Supp. 2d at 638 (likelihood of success where agency "failed to cogently reflect the decision to issue a blanket, generic, indeed punitive, [drilling] moratorium").

*Second*, Defendants' retort to the States' contrary to law claim falls along with the argument that the States were required to bring their case under Section 706(1). Opp. 32. Agency Defendants have simply stopped all adjudications under, and thus acted contrary to, all applicable permitting laws, which require comprehensive, but prompt review under specific standards and procedures that foster regulatory certainty. States' Br. 30–33. That is so regardless of whether any specific deadline has been missed. *Louisiana*, 622 F. Supp. 3d at 293 ("Although there is certainly nothing wrong with performing a comprehensive review, there is a problem in ignoring acts of Congress and stopping the [oil-and-gas leasing] process while the review is being completed.").

*Third*, Defendants' responses to the States' two non-statutory-review claims (Counts III and IV) are unpersuasive. Courts review Executive Branch actions in equity, not just "for constitutionality," Opp. 25 n.13, but also for inconsistency with statutes. *E.g.*, *Zivitofsky v. Kerry*, 576 U.S. 1 (2015). The "full scope of [equity] jurisdiction is to be recognized and applied," *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946), absent only "the clearest command" from Congress, *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013) (quotation omitted). The APA, which does not apply to the President, Opp. 24, does not preclude equitable review of presidential directives or agencies' implementation. *Contra* Opp. 33. At most, the APA narrows the equitable jurisdiction to the *ultra vires* doctrine (Count IV), which applies "even when a statute precludes review." *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238 (D.C. Cir. 2020) (quotation omitted). That doctrine applies here, where the States' merits arguments are "obviously correct." *Id*. at 1239.

*Finally*, the Wind Directive's "consistent with applicable law" caveat, 90 Fed. Reg. at 8363;

Opp. 34, cannot save its categorical halt, because it cannot be implemented lawfully. *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) ("Savings clauses . . . cannot be given effect when the Court, by rescuing the [legality] of a measure, would override clear and specific language."); *New York v. Trump*, No. 1:25-cv-00039, 2025 WL 715621, *9 n.11 (D.R.I. Mar. 6, 2025) ("'consistent with the law' caveat was nothing more than window dressing").

## II.    An Injunction Would Prevent Irreparable Harm And Serve the Public Interest.

Preliminary relief may be awarded if needed to avoid "a significant risk of irreparable harm." *Nieves–Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). As described above, *supra* 2–4, the States have established a significant risk of harm to energy reliability and affordability; state investments and economic benefits; energy and climate laws; and pollution reduction, States' Br. 11–18, 35–39. Defendants' attempts to undercut those harms fall flat.

The States' harms are neither based on "hypothetical scenarios" nor too attenuated. Opp. 35, 36–38. Freezing approvals indefinitely for projects that would deliver these benefits has already caused harm and created grave uncertainty in the industry—creating  a real and mounting risk *now* that such benefits will be substantially postponed or lost altogether due to project delays and cancellations. States' Br. 20–21, 34–38. For the same reason, Defendants are wrong (Opp. 38) that a permanent injunction would cure the States' harms. *See Concord Hosp. v. NH Dep't of Health & Hum. Servs.*, 743 F. Supp. 3d 325, 362–63 (D.N.H. 2024) (financial loss irreparable where cannot recoup damages from federal agency). Nor can Defendants undermine the risk of loss of grid reliability benefits by claiming the halt is "temporary." Opp. 36. Merely labeling an action "temporary" does not make it so. *See New York v. Trump*, 2025 WL 715621, at *13 (rejecting similar argument as to funding freeze with no end date). The Wind Directive bears no end date, and Agency Defendants provide none. 90 Fed. Reg. 8363. As for affordability, Defendants simply do not respond to the States' argument that the halt will increase energy costs. States' Br. 12, 20,

35–36. And there is a clear "causal nexus" between the Wind Directive's implementation and impacts on the States' statutory clean-energy, procurement, and emission-reduction goals. *Contra* Opp. 37. For example, projects like SouthCoast and Atlantic Shores, held up indefinitely by the Wind Directive, *supra* at 2, represent a significant portion of short-term offshore-wind procurement targets—about 20% and 14% for Massachusetts and New Jersey, respectively. The loss of these projects would doom those States "from effectuating statutes enacted by representatives of its people[.]" *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). So too with respect to state clean energy and pollution-reduction laws, which also rely on wind energy. States' Br. 13–16, 37–38.

In short, a preliminary injunction is urgently needed to prevent these harms to the States, "restore normalcy to" this industry, "and repair the public's faith in the administrative process." *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 340 (E.D. La. 2011); *accord Hornbeck Offshore Serv.*, 696 F. Supp. 2d at 639 ("effect on employment, jobs, [and] loss of domestic energy supplies caused by the moratorium . . . will clearly ripple throughout the economy in this region").

## III.    Defendants' Requested Bond Is Inappropriate.

Courts typically require no bond or a nominal bond in actions between states and the federal government, *see Maine v. U.S. Dep't of Agric.*, No. 1:25-cv-00131, 2025 WL 1088946, at *30 (D. Me. Apr. 11, 2025) (collecting cases), or to "enforce important federal rights or public interests," *id.* (cleaned up). The Court should reject Defendants' request, Opp. 40, that the States pay federal employees to do what the law requires: process approvals in due course and restore regulatory certainty to an industry critical to meeting the States'—and the public's—energy needs.

<u>**CONCLUSION**</u>

The States respectfully request that the Court grant a preliminary injunction.

10

Respectfully submitted,                    Dated: June 3, 2025

**LETITIA JAMES**                           **ANDREA JOY CAMPBELL**
 *Attorney General of New York*              *Attorney General of Massachusetts*

By: */s/ Michael J. Myers*                  By: */s/ Turner H. Smith*
Michael J. Myers*                           Turner H. Smith, BBO No. 684750
 *Senior Counsel*                            *Assistant Attorney General & Deputy Chief*
Laura Mirman-Heslin*                        Nathaniel Haviland-Markowitz, BBO No. 713940
Rene F. Hertzog*                             *Assistant Attorney General*
 *Assistant Attorneys General*              Jonathan Whitney, BBO No. 694760
Environmental Protection Bureau              *Special Assistant Attorney General*
The Capitol                                 Energy and Environment Bureau
Albany, NY 12224                            Office of the Attorney General
(518) 776-2382                              1 Ashburton Pl.
Michael.Myers@ag.ny.gov                     Boston, MA  02108
                                            (617) 963-2277
                                            Turner.Smith@mass.gov
*Counsel for the State of New York*

                                            *Counsel for the Commonwealth of*
                                            *Massachusetts*

**KRISTIN K. MAYES**                        **ROB BONTA**
 *Attorney General of Arizona*               *Attorney General of California*

By: */s/ Mary M. Curtin*                    By: */s/ Kate M. Hammond*
Mary M. Curtin*                             Kate M. Hammond*
 *Senior Litigation Counsel*                 *Deputy Attorney General*
Arizona Attorney General's Office           Robert Swanson*
2005 North Central Avenue                    *Acting Supervising Deputy Attorney General*
Phoenix, AZ 85004                           Jamie Jefferson*
(602) 542-3333                               *Deputy Attorney General*
Mary.Curtin@azag.gov                        Office of the Attorney General
                                            300 South Spring Street, Suite 1702
                                            Los Angeles, CA 90013
*Counsel for the State of Arizona*          (213) 269-6531
                                            Kate.Hammond@doj.ca.gov
                                            Robert.Swanson@doj.ca.gov
                                            Jamie.Jefferson@doj.ca.gov

                                            *Counsel for the State of California*

11

**PHILIP J. WEISER**
  *Attorney General of Colorado*

By: */s/ Carrie Noteboom*
Carrie Noteboom*
  *Assistant Deputy Attorney General*
Jessica L. Lowrey*
  *First Assistant Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6288 (Noteboom)
(720) 508-6167 (Lowrey)
Carrie.Noteboom@coag.gov
Jessica.Lowrey@coag.gov

*Counsel for the State of Colorado*


**KATHLEEN JENNINGS**
  *Attorney General of Delaware*

By: */s/ Ian R. Liston*
Ian R. Liston*
  *Director of Impact Litigation*
Vanessa L. Kassab*
  *Deputy Attorney General*
Ralph Durstein III*
  *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov

*Counsel for the State of Delaware*


**WILLIAM TONG**
  *Attorney General of Connecticut*

By: */s/ Jill Lacedonia*
Jill Lacedonia*
  *Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

*Counsel for the State of Connecticut*


**BRIAN L. SCHWALB**
  *Attorney General of the District of Columbia*

By: */s/ Estefania Y. Torres Paez*
Estefania Y. Torres Paez, BBO No. 705952
  *Assistant Attorney General*
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
Estefania.TorresPaez@dc.gov

*Counsel for the District of Columbia*

12

**KWAME RAOUL**
   *Attorney General of Illinois*

By: */s/ Jason E. James*
Jason E. James*
   *Assistant Attorney General*
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
Jason.James@ilag.gov

*Counsel for the State of Illinois*


**ANTHONY G. BROWN**
   *Attorney General of Maryland*

By: */s/ Steven J. Goldstein*
Steven J. Goldstein*
   *Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Counsel for the State of Maryland*


**KEITH ELLISON**
   *Attorney General for the State of*
   *Minnesota*

By: */s/ Catherine Rios-Keating*
Catherine Rios-Keating*
   *Special Assistant Attorney General*
Environmental and Natural
Resources Division
445 Minnesota Street, Suite 1800
Saint Paul, MN 55101
(651) 300-7302
Catherine.Rios-Keating@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*


**AARON M. FREY**
   *Attorney General of Maine*

By: */s/ Robert Martin*
Robert Martin*
   *Assistant Attorney General*
6 State House Station
Augusta, ME 04333
(207) 626-8579
Robert.Martin@maine.gov

*Counsel for the State of Maine*


**DANA NESSEL**
   *Attorney General of Michigan*

By: */s/ Lucas Wollenzien*
Lucas Wollenzien*
Michael Moody*
   *Assistant Attorneys General*
Michigan Department of Attorney General
P.O. Box 30755
Lansing, MI 48909
(517) 335-7627
WollenzienL@michigan.gov
Moodym2@michigan.gov

*Counsel for the People of the State of Michigan*


**MATTHEW J. PLATKIN**
   *Attorney General for the State of New Jersey*

By: */s/ Terel L. Klein*
Terel L. Klein*
   *Deputy Attorney General*
Office of the Attorney General
25 Market Street, 7th Floor
Trenton, NJ 08625
(609) 376-2818
Terel.Klein@law.njoag.gov

*Counsel for the State of New Jersey*

13

**RAÚL TORREZ**
   *Attorney General of New Mexico*

By: */s/ William Grantham*\*
William Grantham\*
   *Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 717-3520
wgrantham@nmdoj.gov

*Counsel for the State of New Mexico*

**DAN RAYFIELD**
   *Attorney General of Oregon*

By: */s/ Paul Garrahan*\*
Paul Garrahan\*
   *Attorney-in-Charge*
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

*Counsel for the State of Oregon*

**PETER F. NERONHA**
   *Attorney General of Rhode Island*

By: */s/ Nicholas M. Vaz*
Nicholas M. Vaz, BBO No. 693629
   *Special Assistant Attorney General*
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Counsel for the State of Rhode Island*

**NICHOLAS W. BROWN**
   *Attorney General of Washington*

By: */s/ Yuriy Korol*
Yuriy Korol\*
   *Assistant Attorney General*
Washington Attorney General's Office
Environmental Protection Division
800 5th Ave Ste. 2000 TB-14
Seattle, WA 98104-3188
(206) 332-7098
Yuriy.Korol@atg.wa.gov

*Counsel for the State of Washington*

*\*admitted pro hac vice*

14

**CERTIFICATE OF SERVICE & RULE 7.1 CERTIFICATION**

I, Michael J. Myers, certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF). I further certify that counsel for Plaintiffs conferred with counsel for Defendants on May 8, 2025 prior to filing of the motion for a preliminary injunction, and that Defendants filed their opposition on May 29, 2025.

*/s/ Michael J. Myers*
Michael J. Myers