UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al,*<br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, *et al,*<br><br>Defendants. | CASE NO. 1:25-cv-11221 |

**SUPPLEMENTAL DECLARATION OF MARGUERITE WELLS**
**EXECUTIVE DIRECTOR OF ALLIANCE FOR CLEAN ENERGY NEW YORK**

I, Marguerite Wells, pursuant to 28 U.S.C. § 1746, hereby declare that:

**RELEVANT BACKGROUND AND EXPERIENCE**

1. I am Executive Director of Alliance for Clean Energy New York, Inc. ("ACE NY"). I am of the age of majority, am competent to make this declaration, and make this declaration based on my personal knowledge, investigation, and review of information and business records provided by ACE NY's member companies.

2. I submit this declaration in support of ACE NY's supplemental brief in response to the Defendants' motion to dismiss. This declaration supplements the previous declarations I have provided in this case, incorporated herein by reference to avoid repetition.

3. Attachment B hereto is a true and correct copy of ACE NY's membership list, current as of June 6, 2025.

**Offshore Wind Energy Leases**

4. Attachment A hereto is a list of offshore wind energy leases issued to date by the Department of the Interior that are subject to additional federal permitting requirements. The

1

offshore wind energy leases that are owned by ACE NY members are yellow-highlighted. A lease is marked as owned by an ACE NY member if an ACE NY member owns the lease in whole or in part, directly or through a subsidiary. Attachment A also includes information on the sale price of each lease and the rental fees for each lease over the lifetime of the lease. Between 2012 and through 2024, offshore wind lease holders have paid the federal government $6.6 billion in lease sales, rental fees, and operating fees. For any lease still requiring a federal permit, development progress has stopped. The lease owners are still required to pay rental fees on their stagnant leases, and have billions of dollars in stranded investments in leases.

5. Under the terms of a typical lease from BOEM for offshore wind projects, developers have a limited time period in which to meet specified milestones for the project. Before beginning any proposed activities on the lease, the developer must submit a site assessment plan ("SAP") and a Construction and Operations Plan ("COP"). Each lease has a preliminary period of no more than five years, 30 C.F.R. § 585.235, and the COP must be submitted by the end of the preliminary period, 30 C.F.R. § 585.601. The developer's failure to comply with of these provisions could be grounds for lease cancellation under the lease and 30 C.F.R. § 585.422(b)(1). As a result, BOEM's stoppage of permitting prejudices developers by depriving them of part of the time available to meet a requirement of their lease.

6. Attachment A also includes leases listed in the FAST-41 permitting database for which permitting has been paused by Defendant agencies based on the January 20, 2025 Presidential Memorandum ("Wind PM") and agencies adoption and implementation thereof prohibiting all new and renewed approvals for wind projects ("Wind Ban"). As set forth in ACE NY's previous filings in this case, the FAST-41 entries for Bluepoint Wind, SouthCoast Wind, and Atlantic Shores North all state that they have been paused because of the Wind PM. In

addition, the FAST-41 database indicates that the Skipjack Wind was paused by BOEM on March 25, 2025, with no reason given, circumstances indicating that the pause is occasioned by the Wind PM.

7. The entity listed as "Company A" in my previous declaration is Atlantic Shores Offshore Wind, developer of Atlantic Shores South Project 1. The entity listed as "Company B" in my previous declaration is OW North America LLC ("Ocean Winds"), developer of SouthCoast Wind and Bluepoint Wind.

**Atlantic Shores South Project 1**

8. Atlantic Shores South Project 1 is listed as fully permitted in the FAST-41 database. But as set forth in ACE NY's previous filings and the Voyles Declaration on behalf of the U.S. Environmental Protection Agency ("EPA") in this case, the project's Clean Air Act permit has been withdrawn at EPA's request, citing solely the Wind PM.

9. An ACE NY member, Atlantic Shores Offshore Wind, LLC ("Atlantic Shores"), was formed in December 2018 as a Delaware limited liability company with the sole purpose of developing offshore wind energy projects off the Atlantic Coast in the OCS. The company has offices in Brooklyn, New York; Atlantic City, New Jersey; and Boston, Massachusetts.

10. Together with the following subsidiaries, of which Atlantic Shores is the sole member and is a member manager, Atlantic Shores holds four renewable energy leases issued by BOEM: (1) Lease OCS-A 0499 (the "0499 Lease"), which is leased by Atlantic Shores Offshore Wind Project 1, LLC, a Delaware limited liability company for development of Atlantic Shores' Project 1 ("Project 1"); (2) Lease OCA-A 0570 (the "0570 Lease"), which is leased by Atlantic Shores Offshore Wind Project 2, LLC, a Delaware limited liability company for development Atlantic Shores' Project 2 ("Project 2"); (3) Lease OCS-A 0549 (the "0549 Lease"), which is

3

leased by Atlantic Shores directly for development of Atlantic Shores' Project 3; and OCS-A 0541 (the "0541 Lease"), which is leased by Atlantic Shores Offshore Wind Bight, LLC for development of one or more additional offshore wind projects. For ease of reference, "Atlantic Shores" is used herein to refer collectively to Atlantic Shores Offshore Wind, LLC and its above-referenced subsidiaries.

11. The 0499 Lease was originally acquired from the United States by a separate company, US Wind Inc., for an acquisition fee of $1,006,240 in an auction held November 9, 2015. The 0499 Lease was subsequently acquired from US Wind, Inc., by an affiliate of Atlantic Shores for $215,000,000. The lease was then assigned to Atlantic Shores in an assignment approved by BOEM on August 13, 2019. Since its assignment to Atlantic Shores, the 0499 Lease has been segregated into three leases: the original 0499 Lease, the 0549 Lease, and the 0570 Lease.

12. The 0541 Lease was acquired from the United States by Atlantic Shores in an auction held February 25, 2022 for an acquisition fee of $780,000,000. Taken together with the acquisition cost of the 0499 Lease, the United States has therefore received $781,006,240 from Atlantic Shores and its predecessor-in-interest for the right to pursue development of offshore wind energy projects within the leases. Atlantic Shores and its affiliates have paid $995,000,000 (to the United States and to US Wind, Inc., via Atlantic Shores' affiliate) to acquire the leases.

13. In addition to the acquisition fees paid by Atlantic Shores, Atlantic Shores also makes regular rent payments to the United States for all four leases. For 2025, Atlantic Shores will pay $912,942 to the United States, with $189,226 attributable to the 0499 Lease, $242,276 to the 0570 Lease, $238,053 attributable to the 0541 Lease, and $243,387 attributable to the 0549 Lease. Atlantic Shores will still be required to pay these amounts to the United States even

4

though the Wind PM has made it impossible for Atlantic Shores to continue development of the leases. Importantly, these costs include only payments made by Atlantic Shores for the right to own and use the leases, and do not include costs incurred by Atlantic Shores to develop the leases.

14. Atlantic Shores had received all federally required permits for Project 1 and Project 2, and, until the Wind PM, had no reason to believe the federal government would not uphold the permits which it had duly authorized and issued to Atlantic Shores. As a direct consequence of the Wind PM, however, the federal government has reversed its position and withdrawn critical permits from Atlantic Shores without justification.

15. On September 30, 2024, EPA issued Air Permit Number OCA-EPA-R2 NJ 02 (the "Air Permit") to Atlantic Shores Offshore Wind Project 1, LLC, which covered Project 1 and Project 2, following a lengthy and in-depth multi-year permitting process that started with submission of Atlantic Shores' Construction and Operations Plan for the projects on March 25, 2021. After a Notice of Appeal was filed with the EPA's Environmental Appeal Board on October 15, 2024, the EPA filed a brief defending the Air Permit and requesting dismissal of the appeal on November 5, 2024.

16. On February 28, 2025, before the EAB had acted on the petition, EPA abruptly reversed course and requested that the EAB remand the Air Permit back to the agency for further proceedings. The EPA's sole stated basis for this request was that it wished to "reevaluate the Project [i.e., Project 1 and Project 2] and its environmental impacts in light of the [Wind PM]." The EPA further stated that it desired a remand of the Air Permit "so that it may implement the [Wind PM] and include the [Air Permit] in the comprehensive review of permitting practices called for in the [Wind PM]," notwithstanding that the Wind PM's Section 2 only applied to

5

"new or renewed" federal approvals. The EAB granted EPA's request to remand on March 14, 2025 over Atlantic Shores' objection, and denied Atlantic Shores' motion to reconsider the remand on April 15, 2025. Despite continued outreach by Atlantic Shores following the denied motion, EPA has made no announcements and provided no information regarding what additional review it intends to conduct regarding the Air Permit.

17. Critically, the EAB ruling violates the Clean Air Act as it has used the remand to hold the Air Permit in limbo, stating "Atlantic Shores does not at this time have a PSD permit to construct or operate its project."[1] This finding demonstrates EPA is in violation of the well-established rule that EPA has a nondiscretionary duty to act on Atlantic Shores' OCS air permit application within one year, as the Clean Air Act provides that completed permit applications "*shall* be granted or denied not later than one year after the date of filing of such completed application." 42 U.S.C. § 7475(c); *see also Avenal Power Ctr., LLC v. EPA*, 787 F. Supp. 2d 1, 4 (D.D.C. 2011).

18. Without the Air Permit, as stated by the EAB, Atlantic Shores cannot proceed with construction of Project 1 and Project 2. *See* 30 C.F.R. § 585.700 (requiring compliance with the Clean Air Act OCS permit requirements at 40 C.F.R. Part 55). As a direct consequence of the remand—justified solely on the basis of the Wind PM—Atlantic Shores' other permits for Project 1 and Project 2 are now at risk due to misalignment in permit conditions and timelines that are all dependent on Atlantic Shores' construction schedule. Even if EPA acts on the Air Permit and reissues it at a later date, that will not remedy the current inability to proceed with the

---

[1] EAB, *In re Atlantic Shores Offshore Wind, LLC*, OCS Appeal No. 24-01, Order Granting Motion for Voluntary Remand, at 7-8 (Mar. 14, 2025).

Projects. The loss of the Air Permit significantly jeopardizes Atlantic Shores' construction plans, which for Project 1 the government had approved to start as early as 2025.

19. The loss of the Air Permit impairs Atlantic Shores' vested rights in its leases and final project approvals, and negates the development rights received by Atlantic Shores from the federal government in exchange for the lease payments which it has made and is still making to the United States. The effect of the Wind PM is an unauthorized, *de facto* suspension of Atlantic Shores' fully vested rights under the Outer Continental Shelf Lands Act and its lease terms, both of which do not allow for a pause without making certain rationally-supported findings before taking such action. Here, the Wind PM has been used to impair vested rights without any valid, predicate basis.

20. Due to not being able to conduct scheduled activities as a result of the Wind PM, Atlantic Shores had to obtain a pause of its FAST-41 permitting dashboard schedule for the Atlantic Shores' North Project, resulting in no activity occurring to further the Project. The FAST-41 statute is a permit streamlining law that provides that agencies are to adopt strict permitting timetables that are codified in the FAST-41 "Dashboard" and strongly discourages any delays in those timelines, providing a process for approval of certain delay durations (i.e., more than 30 days). 42 U.S.C. §§ 4370m-2(b) & (c)(2). The FAST-41 law also does not allow for certain extension lengths when the delay is in the control of the government. *Id.* § 4370m-2(c)(2)(D).

21. These offshore wind projects require massively complex, coordinated reviews by at least eleven federal agencies and require investments of large amounts of time and expense by Atlantic Shores personnel and third-party consultants. It is not reasonably practicable or feasible for developers such as Atlantic Shores to proceed with key project deliverables in an

7

environment where the permits required to do so have been placed in limbo and there is no certainty as to what permitting timing or standards will apply going forward.

22. These impacts are not merely theoretical and without real world consequences—due to the uncertainty caused by the Wind PM, Atlantic Shores has materially reduced its personnel, terminated contracts, and canceled planned project investments to the detriment of Atlantic Shores, its intended customers (e.g., New Jersey), and the broader communities which previously stood to benefit from the economic activity and electricity that Atlantic Shores' projects would have generated.

23. Most recently, this includes cancellation of an interconnection agreement and associated upgrades to the regional transmission grid, and Atlantic Shores recently filed a petition seeking to terminate its OREC award (equivalent to an energy offtake contract) for Project 1 with the New Jersey Board of Public Utilities ("BPU").[2]

24. Atlantic Shores' OREC Petition demonstrates that the company has invested significant time and resources, and made meaningful local community level economic commitments, in furtherance of its OREC award. It further recounts how it devoted substantial time and resources to re-bid and seek an updated OREC award through the end of 2024, only to learn in February 2025 of the BPU's announcement that it would not proceed with an award in the Fourth Solicitation citing, in part, the "uncertainty being driven by federal actions and permitting." The loss of having the opportunity to receive an updated OREC award which better addresses the current macroeconomic situation is another harm suffered by Atlantic Shores as a result of the Wind PM.

---

[2] The BPU docket with the petition is available at https://publicaccess.bpu.state.nj.us/CaseSummary.aspx?case_id=2113817.

8

25. The regulatory uncertainty and delays stemming from the Wind PM have materially impacted Atlantic Shores' business operations and caused it to incur financial harm, and Atlantic Shores will continue to experience harm in the form of contractual losses and stranded development expenses if this uncertainty and these delays continue.

**Other Offshore Leases**

26. Based on the Wind PM, BOEM will not approve a COP for any of the leases in the New York Bight, and the indefinite inability to obtain necessary approvals impedes planning and investment in those projects. ACE NY members own all of these leases. In addition to Bluepoint Wind, discussed above, those leases include:

   a. For the Vineyard Mid-Atlantic lease, the lessee submitted a proposed COP in January 2025, and BOEM is in the process of preparing an environmental impact statement under the National Environmental Policy Act ("NEPA"). BOEM cancelled the February public meetings that were scheduled as part of this NEPA process, citing only the Wind PM. BOEM has since provided no concrete update on the NEPA process or the COP for this project.

   b. For the Community Offshore Wind lease, the main owner of the lease, RWE, has announced that has "stopped its offshore activities for the time being" in the United States, stating "We remain cautious given the political developments" in the United States. RWE also owns leases offshore of Louisiana and California. "RWE Suspends its US Offshore Wind Energy Development Activities," *Offshore*, April 29, 2025, https://www.offshore-mag.com/renewable-energy/news/55286697/rwe-rwe-suspends-us-offshore-wind-energy-development-activities

9

27. Attachment A lists five offshore leases on the West Coast. All five are California offshore leases owned by ACE NY members. In November, 2024, BOEM issued a Draft Programmatic Environmental Impact Statement ("PEIS") to assess impacts of offshore wind development across all lease areas in California as part of the agency's programmatic NEPA process and potential programmatic mitigation, in anticipation of BOEM's site-specific NEPA analysis for individual COPs. BOEM had scheduled virtual public meetings to be held on January 28 and 30, 2025, on the Draft PEIS but subsequently cancelled those public meetings, citing only the Wind PM. Further, although the public comment period closed on February 12, 2025, there is no indication of when (or, indeed if) the NEPA review will proceed.

### ACE NY Offshore Wind Industry Members

28. ACE NY's motion for a preliminary injunction was accompanied by declarations by Elizabeth Burdock and Charles Donadio. Mr. Donadio stated that his firm is an ACE NY member and I confirm that is correct, as indicated on the attached ACE NY membership list. Four individual entities, and the Oceantic Network itself, are described in the Burdock Declaration on behalf of the Oceantic Network as ACE NY members. I confirm that is correct, as indicated on the attached ACE NY membership list.

29. As to individual ACE NY member WindServe Marine, discussed in paragraph 42 of the Burdock Declaration, WindServe Marine is involved in the Empire Wind project, but its future business also depends on other offshore wind energy projects receiving approval.

30. Atlantic Offshore Terminals, owner of Arthur Kill Terminal, is an ACE NY member. The Terminal is an offshore wind staging and assembly port under development in Staten Island, New York. The Terminal has not been able to receive a necessary permit from the U.S. Army Corps of Engineers. The Terminal's inability to receive that permit has severely

10

harmed the Terminal's business because it impairs the Terminal's ability to serve permitted wind projects once construction is complete. The Defendant agencies' failure to grant permits to other wind projects in the vicinity of the Terminal also causes harm to the Terminal, which depends on permitted wind projects under construction for its business to operate. This uncertainty with respect to offshore wind construction has caused severe harm to the investment in the Terminal and to its economic viability.

### **Land-Based Projects By ACE NY Members**

31. There are also multiple ACE NY members that seek to develop land-based wind energy projects but are not able to do so because they cannot secure necessary permits due to the Wind Ban. Land-based wind projects such as these cannot simply be put on a shelf for a few years until such time as the federal government may choose to resume permit review and issuance. Land leases expire, local permits and agreements expire, and as a result, the project must be terminated.

32. Prattsburgh Wind, a 147 MW wind project in NY recently awarded a contract with the State, submitted an application to USACE for a wetland permit in February 2025 which has been unable to progress because of the Wind Ban. Without this permit the project, which represents an approximately $300 million investment in the State of New York, with its attendant local economic benefits, will go unrealized, and the tens of millions already invested in this project by its developer will be lost.

33. Canisteo Wind, a 250 MW wind project in NY recently awarded a contract with the State, submitted an application to USACE for a wetland permit in November 2024 which has been unable to progress because of the Wind Ban. Without this permit the project, which represents an approximately $500 million investment in the State of New York, with its attendant

local economic benefits, will go unrealized, and the tens of millions already invested in this project by its developer will be lost.

34. Heritage Wind, a 126 MW wind project in NY recently awarded a contract with the State for its renewable energy credits, has a pending application to USACE for a wetland permit. This project was recently awarded a contract with the State of NY but due to recent necessary changes in project design due to impacts to eagles which will require a permit from FWS, needs to amend its Corps permit application first, and cannot do so because of the Wind Ban. Without this federal permit the project, which represents an approximately $250 million investment in the State of New York, with its attendant local economic benefits, will go unrealized, and the tens of millions already invested in this project by its developer will be lost.

35. An additional five wind projects in New York State have planned to submit applications to the Corps by Q3 2025 to progress their project development timelines in support of operations dates in 2027 and 2028. These include Agricola Wind, Hoffman Falls Wind, Valcour Altona Wind, Valcour Clinton Wind, and Valcour Bliss Wind. These 5 projects, representing over $1 billion of investment in NYS when constructed, cannot progress without federal permits. Their developers have also invested tens of millions of dollars to date in their development, which will be lost without the ability to attain federal permits. At least two of these projects, Agricola and Hoffman Falls, also expect to apply for FWS general eagle take permits. These also cannot progress under the Wind Ban.

36. In sum, as set forth in this declaration and my previous declarations, ACE NY's offshore wind, land-based wind, and wind supply chain members are already being significantly harmed by the Wind Ban. If the Wind Ban is not promptly lifted, ACE NY's members will

continue to suffer significant economic losses that will place their investments at risk and threaten the long-term viability of their projects.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of June in 2025.

_____
Marguerite Wells
Executive Director, ACE NY

**List of Attachments**

<u>Attachment A</u>:  List of Offshore Wind Energy Leases Subject to Additional Federal Permitting Requirements

<u>Attachment B</u>:  ACE NY Membership List

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on June 10, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

BEVERIDGE & DIAMOND, P.C.

/s/ *Brook J. Detterman*
Brook J. Detterman, BBO No. 675396
155 Federal Street
Suite 1600
Boston, MA 02110-1716
(617) 419-2345
bdetterman@bdlaw.com

# Attachment A:

List of Offshore Wind Energy Leases Subject to Additional Federal Permitting Requirements

| Project Name | Region | Capacity (MW) | Status | Lease Sale Price (over lifetime), 2024$ | Lease Rental Fees (over lifetime), 2024$ | Developer Name | Developer is an ACE member? | Permitting Status |
|---|---|---|---|---|---|---|---|---|
| Garden State Offshore | Mid Atlantic | 1249 | Early Development | $ 23,549.22 | $ 3,027,964.21 | Orsted+ PSEG | Y | not found in FAST-41 |
| Marwin | Mid Atlantic | 405 | Advanced Development | $ 2,676,308.99 | $ 802,896.54 | US Wind | | |
| MarWin Expansion | Mid Atlantic | 435 | Advanced Development | $ 2,874,554.10 | $ 865,823.11 | US Wind | | |
| Momentum Wind 1 | Mid Atlantic | 435 | Advanced Development | $ 2,874,554.10 | $ 865,823.11 | US Wind | | |
| Momentum Wind 2 | Mid Atlantic | 435 | Advanced Development | $ 2,874,554.10 | $ 865,823.11 | US Wind | | |
| Ocean Wind 1 | Mid Atlantic | 1470 | Early Development | $ 533,337.83 | $ 3,791,199.69 | Orsted | Y | paused as of 2/29/2024 |
| Atlantic Shores South Project 1 | Mid Atlantic | 1510 | Advanced Development | $ 388,912.34 | $ 1,948,380.03 | EDF/Shell | Y | marked as "complete" in FAST-41 but permit remanded |
| Atlantic Shores South Project 2 | Mid Atlantic | 1290 | Early Development | $ 332,249.61 | $ 1,757,262.26 | EDF/Shell | Y | not found in FAST-41 |
| Bay State Wind | New England | 2579 | Early Development | $ 279,525.22 | $ 12,765,145.09 | Orsted+ Eversource | Y | awaiting permitting - no timetable available |
| Kitty Hawk Offshore | South Atlantic | 3500 | Early Development | $ 8,431,318.85 | $ 9,953,319.29 | Dominion | | |
| Empire Wind 2 | Mid Atlantic | 1260 | Early Development | $ 32,950,603.00 | $ 2,088,400.00 | Equinor | Y | not found in FAST-41 |
| Skipjack Wind 1 | Mid Atlantic | 120 | Early Development | $ 1,098.90 | $ 255,142.36 | Orsted | Y | Permitting deadlines extended at BOEM request as of 3/24/25 |
| Skipjack Wind 2 | Mid Atlantic | 846 | Early Development | $ 7,057.57 | $ 1,371,063.08 | Orsted | Y | not found in FAST-41 |
| Beacon Wind 1 | New England | 1230 | Early Development | $ 78,483,310.26 | $ 1,536,779.88 | BP | | |
| Beacon Wind 2 | New England | 1360 | Early Development | $ 86,778,294.27 | $ 3,155,123.49 | BP | | |
| SouthCoast Wind (Mayflower Wind) | New England | 1287 | Advanced Development | $ 165,261,604.54 | $ 5,520,740.55 | Ocean Winds+ EDP+ Engie | Y | Permitting extension citing Wind PM, 2/26/2025 & 5/23/25 |
| Vineyard Wind 2 (Northeast) | New England | 1200 | Advanced Development | $ 165,384,020.54 | $ 5,294,800.00 | CIP/Avangrid | Y | not found in FAST-41 |
| Ocean Wind 2 | Mid Atlantic | 1514 | Early Development | $ 594,274.56 | $ 4,536,170.54 | Orsted | Y | paused - lease suspension granted 2/29/2024 |
| Bluepoint Wind | Mid Atlantic | 2400 | Early Development | $ 811,629,502.90 | $ 5,817,122.67 | Ocean Winds+ EDP+ Engie | Y | Paused by BOEM, citing Wind PM |
| Attentive Energy One | Mid Atlantic | 1342 | Early Development | $ 431,250,978.75 | $ 805,668.50 | Total/Corio/Rise | Y | not found in FAST-41 |
| Attentive Energy Two | Mid Atlantic | 1404 | Advanced Development | $ 412,207,132.11 | $ 727,724.35 | Total/Corio/Rise | Y | Construction and operations plan in progress, no other permitting processes initiated |
| Community Offshore Wind | Mid Atlantic | 3000 | Early Development | $ 1,167,048,958.41 | $ - | RWE/ NGV | Y | not found in FAST-41 |
| Atlantic Shores Bight | Mid Atlantic | 2400 | Early Development | $ 827,543,806.88 | $ 6,453,881.33 | EDF/Shell | Y | not found in FAST-41 |
| Leading Light Wind | Mid Atlantic | 2400 | Advanced Development | $ 684,315,071.07 | $ 1,539,560.00 | Invenergy | Y | not found in FAST-41 |
| Excelsior Wind (Vineyard Mid-Atlantic) | Mid Atlantic | 1314 | Early Development | $ 302,371,775.59 | $ 836,741.26 | Vineyard Offshore | Y | not found in FAST-41 |
| Carolina Long Bay | South Atlantic | 1000 | Early Development | $ 169,752,575.77 | $ 3,790,653.00 | Total | | |
| Cinergy | South Atlantic | 1600 | Early Development | $ 164,447,807.78 | $ 2,964,527.50 | Duke | | |
| Atlantic Shores North | Mid Atlantic | 2400 | Early Development | $ 567,509.84 | $ 6,598,492.00 | EDF/Shell | Y | paused by BOEM citing Wind PM, 5/22/2025 |
| Maine Research Array | New England | 144 | Early Development | $ - | $ 1,389,885.00 | State of Maine | | |
| Central Atlantic | Mid Atlantic | 1806 | Early Development | $ 75,001,001.00 | $ 6,461,346.17 | Equinor | Y | not found in FAST-41 |
| Central Atlantic | Mid Atlantic | 3143 | Early Development | $ 17,650,500.00 | $ 19,182,999.19 | Virginia Electric and Power Co. | | |
| New England Wind 2 (Commonwealth) | New England | 1080 | Early Development | $ 56,660.63 | $ 1,783,117.33 | Avangrid | Y | not found in FAST-41 |
| Gulf of Maine | New England | 1742 | Early Development | $ 4,892,700.00 | $ 5,909,522.04 | Invenergy | Y | not found in FAST-41 |
| Gulf of Maine | New England | 1755 | Early Development | $ 4,928,250.00 | $ 5,958,581.04 | Avangrid | Y | not found in FAST-41 |
| Gulf of Maine | New England | 2097 | Early Development | $ 5,889,000.00 | $ 8,360,814.45 | Invenergy | Y | not found in FAST-41 |
| Gulf of Maine | New England | 2224 | Early Development | $ 6,244,850.00 | $ 9,686,673.45 | Avangrid | Y | not found in FAST-41 |
| Gulf of America | Gulf of America | 2000 | Early Development | $ 5,734,973.36 | $ 6,917,400.00 | RWE | Y | not found in FAST-41 |
| Canopy Offshore Wind Farm | West Coast | 1600 | Early Development | $ 167,312,382.49 | $ 3,404,417.50 | RWE | Y | not found in FAST-41 |
| California North Floating | West Coast | 1229 | Early Development | $ 184,393,735.43 | $ 2,976,477.42 | Vineyard Offshore/CIP | Y | not found in FAST-41 |
| Atlas Wind | West Coast | 2000 | Early Development | $ 137,923,967.81 | $ 5,404,185.00 | Equinor | Y | not found in FAST-41 |
| Golden State Wind | West Coast | 2000 | Early Development | $ 159,461,325.86 | $ 5,428,215.00 | Ocean Winds+ Reventus | Y | not found in FAST-41 |
| Even Keel Wind | West Coast | 1433 | Early Development | $ 154,156,557.87 | $ 4,022,639.68 | Invenergy | Y | not found in FAST-41 |
| CVOW South | South Atlantic | 800 | Early Development | $ - | $ 2,191,725.00 | Dominion | | |
| | | | Totals: | $ 6,473,130,077.45 | $ 194,946,226.05 | | | |

NOTE: Yellow highlighted rows indicate project is owned in whole or in part by an ACE NY member

# Attachment B:

ACE NY Membership List

ADVANCED ENERGY UNITED
AES
AKRF
ANBARIC
APEX CLEAN ENERGY
ASSOCIATION FOR ENERGY AFFORDABILITY
ATLANTIC SHORES WIND
ATLANTIC WIND TRANSFERS
ATTENTIVE ENERGY
AVANGRID
AZURE MOUNTAIN POWER
BARCLAY DAMON
BAYWA RE
BEDROCK RENEWABLES
BLUE GREEN ALLIANCE
BLUE WAVE ENERGY
BOLTON ST JOHNS
BORALEX
BPCA-NYS Inc.
BQ ENERGY
BRIGHT POWER
BROOKFIELD
BROWN & WEINRAUB
BUILDING AND CONSTRUCTION TRADES COUNCIL
BUILDING DECARBONIZATION COALITION
CAPSTONE
CITIZENS CAMPAIGN FOR THE ENVIRONMENT
CLEARESULT
COMMUNITY OFFSHORE WIND
CORDELIO POWER
CORNELL
COUCH WHITE
COUGHLIN ASSOCIATES ENERGY
CPOWER ENERGY
CS ENERGY
CYPRESS CREEK
DELOITTE
DESRI - FLINT MINE SOLAR
DIEHLUX
DIRECT ENERGY / NRG
E2
EAST LIGHT CAPITAL
EAST POINT ENERGY
EDF RENEWABLES

EDGEWISE ENERGY
OCEAN WINDS - BLUEPOINT
EDP RENEWABLES
EDR
EMEREN
EMOBILITY - ABB
ENEL GREEN POWER
ENERGYRE
ENIRONMENT AMERICA
ENVIRONMENTAL ADVOCATES NY
EONY - ENERGY OTTOWA
EPSILON ASSOCIATES
EQUINOR
EVGO
FINLO SOLAR
FLATIRON ENERGY
FOLEY HOAG
FORM ENERGY
GE VERNOVA
GENERATE UPCYCLE
GREENBACKER CAPITAL
GREENBERG TRAURIG
HARRIS BEACH MURTHA
HECATE ENERGY
HIGHLAND FLEETS
HODGSON RUSS
HODSON ENERGY
INNERGEX
INNOVANT PR
INVENERGY
JASCO APPLIED SCIENCES
JUPITER POWER
KEY CAPTURE ENERGY
LANGAN
LIBERTY RENEWABLES
LONG ISLAND ASSOCIATION
LONG ISLAND FEDERATION OF LABOR
LS POWER
LUCID
MN8 ENERGY
MORNINGSID ENERGY
MOWER
NATIONAL GRID VENTURES
NATIONAL WILDLIFE FEDERATION

NATURAL POWER
NATURAL RESOURCES DEFENSE COUNCIL
NEW LEAF ENERGY
NEW YORK LEAGUE OF CONSERVATION VOTERS
NEW YORK STATE BUILDING AND CONSTRUCTION TRADE COUNCIL
NEXAMP
NEXTERA
NINE DOT ENERGY
NIXON PEABODY
NORBUT SOLAR FARMS
NORTHLAND POWER
NY FOR CLEAN POWER
NY-BEST
NYS LABORERS' ORGANIZING FUND
NYSEIA
ORACLE
ORSTED
OSTROFF ASSOCIATES
PACE ENERGY & CLIMATE CENTER
PALMER CAPITAL
PARKSIDE GROUP
PLUG POWER
PLUS POWER
PSD CONSULTING
REED SMITH
REGIONAL PLAN ASSOCIATION
RENEWABLE ENERGY LONG ISLAND
REPSOL fka CONNECTGEN
RES - RESOURCE ENVIRONMENTAL SOLUTIONS
RIC ENERGY
RISE LIGHT & POWER AKA RAVENSWOOD
RIVERKEEPER
ROMAN STONE
RPI - Center for Architecture Science and Ecology
RWE
SEALED
SIERRA CLUB
SOLSOURCE POWER
SOLTAGE
SPECIAL INITIATIVE ON OFFSHORE WIND
STANTEC
SUSTAINABLE WESTCHESTER
SWEB DEVELOPMENT
SWTCH ENERGY

TECHNOSTROBE
TERRA-GEN
TESLA
THE NATURE CONSERVANCY - NY
THE NORTHEAST REGIONAL COUNCIL OF CARPENTERS
THE ROFFE GROUP
THE WESSON GROUP
TRC COMPANIES
TRI-STATE TRANSPORTATION COALITION
UPROSE
VC RENEWABLES
VESTAS
VINEYARD OFFSHORE
VIRIDON
VOTESOLAR
WIND SERVE MARINE
WSP
YOUNGSOMMER