UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al,* <br><br> Plaintifs*,* <br><br> v. <br><br> DONALD J TRUMP, *et al*, <br><br> Defendants, | Case No. 1:25-cv-11221 |

## <u>DECLARATION OF MICHAEL BROWN</u>

Pursuant to 28 U.S.C. § 1746(2), I, Michael Brown, hereby declare as follows:

1.        I am the Chief Executive Officer of OW North America LLC ("Ocean Winds"). Ocean Winds is an owner, manager and developer of a portfolio offshore wind projects in the United States, including SouthCoast Wind Energy LLC ("SouthCoast Wind"), Bluepoint Wind LLC, and Golden State Wind LLC. I simultaneously serve as the Chief Executive Officer of SouthCoast Wind which is developing one of the commercial-scale wind farm and export cable corridors (together, the "Project") at issue in this matter. I have been employed at Ocean Winds since its inception, and have been the Country Manager for North America since 2022. I assumed

1

the role of Chief Executive Officer of SouthCoast Wind in March of 2024 after previously serving as the Chief Financial Officer and Chief Executive Officer from 2019 through 2022. Collectively, I have worked on the Project for approximately six years, and I have over 15 years of professional experience in the renewable energy field. I execute this Declaration in support of the supplemental brief filed by the State of New York and other Attorneys General in this case based on my personal knowledge of the matters referred to herein.

2.      The Project will consist of up to 141 wind turbine generators ("WTGs") and up to two offshore substation platforms ("OSPs") forming an approximately 2,400-megawatt ("MW") commercial-scale offshore wind energy facility that will be constructed on BOEM Renewable Energy Lease No. OCS-A 0521 (the "Lease Area"). The Lease Area is located in federal waters on the Outer Continental Shelf ("OCS") approximately 23 miles south of Nantucket, Massachusetts, and approximately 60 miles from Rhode Island.

3.      Once fully operational, the Project will deliver approximately 2,400 MW of clean energy, enough to power more than 1.4 million homes, eliminating up to approximately 4 million tons of carbon emissions annually, and over 140 million tons of carbon emissions over the Project's lifetime (estimated for this calculation as 35 years).

4.      On December 13-14, 2018, after conducting a thorough environmental review and issuing an environmental assessment, the Bureau of Ocean Energy Management ("BOEM") conducted a competitive lease sale for commercial wind power on the OCS offshore Massachusetts. The lease areas offered in this competitive sale process were the result of an extended public planning process regarding the issuance of the commercial lease and approval of site assessment activities. SouthCoast Wind (formerly known as Mayflower Wind Energy LLC) won lease OCS-A 0521 with a $135,000,000 winning bid. Since execution of the lease, SouthCoast

2

has paid annual rental payments of $382,164 to BOEM for the Lease Area. In addition to the annual rental payments, in 2025 SouthCoast Wind began paying BOEM a yearly easement fee of $68,725.

5.    In order to fully exercise its right to build a wind farm in the Lease Area, SouthCoast Wind was required to obtain approval of its Construction and Operations Plan ("COP") and related permits and authorizations from cooperating agencies. SouthCoast Wind began this process in 2020 when it submitted a Site Assessment Plan ("SAP"), as required by BOEM regulations to conduct site assessment activities in the Lease Area. BOEM issued its final approval for the SAP on May 26, 2020.[1] SouthCoast Wind and its affiliates conducted extensive surveys of the Lease Area pursuant to the approved SAP and subsequent survey plans to understand and characterize the environment and the Project site.

6.    In February 2021, SouthCoast Wind submitted a detailed COP to BOEM, describing the planned facilities and construction and operation activities for the Project. SouthCoast Wind updated the COP seven times to include updated technical and environmental information, and to respond to agency and public comments. The final version of the COP is thousands of pages long, including appendices, and took thousands of staff and consultant hours to prepare, at significant costs.

7.    On November 1, 2021, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for its review of the COP.  That Notice began a more than three-year period of environmental review by the federal government involving SouthCoast Wind, eleven federal agencies, three state

---

[1] *See* SouthCoast Wind (formerly Mayflower Wind), BOEM, https://www.boem.gov/renewable- energy/state-activities/southcoast-wind-formerly-mayflower-wind. These included meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys.

cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry to local communities, to Native American Tribes and historic preservation organizations. The draft EIS ("DEIS") was published on February 17, 2023. After accepting and responding to public comments, BOEM published the final EIS ("FEIS") on November 15, 2024.[2]

8.      Appendix A to the FEIS describes the extensive consultations and public involvement BOEM undertook in the process of its NEPA review, as well as the numerous required federal, state, and local consultations and approvals required for the Project.

9.      BOEM's NEPA process included an extended, 60-day, public scoping process where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS.  BOEM held three public meetings on the DEIS. SouthCoast Wind attended all of the meetings. SouthCoast Wind also submitted comments in the NEPA process.

10.     In September 2024, SouthCoast Wind was selected to negotiate power purchase agreements ("PPAs") to provide 1,087 MW of offshore wind power to the Commonwealth of Massachusetts and 200 MW of offshore wind power to the State of Rhode Island. In its winning proposal, SouthCoast Wind committed to delivering power by 2030, a requirement of the Massachusetts request for proposals.

11.     On December 20, 2024, BOEM issued a Record of Decision ("ROD") documenting the Department of the Interior's decision to approve, with conditions, the COP.[3]

---

[2] *See* Notice of Availability of a Final Environmental Impact Statement for SouthCoast Wind Energy LLC's Proposed SouthCoast Wind Energy Project Offshore Massachusetts and Rhode Island, 89 Fed. Reg. 90316 (Nov. 15, 2024).

[3] *See* Record of Decision, SouthCoast Wind Project Construction and Operations Plan, BOEM (December, 20, 2024) https://www.boem.gov/sites/default/files/documents/renewable-energy/state- activities/Record-of-Decision-SouthCoast-Wind-OCS-A-0521.pdf.

BOEM subsequently issued the COP approval for the Project on January 17, 2025.[4]

12.    With its COP approval, SouthCoast Wind has all but three of the federally required permits. The three outstanding permits include: (i) U.S. Army Corps of Engineers – Rivers and Harbors Act Section 10/Clean Water Act Section 404, (ii) U.S. Environmental Protection Agency – Clean Water Act National Pollutant Discharge Elimination System, and (iii) U.S. National Oceanic and Atmospheric Administration/National Marine Fisheries Service – Marine Mammal Protection Act ("MMPA") Incidental Take Authorization.  According to the federal FAST-41 dashboard, SouthCoast Wind was scheduled to receive those permits no later than March 27, 2025. Following the issuance of the Presidential Memorandum[5], these three federal agencies subsequently delayed their final action on SouthCoast Wind permits on multiple occasions, each time directly citing the Presidential Memorandum as rationale for the delay in issuing the permits. Because of the Presidential Memorandum, each agency has essentially stopped working on SouthCoast Wind's permits. The status of each of these permits and details on each delay follows.

13.    SouthCoast Wind submitted a Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act joint application to the U.S. Army Corps of Engineers ("USACE") on December 2, 2022. USACE deemed the joint application complete on February 2, 2023 and published a 45-day public notice on February 17, 2023.

14.    On December 20, 2024, USACE issued a joint Record of Decision ("ROD") with BOEM and the National Marine Fisheries Service ("NMFS"). In the joint ROD, USACE

---

[4] *See* Conditions of Construction and Operations Plan Approval, Lease Number OCS-A 0521, BOEM (Jan. 17, 2025) https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SouthCoast%20Wind%20Conditions%20of%20COP%20Approval.pdf.

[5] January 20, 2025, Presidential Memorandum titled "*Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects.*"

documented its decision "to issue a [Department of the Army] permit pursuant to section 10 of the [Rivers and Harbors Act] and section 404 of the [Clean Water Act] to Jennifer Flood representing SouthCoast Wind." The decision to issue the final Section 10/404 permit was made in the ROD and the final issuance of the Section 10/404 permit was scheduled for March 27, 2025.

15. Despite the decision to issue the final permit having been made in December, on March 7, 2025, SouthCoast Wind was informed by BOEM via email, on behalf of USACE that, "Pursuant to the Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (the "Presidential Memorandum"), USACE is unable to render the final permit at this time. Therefore, USACE has identified an alternative completion date of June 26, 2025, and will continually reassess the schedule based on administration directives." No other legal, statutory, or regulatory authority was provided for withholding the permit. Since February 2025, USACE has submitted five monthly status reports to the Federal Permitting Improvement Steering Council ("FPISC") on the Section 10/404 permit. All five status reports have cited only to the Presidential Memorandum as the sole cause of delay to the issuance of the Section 10/404 permit.

16. On May 2, 2025, USACE communicated to SouthCoast Wind that USACE is still unable to render a final permit due to the Presidential Memorandum and would be delaying the final permit issuance date by an additional 90 days to September 24, 2025. SouthCoast Wind has repeatedly objected to each delay.

17. SouthCoast Wind submitted a NPDES permit application to EPA Region 1 on October 31, 2022. After submitting responses to agency comments and multiple revised applications, EPA deemed the application complete on September 29, 2023.

18.     On October 2, 2024, EPA published the draft NPDES permit and held a public comment period from October 3, 2024 through November 6, 2024. EPA held a public informational meeting and a public hearing on November 4, 2024. There were only nine comments submitted on the draft permit, including one from SouthCoast Wind.

19.     EPA was scheduled to issue the final NPDES permit to SouthCoast Wind on March 27, 2025. On February 26, 2025, in an Executive Director Determination, FPISC approved a request made by BOEM, on behalf of EPA, to delay the issuance of the final NPDES permit from March 27, 2025 to June 25, 2025.[6] The extension cited the Presidential Memorandum as the sole cause of delay and that SouthCoast Wind objected to the requested permitting timetable modification.

20.     On May 23, 2025, FPISC approved another request by BOEM, on behalf of EPA, to delay the final NPDES permit by an additional 90 days from June 25, 2025, to September 23, 2025.[7] The extension request again cited the Presidential Memorandum as the sole cause of delay to final permit issuance. The Executive Director Determination also cited SouthCoast Wind's objection to the delay and that "The Project Sponsor further represents that a 90-day extension could cause harm insofar as it interferes with the Project Sponsor's ability to make use of its Lease."

21.     EPA has been unresponsive to SouthCoast Wind's multiple outreach efforts to check on the status of the final permit and provide assistance since the issuance of the Presidential Memorandum on January 20, 2025.

22.     SouthCoast Wind filed a Petition for Incidental Take Regulations for the

---

[6] See https://www.permits.performance.gov/sites/permits.dot.gov/files/2025-02/2025-02-26%20SouthCoast%20Executive%20Director%20Determination.pdf
[7] See https://cms.permits.performance.gov/sites/permits.dot.gov/files/2025-05/2025-05-23%20SouthCoast%20Executive%20Director%20Determination.pdf

construction and operations of the Project to NMFS on March 18, 2022.

23.    After SouthCoast Wind addressed agency comments and submitted five updated versions of the application, NMFS deemed the application complete on September 19, 2022, and published a Notice of Receipt in the Federal Register on October 17, 2022.

24.    On June 25, 2024, NMFS published Proposed Incidental Take Authorization ("ITA") Regulations in the Federal Register and held a 45-day public comment period.

25.    NMFS was scheduled to issue the Final ITA Regulations in the Federal Register on February 25, 2025, and render the ITA on March 27, 2025. On January 21, 2025, NMFS informed SouthCoast Wind by email that the Final ITA Regulations and ITA decision were delayed to May 26 and June 25, 2025, respectively and cited the Presidential Memorandum. Since January 2025, NMFS has submitted monthly status reports to FPISC on delays to the Final ITA Regulations and ITA decision. The four most recent monthly status reports have cited the Presidential Memorandum as the sole cause of delay to the issuance of the Final ITA Regulations and ITA decision.

26.    On May 13, 2025, NMFS informed SouthCoast Wind of an additional four-month delay to the final MMPA milestones. SouthCoast Wind objected to this delay and informed NMFS via email on May 15th that "this substantial, continuous delay interferes with SouthCoast's ability to perform under its Lease and causes significant harm to SouthCoast Wind."

27.    SouthCoast Wind has invested over $600 million to date to plan, permit, develop, and enable the construction the Project. When making these investment decisions, SouthCoast Wind understandably expected that the federal government would follow valid statutes and regulations setting out criteria for issuance of permits. Although there have been no changes or even proposed changes to those statutes and regulations, the federal government appears to have

stopped acting in accordance with them. These investments include:

  a. Rights to OCS-A 0521 through competitive leasing process;

  b. Land rights at the former coal-fired plant at Brayton Point for substation;

  c. Interconnection rights to deliver contracted offtake to ISO-NE;

  d. Major contracts for HVDC assets necessary for the Project in the tens of millions of dollars, the production of which assets has already begun;

  e. Exclusivity rights for inter array cable supply at significant expense;

  f. Exclusivity rights for export cables supply at significant expense;

  g. Land rights for the New Bedford Marine Commerce Terminal at significant expense;

  h. Exclusivity rights for Operation and Maintenance facilities at significant expense;

  i. Exclusivity rights for transportation and installation services for major components at significant expense;

  j. Host Community Agreement with Portsmouth Rhode Island; and

  k. Land rights for cable crossing of Aquidneck Island at significant expense.

28. SouthCoast Wind cannot move forward with development of the Project on the Lease Area without its remaining three federal permits. However, to preserve its ability to eventually generate revenue, SouthCoast Wind must continue to expend millions of dollars to maintain the Lease Area, easements, staff, office, and supply chain contracts. Since issuance of the Presidential Memorandum, SouthCoast Wind has received no information or outreach from the federal agencies charged with implementing the special review mandated by the Presidential Memorandum.

29. The federal agencies charged with issuing SouthCoast Wind's three outstanding

9

permits could grant SouthCoast Wind's final permits based on the voluminous and sound administrative record SouthCoast Wind has established with the federal agencies over the past five years. Based on the agreed upon FAST-41 schedule and the joint ROD, that final approval on the three outstanding permits would have been received by March 27, 2025 as scheduled. However, the federal agencies have not been permitted to issue final permits under the Presidential Memorandum.

30. As noted, SouthCoast Wind paid a lease acquisition fee of $135,000,000 and continues to pay to BOEM annual lease payments of $382,164. As of 2025, in addition to the Lease Area rent, SouthCoast Wind also pays BOEM a yearly easement fee of $68,725. SouthCoast Wind remains obligated to pay these amounts to the United States even though the Presidential Memorandum has stalled SouthCoast Wind's ability to continue development on the Lease Area.

31. SouthCoast Wind continues to pay millions of dollars in annual operating expenses, including salaries, rent, utilities, and taxes. These expenses continue to accrue daily, despite the fact that the Presidential Memorandum has stalled SouthCoast Wind's ability to continue development on the Lease Area.

32. In its power purchase agreement negotiations, SouthCoast Wind continues to work with Massachusetts and Rhode Island to establish contract terms that can account for the uncertainty and the indefinite delay created by the Presidential Memorandum. As a result of the Presidential Memorandum, the execution of PPAs has been delayed from March 27, 2025, to June 30, 2025. Without clarity on when or how issues arising under the Presidential Memorandum will be resolved, it may be impossible for the parties to execute the PPAs.

33. SouthCoast Wind committed tens of millions of dollars in supply chain contract commitments to secure manufacturing slots that enabled its bid into the 2023 Multi-State

Solicitation. As a result of the federal agencies' delay in issuing the final three federal permits, and SouthCoast Wind's inability to clearly identify reliable dates upon which the federal permits would be issued, SouthCoast had to cancel these critical path supply contracts, which resulted in further delays to the Project's development and immediate financial losses tens of millions of dollars in payments of termination fees.

34.      The large, complex, and interdependent nature of SouthCoast Wind's multi-billion dollar infrastructure project means that the cancellation of these critical path supply contracts results in a minimum two-year delay to SouthCoast Wind's ability to deliver power to the grid as the critical path supply chain needs to be rebuilt again from scratch, and new PPAs negotiated. The time cost of money applied to the significant amounts already expended plus the cost of continued overhead necessary to meet SouthCoast Wind's ongoing obligations all incurred solely due to the delay created by the Presidential Memorandum is in excess of seventy million dollars per year.

35.      If the Presidential Memorandum is not lifted, issuance of SouthCoast Wind's final three federal permits will remain paused indefinitely, the development of the Project will continue to be delayed indefinitely, and SouthCoast Wind will continue to incur hundreds of millions of dollars in costs directly related to the delay. In addition, without clarity regarding when the Presidential Memorandum will be lifted, as to date no information has been made available regarding the timing of completion of the special review mandated by the Presidential Memorandum, SouthCoast Wind will be forced to abandon current negotiations with Massachusetts and Rhode Island regarding the execution of the PPAs.

36.      If the Presidential Memorandum is lifted, the three federal agencies that have directly cited the Presidential Memorandum as the sole cause of the delay in issuance of

11

SouthCoast Wind's final three permits could proceed with issuing those permits. Conclusion of the federal permitting process would enable SouthCoast Wind to move forward with the development of the Project and manage the significant costs of developing a multi-billion dollar project.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Boston, Massachusetts on June 9, 2025.

DocuSigned by:

*Michael Brown*

B2F31605ED134D3...

Michael Brown
Chief Executive Officer
OW North America LLC