# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al.<br><br>          Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>          Defendants. | Case No. 25-cv-11221 |

### DECLARATION OF DENISE BARTON

I, Denise Barton, declare as follows:

1. I am a resident of the Commonwealth of Massachusetts. I am over the age of 18. I have been an attorney since 1994 and am licensed to practice in the Commonwealth of Massachusetts. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the University of Massachusetts, in its Office of the General Counsel, as its Chief Deputy General Counsel.

3. As Chief Deputy General Counsel for the University of Massachusetts, I have personal knowledge of the matters set forth below or have knowledge of the matters based on my review of information and records provided to me by University of Massachusetts employees and believe that information to be true.

4. The University of Massachusetts includes its five campuses (the University of Massachusetts Amherst, the University of Massachusetts Boston, the University of Massachusetts Chan Medical School, the University of Massachusetts Dartmouth, and the University of Massachusetts Lowell), as well as the University of Massachusetts Office of the President.

1

*See* M.G.L. c. 75. The University of Massachusetts maintains business records in the ordinary course of University of Massachusetts business which include, *inter alia*, records concerning its expenditures, including those for electricity.

5. I am submitting this declaration in support of the Commonwealth's motion for summary judgment. I am generally familiar with the Executive Memorandum entitled "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects" (Memorandum) signed on January 20, 2025, by President Trump. Section one of the Memorandum withdraws from disposition all areas within the Outer Continental Shelf (OCS) as defined in the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*, but does not alter the existing rights associated with existing leases. Section two of the Memorandum directs all relevant members of the executive branch not to issue or renew approvals, rights of way, permits, leases, or loans for onshore and offshore wind projects. During that pause, the Secretary of the Interior will lead an assessment of the environmental impacts of wind energy on wildlife, and of the economic implications of wind energy.

6. The purpose of this declaration is to attest to the potential impact that the Memorandum may have on the University of Massachusetts as the largest electricity ratepayer in the Commonwealth.

7. The University of Massachusetts has 73,555 students and 26,615 full and part time employees who live, work, and study in its facilities. Running this institution requires the operation and maintenance of hundreds of buildings, and the University of Massachusetts demands large amounts of energy to ensure facilities have running electricity, heating, and cooling. The University of Massachusetts has 165 electricity accounts, and 21 net metering

projects. The University of Massachusetts' electricity load growth is forecasted to be as much as 130% by 2050.

8. As a product of this energy usage, the University of Massachusetts is the largest ratepayer in the Commonwealth, spending approximately $30 million for electricity and $40 million for natural gas annually. Accordingly, the University of Massachusetts is sensitive to potential dramatic changes in energy prices. A 15% change in annual energy costs can increase/decrease the University's energy budget by $10 million.

9. ISO New England, the regional electricity grid operator for the New England region, has conducted studies to better comprehend the impact offshore wind can have on energy prices.

10. As one example, a 2018 assessment by ISO New England found that a hypothetical offshore wind facility would have reduced marginal energy prices by $11/MWh to $13/MWh during New England's cold snap between December 2017 and January 2018.[1] If this facility existed, the University of Massachusetts could have saved $400,000 over similar periods in the future.

11. Additionally, a 2024 assessment indicated that without any offshore wind capacity, the cost of energy would need to be 50% higher in 2050 to meet state emissions goals.[2] A 50% increase in energy prices would mean the University of Massachusetts would be paying $39 million more annually by 2050.

---

[1] ISO New England System Planning Department, *High Level Assessment of Potential Impacts of Offshore Wind Additions to the New England Power System During the 2017-2018 Cold Spell* (Dec. 17, 2018), https://www.iso-ne.com/static-assets/documents/2018/12/2018_iso-ne_offshore_wind_assessment_mass_cec_production_estimates_12_17_2018_public.pdf
[2] Kornitsky et al., *2024 Economic Study*, ISO-NE, at 21–23 (Mar. 19, 2025), https://perma.cc/EDS6-NJZJ.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 25, 2025, at Westborough, Massachusetts.

/s/ *Denise Barton*
Denise Barton
Chief Deputy General Counsel
University of Massachusetts, Office of the General Counsel
50 Washington Street
Westborough, MA 01581

4