# Exhibit 18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 25-cv-11221-WGY |

## DECLARATION OF CHRISTOPHER KEARNS

I, Christopher Kearns, declare as follows:

1. I am the Acting Energy Commissioner at the Rhode Island Office of Energy Resources ("OER"). I have worked at OER for over 12 years and have held my current position since July 2022. I make this declaration as a representative of OER, in part based on the business records of OER and in part based on my personal knowledge, experience, and other sources of information I have obtained and reviewed in my official capacity. Based on these sources of information, I am familiar with, and if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

**Personal Background and Qualifications**

2. I graduated from the University of Rhode Island in 2008 with a Bachelor of Science Degree in Environmental Economics and Management.

3. I have worked on a broad range of energy matters (natural gas, delivered fuels, solar, land-based wind, offshore wind, energy efficiency and energy security) since 2009.

4.  I oversee the staffing operations of the Rhode Island Office of Energy Resources and the agency's implementation of state and federal energy policies and programs.

**The Rhode Island Office of Environmental Resources**

5.  The Rhode Island Office of Energy Resources' (OER) was created in 2006 to consolidate state energy programs.

6.  OER's mission expanded in 2012 as outlined in R.I. General Laws §23-82-6, § 39-1-27.7, and § 42-140.1-1, *et.seq*.

7.  OER is responsible for developing policies and programs that respond to the State's evolving energy needs.

8.  OER is committed to working with public- and private-sector stakeholders to ensure that all Rhode Islanders have access to clean, cost-effective, reliable, and equitable energy solutions.

**Grid Impacts from Climate Change in Rhode Island**

9.  Rhode Island's geographical location makes the State vulnerable to powerful winter storms and hurricanes, which have become more frequent as a result of climate change. The State has experienced several severe weather-related events over the last fifteen years, including floods, Nor'easters, extended heat waves and cold snaps, and hurricanes.

10. These weather events pose significant financial and energy security risks to the State; endanger life and property; create barriers to economic growth; and threaten our shared quality of life and environment.

11. The direct energy security impacts of severe weather events include power outages and disruptions to liquid fuel supplies.  For example, during Winter Storm Nemo in February 2013, all of Rhode Island's major fuel terminals lost electrical power and were unable to provide fuel (including gasoline, diesel, heating oil, and jet fuel) from terminal loading

racks to delivery trucks that service gas stations; homes and businesses; airports; and other critical facilities.  The blizzard also resulted in widespread power outage events and electric customer interruptions.  Similarly, January 2015's Winter Storm Juno also resulted in widespread power outage events and electric customer interruptions.  In January 2022, Winter Storm Kenan broke snowfall records in all of Rhode Island's counties. Beyond weather-effected power outages, extended low temperatures have resulted in freezing and ice accumulation across significant portions of Narragansett Bay and nearby coastal areas. Such conditions cause delays and disruptions in delivering fuel supplies to Rhode Island.

12. The likelihood that future extreme weather events will occur and impact Rhode Island is high.  Without preemptive efforts to address critical infrastructure energy resiliency, the State could face serious consequences, including significant economic damage.

13. To plan for this future, state agencies – including the OER – have worked diligently to identify opportunities for more effective and comprehensive energy assurance coordination and greater system resiliency.

**Rhode Island Climate and Renewable Energy Laws**

14. Rhode Island is committed to combatting climate change and its harmful impacts.  To that end, the 2021 Act on Climate sets aggressive decarbonization requirements for the State.  *See* R.I. Gen. Laws § 42-6.2-1, et. seq.  This includes mandates that statewide greenhouse gas emissions reach forty-five percent (45%) below 1990 levels by 2030; eighty percent (80%) below 1990 levels by 2040, and that the State achieves net-zero emissions by 2050. *See* R.I. Gen. Laws § 42-6.2-9.

15. The Rhode Island Act on Climate also requires a comprehensive climate strategy by 2025, which will be updated every five years thereafter.

3

16. Additionally, Rhode Island's Renewable Energy Standard (RI RES) requires retail electricity sales in the State to include increasing renewable energy each year, ultimately reaching 100% renewable energy by 2033. *See* R.I. Gen. Laws § 39-26-4.

17. The express purpose of the RI RES is to "to facilitate the development of new renewable energy resources to supply electricity to customers in Rhode Island with goals of stabilizing long-term energy prices, enhancing environmental quality, and creating jobs in Rhode Island in the renewable energy sector." R.I. Gen. Laws § 39-26-3. Per the Affordable Clean Energy Security Act (ACES), "Rhode Island is committed to the increased use of no- and low-carbon energy resources that diversify our energy supply portfolio, provide affordable energy to consumers, and strengthen our shared quality of life and environment, and new energy infrastructure investments may help facilitate the development and interconnection of these resources[.]" R.I. Gen. Laws § 39-31-1.

18. In June 2022, the State amended ACES to support procurement of between 600 to 1,000 megawatts of offshore wind capacity for Rhode Island. R.I. Gen. Laws § 39-31-10.

**Current Status of Offshore Wind**

19. Rhode Island has been active with offshore wind development since 2007.

20. The State successfully developed and permitted the 30 megawatt (MW) Block Island Wind Farm in state and federal waters in the 2010s.

21. The Block Island Wind Farm became operational in the fall of 2016, making it the nation's first commercial offshore wind farm.

22. As of 2024, Rhode Island's clean energy portfolio included 148 MW of onshore wind and 430 MW of offshore wind from projects that are either operational or have been awarded contracts and are working towards operation.

23. Rhode Island is nearing completion of its second offshore wind project in partnership with the State of Connecticut. The 704-megawatt Revolution Wind project has been under development since 2018 and has received all of its federal and state permit approvals.

24. Rhode Island will receive 400 MW of capacity from Revolution Wind, and the remaining 304 MW of wind capacity will benefit Connecticut.

25. The Revolution Wind project has been under construction over the last year, with utility interconnection work at Quonset Point in North Kingstown, RI and the installation of the submerged utility cable, foundations and wind turbines at sea.

26. Revolution Wind is expected to be completed and generate electricity to the two states in 2026.

27. Rhode Island has partnered with the Commonwealth of Massachusetts on Rhode Island's third offshore wind project, the 1,287 MW SouthCoast Wind project. Rhode Island would receive 200 MW of offshore wind capacity from that project with the remaining 1,087 MW going to Massachusetts.

28. The SouthCoast Wind project is currently working to obtain its remaining state and federal permits, and negotiate, and receive approval of, a power purchase agreement. The SouthCoast Wind project operational timeline is in 2030.

**The Federal Action**

29. On January 20, 2025, President Trump issued a memorandum entitled "*Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind*" (the "Wind Memo").

30. Section 2 of the Wind Memo prohibits anyone in the federal government from issuing "new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore

5

wind projects"—at least until "the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices" conducted by the Interior Secretary. The Wind Memo provides no time frame for completion of this assessment.

**The Harms the Wind Memo Inflicts on Rhode Island**

31. The Wind Memo and its implementation undermines Rhode Island's ability to procure additional energy from onshore and offshore wind generation to meet the State's energy and environmental requirements, including statutory requirements to reduce statewide greenhouse gas emissions and reach net-zero by 2050, and to attain 100% renewable energy by 2033.

32. Delaying or preventing development of new wind energy, and particularly, offshore wind, in the region prevents Rhode Island, and the New England region, from bringing new energy resources online that are important to ensure a reliable grid and cleaner renewable energy, and to combat the price volatility related to continued reliance on fossil fuels in the region.

33. Delaying or preventing development of new wind energy in the region also stands to negatively impact Rhode Island's economy, as the State has actively sought to create jobs in the renewable energy sector, including wind energy.

34. Further, delaying or preventing development of new wind energy in the region will negatively impact the State's ability to address and combat climate change.

**Conclusion**

35. Wind is an important resource in meeting the State's Act on Climate obligations, advancing the State's Renewable Energy Standard, supporting the State's clean energy economy, and diversifying the State's electric energy resources.

36. Any prevention or delay of wind projects in the region will significantly and negatively impact Rhode Island.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Providence on August 4, 2025.

Chris Kearns

Christopher Kearns

7