## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, *et al,*

No. 1:25-cv-11221-WGY

Plaintiffs,

v.

DONALD J. TRUMP, *et al*,

Defendants.

## PLAINTIFF-INTERVENOR ALLIANCE FOR CLEAN ENERGY NEW YORK'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.      ACE NY HAS STANDING. ...................................................................................... 2

II.     FINAL AGENCY ACTION EXISTS. ........................................................................ 5

III.    THE WIND BAN IS ARBITRARY AND CAPRICIOUS. ........................................... 9

IV.    DEFENDANT AGENCIES FAILED TO FOLLOW NECESSARY PROCESS........ 11

V.     DEFENDANT AGENCIES' ACTIONS ARE CONTRARY TO LAW...................... 13

VI.    VACATUR OF THE WIND BAN IS THE PROPER REMEDY................................ 15

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (D.C. Cir. 2000) ............................................................................................. 6

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ............................................................................................................. 12

*Bell v. New Jersey*,
461 U.S. 773 (1983) ............................................................................................................... 8

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................................................................... 5

*California v. Trump*,
No. 25-cv-10810-DJC, 2025 WL 1667949 (D. Mass. June 13, 2025) ................................ 14

*City of Klamath Falls v. Babbitt*,
947 F. Supp. 1 (D.D.C. 1996) ............................................................................................... 5

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987) ............................................................................................................... 4

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ............................................................................................................. 13

*Env't Def. Fund v. Gorsuch*,
713 F.2d 802 (D.C. Cir. 1983) ............................................................................................... 9

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ............................................................................................................... 3

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ............................................................................................................... 8

*Harrington v. Chao*,
280 F.3d 50 (1st Cir. 2002) ................................................................................................. 15

*Hornbeck Offshore Servs. v. Salazar*,
696 F. Supp. 2d 627 (E.D. La. 2010) .................................................................................... 3

*Housatonic River Initiative v. EPA*,
75 F.4th 248 (1st Cir. 2023) .................................................................................................. 3

*La Casa Del Convaleciente v. Sullivan,*
    965 F.2d 1175 (1st Cir. 1992) ............................................................................................. 12

*Louisiana v. Biden,*
    622 F. Supp. 3d 2671 (W.D. La. 2022) ..................................................... 4, 7, 10, 11, 12, 14

*Louisiana v. Biden,*
    No. 2:24-CV-00406, 2024 WL 3253103 (W.D. La. July 1, 2024) ..................................... 11

*Marquette Cnty. Rd. Comm'n v. EPA,*
    726 F. App'x 461 (6th Cir. 2018) ......................................................................................... 7

*Michigan v. EPA,*
    576 U.S. 743 (2015) ............................................................................................................ 10

*Minard Run Oil Co. v. U.S. Forest Serv.,*
    670 F.3d 236 (3d. Cir. 2011) ............................................................................................ 7, 8

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .............................................................................................................. 11

*N.H. Hosp. Ass'n v. Azar,*
    887 F.3d 62 (1st Cir. 2018) ................................................................................................ 12

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
    417 F.3d 1272 (D.C. Cir. 2005) ........................................................................................... 9

*Nat'l Parks Conservation Ass'n v. Norton,*
    324 F.3d 1229 (11th Cir. 2003) ........................................................................................... 7

*New York v. Trump,*
    133 F.4th 51 (1st Cir. 2025) ............................................................................................... 13

*NRDC v. DOI,*
    397 F. Supp. 3d 430 (S.D.N.Y. 2019) .................................................................................. 8

*NRDC v. Wheeler,*
    955 F.3d 68 (D.C. Cir. 2020) ............................................................................................... 6

*Orr v. Trump,*
    No. 25-cv-10313-JEK, 2025 WL 1145271 (D. Mass. Apr. 18, 2025) ................................ 10

*Penn. Mun. Auths. Ass'n v. Horinko,*
    292 F. Supp. 2d 95 (D.D.C. 2003) ........................................................................................ 6

*Perez v. Mortgage Bankers Ass'n*,
    575 U.S. 92 (2015) ................................................................................................... 12

*Sackett v. EPA*,
    566 U.S. 120 (2012) .................................................................................................. 8

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ...................................................................................... 8

*Shawnee Trail Conservancy v. Nicholas,*
    343 F. Supp. 2d 687 (S.D. Ill. 2004) ...................................................................... 6

*Trump v. Am. Fed'n of Gov't Emp.*
    606 U.S. ---, 145 S. Ct. 2635 (2025) ...................................................................... 14

*Western Watersheds Project v. Zinke*,
    441 F. Supp. 3d 1042 (D. Idaho 2020) .................................................................. 8

**Federal Statutes**

5 U.S.C. § 551(13) ......................................................................................................... 13

5 U.S.C. § 706 ................................................................................................................ 13

5 U.S.C. § 706(1) ......................................................................................... 1, 6, 13, 14

5 U.S.C. § 706(2) ................................................................................................. 13, 15

5 U.S.C. § 706(2)(A) ............................................................................................... 1, 9

5 U.S.C. § 706(2)(C) ..................................................................................................... 13

**Regulations, Executive Orders, and Proclamations**

90 Fed. Reg. 8327 (Jan. 29, 2025) .............................................................................. 13

**INTRODUCTION**

Defendant agencies have failed to provide a reasoned justification and legal basis for their arbitrary and unlawful Wind Ban, and all Plaintiffs are entitled to summary judgment. Undisputedly, Defendant agencies have halted *all* federal permitting for *all* wind energy projects, based on nothing but the President's one-paragraph Wind Directive: "[t]he agencies received the Wind Memo and determined they had to follow it—end of story." ECF 180 at 23 (Defs. Summ. J. Br.). But the Administrative Procedure Act ("APA") required that there be much more to that story before the federal government halted an entire industry in its tracks. On summary judgment, Defendants still offer no evidentiary support, and try to revive arguments already rejected by this Court and by other courts invalidating similarly categorical "pauses" on energy projects. But Defendants cannot shield what they concede is a "categorical decision" from review on the record before this Court. *Id.* at 15.

First, Defendants' continual quibbling with this Court's prior threshold rulings is baseless. The Court correctly found that Defendant agencies' adoption and implementation of the Wind Directive is final agency action and that ACE NY, representing the industry stymied thereby, has standing. Nothing in Defendants' sparse administrative record alters the Court's prior rulings. Defendants now agree the Wind Ban consummates agency action and precludes issuance of all federal permits or approvals needed for wind energy development. *Id.* at 23. They also no longer contest that "owners or operators of wind projects" have suffered injury traceable to the Wind Ban. *Id.* at 14. These concessions are fatal to Defendants' tired threshold defenses.

Second, Defendants cannot recast ACE NY's claims into ones that they prefer to defend. Defendants ignore ACE NY's APA § 706(2)(A) arbitrary and capricious claims, instead inexplicably conflating them with ACE NY's distinct APA § 706(2)(C) contrary to law claims, and then mischaracterizing them as APA § 706(1) unreasonable delay claims unasserted in this

1

case. Defendant agencies lack discretionary authority for the Wind Ban in the first place. But even if such discretion existed, the APA *still requires* the Wind Ban to be reasonably explained and supported by evidence in the administrative record, which is empty in this case.

At bottom, Defendant agencies concede they blindly adopted and implemented the Wind Directive without considering whether its purported justifications were rooted in fact and supported by evidence, or if their actions would be "consistent with applicable law" as they now argue post hoc and absent support. *E.g.*, *id.* at 3. By suggesting that they can hide behind the President to avoid APA judicial review, it is *Defendant agencies*, not Plaintiffs, that "attack[] a core tenet of administrative law." *Cf. id.* at 1. As such, this Court should vacate the Wind Ban.

## I.    ACE NY HAS STANDING.

As this Court has found, ACE NY's standing is "firmly established" because ACE NY has presented redressable harm "in spades." ECF 162 at 27-28. Defendants still present no contrary evidence on summary judgment. Nonetheless, they maintain that ACE NY lacks associational standing because its members purportedly lack standing to sue in their own right. ECF 180 at 14 (not disputing the associational standing "three-part test" is otherwise met). Defendants' standing arguments are as unavailing now as in their failed motion to dismiss.

Defendants' passing contention that ACE NY has "failed to identify a specific member" with standing simply ignores the evidence. *Id.* As this Court has found, "ACE NY has identified members affected by the Wind Directive by name." ECF 162 at 27 (citations omitted); *see also* Wells 2d. Decl. Att. A (ECF 140); Wells 3d. Decl. Ex. A (ECF 177). This case is about regulation of the wind industry ACE NY represents, not of "someone else." *Cf.* ECF 180 at 12.

Defendants next paradoxically argue that the "direct injuries" ACE NY's members have incurred (the existence of which Defendants do not dispute) because of the Wind Ban could not be redressed by an order directing Defendant agencies to lift the Wind Ban. Once again, they

posit that ACE NY must show that "a favorable decision in this litigation will result in the approval of particular projects" and that Defendant Agencies would not deny a permit for other reasons. *Id.* at 14. But this argument, as the Court previously noted, "rests on a fundamental misconstrual of the Administrative Procedure Act." ECF 162 at 20. Here, judgment for Plaintiffs will restore ACE NY members' ability to either move forward with their wind energy projects or challenge Defendant agencies' denial of their permits on the records developed. As such, a favorable ruling would place members in a better position than they presently occupy, satisfying Article III redressability.[1]

ACE NY's wind energy project owner and operator members suffice for ACE NY's standing. *Housatonic River Initiative v. EPA*, 75 F.4th 248 (1st Cir. 2023) (an association need only show that *one* member has individualized standing) (citations omitted). In any event, Defendants' passing attack on the traceability of ACE NY's supply chain members' harms to the Wind Ban likewise fails. ECF 180 at 14. Those members' harms too are attributable to the Wind Ban, which is destroying demand for their products and services by posing an existential threat to wind energy projects developed by their customers. *E.g.*, ECF 64, 140, 177, 178. Caselaw supports this conclusion. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 384 (2024) (redressability satisfied where regulation of a business "cause[s] downstream or upstream economic injuries to others in the chain, such as certain manufacturers, retailers, suppliers, competitors, or customers" (citations omitted)); *Hornbeck Offshore Servs. v. Salazar*, 696 F.

---

[1] Defendant agencies' representation that they "generally" have continued to "review, analyze, and process wind energy submissions and materials" during the Wind Ban (ECF 180 at 3-4) is qualified and unsupported, but at minimum suggests that agencies could complete permitting of wind energy projects in short order after vacatur of the Wind Ban.

Supp. 2d 627 (E.D. La. 2010) (plaintiffs successfully challenging a drilling moratorium were vessel operators supporting deepwater oil industry, not oil developers with paused operations).

In sum, ACE NY has indisputably demonstrated that its members' injuries exist, are traceable to Defendant agencies' actions here, and can be redressed by a decision of this court. Article III's standing requirements are thus satisfied here.

Finally, this Court should again reject Defendants' "zone of interests" arguments.[2] ECF 162 at 28-29. That test is not "especially demanding." *Id.* at 28 (citation omitted). It simply "exclude[s] those plaintiffs whose suits are more likely to frustrate than to further statutory objectives." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 n.12, 399 (1987). Here, Plaintiffs "all seek to vindicate interests at least marginally related to the invoked statutes." ECF 162 at 29. Defendants' citation to *Seafreeze Shoreside, Inc. v. DOI* (ECF 180 at 17-18) is inapt because, unlike the plaintiff there attacking an offshore wind project by purportedly seeking to vindicate marine mammal protection interests wholly separate from its organizational purpose of protecting commercial fishing interests, ACE NY's members are regulated by the relevant statutes, including on wildlife and marine resources, and seek to protect their interests in pursuing energy development thereunder. 123 F.4th 1, 21 (1st Cir. 2024). *Seafreeze* also found that other asserted APA claims fell within the zone of interests. *Id.* Defendants further concede that the statutes salient here involve "responsible energy production" and "expeditious land development," which are interests shared by ACE NY and its members and implicated by the Wind Ban.[3] ECF 180 at 19; *see, e.g.*, Wells Decl. ¶¶ 3, 5-7 (ECF 63). To be sure, ACE NY

---

[2] ACE NY responds to this argument here as raised in the standing section of Defendants' brief, though, as Defendants recognize, it does not implicate standing. ECF 180 at 17 n.7.

[3] Defendants fail to distinguish *Louisiana v. Biden*, which found the zone of interests met after finding several harms. 622 F. Supp. 3d 267, 285, 290-91 (W.D. La. 2022); *cf.* ECF 180 at 20-21. Like *Louisiana*, this Court should dismiss Defendants' zone of interests argument out of hand.

members share interests in ensuring that Defendant agencies conduct wind energy permitting in a non-discriminatory and rational manner, so that the economic and environmental benefits of this low-cost, safe, and sustainable energy source can be realized. *See City of Klamath Falls v. Babbitt*, 947 F. Supp. 1, 5 (D.D.C. 1996) (commercial interest in securing hydroelectric power license aligned with environmental laws because project would provide ecological benefits to the river). Under Defendants' illogic, no party developing any energy project and aggrieved by unlawful agency action under laws governing such development could bring suit. It is the Wind Ban, not ACE NY's claims, that frustrates statutory objectives by barring all federal agency approvals of wind energy projects.

## II.     FINAL AGENCY ACTION EXISTS.

Defendants cling to the fiction that no final agency action has yet occurred, despite the contrary holdings of this Court and indistinguishable caselaw. ECF 162 at 34-36; *see* ECF 176 at 11-15 (ACE NY Summ. J. Br.). Defendants now abandon their prior contentions that no agency decision-making process has consummated in adopting and implementing the Wind Directive, satisfying the first prong for finality. ECF 180 at 23; *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Their recycled attempts to disavow legal consequences under *Bennett*'s second finality prong remain unfounded—due to the Wind Ban, ACE NY members cannot obtain any federal permit needed for any wind project.

Repurposing their Article III redressability argument, Defendants wrongly aver that "in the permitting context" only "ultimate approval, modification, or disapproval" of individual permit applications are reviewable. ECF 180 at 23; *see also id.* at 21 (claiming "[a]ny agency decisionmaking will take place only downstream"). Any agency's future adjudication of an individual permit has no bearing on the final agency action challenged here, i.e., Defendant agencies' adoption and implementation of the Wind Directive uniformly precluding *any* such

permitting decisions. By analogy, it is immaterial whether a wind energy project can record a hit because Defendant agencies have already acted to categorically preclude it from even stepping into the batter's box.

Nothing Defendants cite holds that regulated parties may only challenge unfavorable adjudications of individual permitting decisions, rather than policies and rules dictating or abdicating the agency's approach to reaching those decisions. Defendants' primary cited case, *Penn. Mun. Auths. Ass'n v. Horinko*, is inapposite. *See* ECF 180 at 23 (citing 292 F. Supp. 2d 95, 105 (D.D.C. 2003)). There, regulated parties challenged "dictates" issued by regional EPA administrators. *Horinko*, 292 F. Supp. 2d at 97-101. The court held that no final agency action could occur until the EPA Administrator affirmatively adopted the regional guidance as a national policy, explaining that "EPA Regions lack the authority to impose rules or standards more restrictive than those of the national EPA." *Id.* at 104-05. Here, there is no question that the Wind Ban is being implemented agencies-wide and nationwide. *See also NRDC v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020) (decision was final, in part, because it was "issued under the authority of the Administrator himself," not a subordinate official); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) ("[i]f an agency acts as if a document issued at headquarters is controlling in the field," then it is subject to judicial review).

Defendants' other cited cases likewise do not help them. For example, *Shawnee Trail Conservancy v. Nicholas* rejected claims principally under APA § 706(1) against a Forest Service plan for complying with a previous court injunction regarding a land management plan; it did not involve a rule of decision for permit adjudications, and the plaintiffs gave mere "lip service to review under [APA] § 706(2)." 343 F. Supp. 2d 687, 692-94, 701 (S.D. Ill. 2004). Moreover, *Nat'l Parks Conservation Ass'n v. Norton* does not stand for a proposition that no

6

final agency action exists whenever "further administrative action is forthcoming"; in fact, that case supports Plaintiffs. ECF 180 at 23 n.11 (citing 324 F.3d 1229, 1238 (11th Cir. 2003)). There, the court held that "[n]othing remotely resembling the [agency's] final word on this matter has been rendered," as evidenced by the fact that agency had undertaken numerous steps in the "process of selecting and implementing a management plan," and was presently reviewing comments and preparing to issue a final decision. *Norton*, 324 F.3d at 1239-40. In stark contrast here, Defendant agencies concede that they have already issued their final word on adopting and implementing the Wind Directive, *without* engaging in any process that the agency followed in *Norton*. *Id.*; *see infra* Section IV. And *Marquette Cnty. Rd. Comm'n v. EPA* merely held that judicial review of a decision on *an individual permit application* would not be available until the permit in question was ultimately granted or denied. ECF 180 at 24 (citing 726 Fed. App'x 461, 467 (6th Cir. 2018)).

There is no shortage of cases, in the energy permitting context and beyond, refuting Defendants' position and finding finality despite the possibility of future related actions. *See* ECF 176 at 12. For example, in *Louisiana*, the court dismissed the argument that an oil and gas leasing moratorium "merely" represented "interim postponements of lease sales, not decisions to forego the sales entirely." 622 F. Supp. 3d at 291-93. Like here, the relevant decision there was agency implementation of the "stop," and no additional deliberation on that issue was going to occur. *Id.* at 285-86 ("[C]ourts can challenge specific and identifiable agency actions to general management practices." (citations omitted)). In *Minard Run Oil Co. v. U.S. Forest Serv.*, the court rejected the agency's argument that its imposition of a moratorium on oil drilling in a national forest pending the preparation of a forest-wide environmental impact statement ("EIS") was "preliminary, procedural, or intermediate agency action … which will not be final until the

7

EIS is complete and [individual Notices to Proceed (NTP) with drilling] are issued." 670 F.3d

236, 247-49 (3d. Cir. 2011). Whether those latter actions are final agency actions "does not mean

that any determinations made by the Service prior to these actions are not final." *Id*. That court

concluded that the agency had completed its decision-making process given that "[t]he Service

does not claim that it will revisit the propriety of imposing a moratorium on new drilling in the

[national forest] during the forest-wide EIS, and by the time the EIS is completed, the propriety

of the moratorium will be moot." *Id.* Similar cases abound.[4]

Nor can Defendants meaningfully dispute that the Wind Ban has immediate legal

consequences. It establishes discrete new wind energy development policy—one of no legal

authorizations of development at all—that categorically precludes regulated entities from

obtaining needed permits and authorizations to proceed with project development. It is

undisputed that no wind project has been approved in seven plus months, and nothing suggests

resumption of wind energy permitting is imminent. Caselaw again supports finality in these

circumstances, regardless of any "temporary" or "interim" or "limited" label that Defendants try

to affix to the Wind Ban. *See, e.g.*, *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980);

*Minard Run*, 670 F.3d at 247-49 ("[T]he Service's moratorium on new drilling has significant

---

[4] *See, e.g.*, *Bell v. New Jersey*, 461 U.S. 773, 779 (1983) ("The possibility of further proceedings in the agency … does not, in our view, render the orders less than 'final.'"); *Salazar v. King*, 822 F.3d 61, 83-84 (2d Cir. 2016) ("The APA does not require that the challenged agency action be the agency's final word on the matter for it to be 'final' for the purposes of judicial review.") (citing *Sackett v. EPA*, 566 U.S. 120 (2012)); *Western Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1060-61 (D. Idaho 2020), *rev'd, in part, on other grounds* 127 F.4th 1 (9th Cir. 2025) (BLM memorandum altering public participation procedures and creating a "required template" that "would govern oil and gas leasing until the procedures were changed" was final agency action and not merely "tentative or interlocutory"); *NRDC v. DOI*, 397 F. Supp. 3d 430, 447-49 (S.D.N.Y. 2019) (rejecting argument that an order "bar[ring] DOI and FWS personnel from instituting enforcement proceedings under the [Migratory Bird Treaty Act ("MBTA")] for incidental takes" was non-final and unchallengeable until "individual decisions regarding criminal enforcement of the MBTA" are issued).

legal consequences for mineral rights owners: they must stop all new drilling or face criminal penalties."); *Env't Def. Fund v. Gorsuch,* 713 F.2d 802, 813 (D.C. Cir. 1983) ("[S]uspension of the permit process as to a class of waste management facilities … [amounts to] the promulgation of a regulation."). As such, the impact on day-to-day business operations and "investment and project development choices" "is not hard to understand." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1280 (D.C. Cir. 2005) (citations omitted). Both finality prongs of the *Bennett* test are satisfied here.

## III.    THE WIND BAN IS ARBITRARY AND CAPRICIOUS.

Defendants completely fail to address ACE NY's APA § 706(2)(A) arbitrary and capricious claims. They contend that *Victim Rights Law Ctr. v. Cardona* excuses them from doing so because it provides that APA §§ 706(2)(A) and 706(2)(C) are "functionally" the same. ECF 180 at 26 (citing 552 F. Supp. 3d 104, 127 (D. Mass. 2021)). That contention is novel and mistaken. *Cardona* equated *only* "not in accordance with law" under APA § 706(2)(A) with "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under APA § 706(2)(C). *Id.* It did *not* conflate this inquiry with the distinct "arbitrary, capricious, [or] an abuse of discretion" inquiry under APA § 706(2)(A). Indeed, that is why *Cardona* held that, though the agencies there had the authority to promulgate their rule under APA §§ 706(2)(C) and 706(2)(A), the rule nonetheless was arbitrary and unlawful per APA § 706(2)(A) for failure to consider the practical effects of implementation and to provide a reasoned explanation for its adoption. 552 F. Supp. 3d at 130-34. In other words, *Cardona* confirms that, even where agencies have authority to take certain actions, the APA still requires agencies to engage in reasoned consideration and provide a rational basis for their decisions supported by the administrative record. *Id.*

Here, Defendant agencies engaged in no reasoned decision-making whatsoever and thereby violated the APA even on that basis alone. *See* ECF 176 at 15-22. They made no attempt

to consider the effects of the Wind Ban (including the costs, benefits, and impacts on the nation's ability to meet growing energy demand); account for reliance interests; review reasonable alternatives; weigh consistency with their legal obligations; amass and evaluate evidence supporting the Wind Directive's cursorily stated concerns; explain their drastic departure from prior policy and rejection of formal factual findings; harmonize concurrent directives to boost domestic energy production in response to a proclaimed "national energy emergency"; or otherwise develop a reasoned explanation for their actions. The bare administrative record further confirms as much.

By their own admission, Defendant agencies mechanically relied on "the President's stated concerns … [of potential] serious harm," without stopping to evaluate whether such concerns were warranted or supported by the facts and evidence before them. ECF 180 at 3, 27. It is well settled that agencies cannot circumvent APA arbitrary and capricious review simply by pointing to an executive order. *See* ECF 176 at 14-18; *Orr v. Trump*, No. 25-cv-10313-JEK, 2025 WL 1145271, at *15 (D. Mass. Apr. 18, 2025) ("[N]either the Supreme Court nor any Court of Appeals has ever "excepted a final rule from APA review because it carried out a presidential directive." (citations omitted)); *Louisiana*, 622 F. Supp. 3d at 295 ("A decision supported by no reasoning whatsoever in the record cannot be saved merely because it involves an Executive Order." (citations omitted)).[5]

It also is not for Defendant agencies' counsel, or anyone, to attempt to fashion post hoc the requisite reasoned justification for the Wind Ban. *See* ECF 176 at 17-18; *Michigan v. EPA,* 576 U.S. 743, 758 (2015) (it is a "foundational principle of administrative law that a court may

---

[5] Defendants invoke Section 208 of Executive 14008, which directed an energy leasing pause that was invalidated in court. ECF 180 at 2; *Louisiana*, 622 F. Supp. 3d at 298-99.

uphold agency action only on the grounds that the agency invoked when it took the action");

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50

(1983) ("courts may not accept appellate counsel's post hoc rationalizations for agency action");

*Louisiana v. Biden*, No. 2:24-CV-00406, 2024 WL 3253103, at *26-27 (W.D. La. July 1, 2024)

("Stating that a factor was considered ... is not a substitute for considering it." (cleaned up,

citation omitted)). Defendants' brief entirely relies on post hoc statements of counsel to supply

any deliberative process for the Wind Ban. For example, Defendants assert that "[i]n effect, each

agency determined that they were to temporarily cease issuing various wind energy permits and

authorizations pending the review of permitting programs—but only to the extent permitted by

applicable law." ECF 180 at 27. But they offer no citation, and the administrative record

evidences no such consideration or constraint, much less the reasoned basis the APA requires.

Defendants also misquote *Louisiana*, which nowhere suggested that "performing a

comprehensive review" is a reasonable basis to indefinitely decline "making leasing or

permitting decisions." ECF 180 at 20-21 (citing 622 F. Supp. 3d at 293)). That court's order

actually admonished that "[a]lthough there is certainly nothing wrong with performing a

comprehensive review, there is a problem in ignoring acts of Congress and stopping the process

while the review is being completed." 622 F. Supp. 3d at 293. That is exactly what Defendant

agencies did here with the Wind Ban, which is similarly arbitrary and unlawful.

## IV.    DEFENDANT AGENCIES FAILED TO FOLLOW NECESSARY PROCESS.

The Wind Ban violates the APA also because it is a substantive rule lacking prerequisite

public process. ECF 176 at 22-24. Defendants have no meritorious response. Indeed, they make

ACE NY's point, by claiming that "no agency has initiated a process to formulate, amend, or

repeal any rule that could be subject to notice and comment under the APA," when the Wind Ban

effectuates such rule changes anyway. ECF 180 at 34.

11

First, Defendant agencies overstate the importance of their own characterization of the Wind Ban (and for the first time in litigation) as interpretative or procedural, rather than legislative, in nature. ECF 180 at 35-36 (citing *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992)). Indeed, *Sullivan* itself notes that such characterizations are non-conclusive. 965 F.2d at 1178. More importantly, the First Circuit has more recently confirmed that, though the agency's characterization "warrants attention," "we do not place on it more weight than its merits can bear." *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 72-73 (1st Cir. 2018). "Otherwise, we would create an easy end run around the APA's procedural protections." *Id.* The Supreme Court likewise has held that courts look to "the contents of the agency's action, not the agency's self-serving label, when deciding whether statutory notice-and-comment demands apply." *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019). Here, Defendant agencies ascribed no label to the Wind Ban when adopting and implementing it. And their post hoc characterization in their briefing ignores the Wind Ban's practical effects in the real world.

Second, Defendants submit that the Wind Ban's impacts on substantive rights have no bearing on whether the APA's procedures must be followed. ECF 176 at 34-38. That is wrong and immaterial. This Court correctly articulated the relevant standard when it provided that substantive rules do not "leave the agency and its decisionmakers room to exercise discretion," but rather mandate specific outcomes. ECF 162 at 36 (citing *Louisiana v. Biden*, 622 F. Supp. 3d at 295–96). By contrast, interpretative rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015). Here, due to the Wind Ban, Defendant agencies indisputably have no discretion to issue *any* wind energy permit decisions under *any* circumstances. ECF 180 at 26 (describing the Wind Directive as "compulsory"). That is, what Defendants call "temporarily refraining from

12

making any final determinations of current or future eligibility" is in reality a wholesale preclusion of permitting. ECF 180 at 36. Defendants continue to misrely on *Kessler v. FCC*, which did not remove all agency discretion and is not "analogous" as this Court has already distinguished. *Cf. id.*; *see* ECF 162 at 39-40 (citing 326 F.2d 673, 679 (D.C. Cir. 1963)). Thus, the Wind Ban is legislative, not because it may have a harsh practical impact on some, or even most, regulated parties, but rather because it precludes all permitting adjudications with binding force and has a universal impact on *all* regulated parties. Courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (citation omitted).

## V.    DEFENDANT AGENCIES' ACTIONS ARE CONTRARY TO LAW.

The Wind Ban contradicts multiple key aspects of statutes and regulations governing wind energy permitting. *See* ECF 173 at 23-29; ECF 176 at 24-25. Defendants fail to show otherwise, chiefly repeating their misguided arguments regarding unasserted APA § 706(1) claims for failures to meet specific timelines on specific permits rather than Plaintiffs' properly brought claims under APA § 706(2) in this case. *See* 5 U.S.C. § 551(13) ("agency action" definition includes "failure to act"); *id.* § 706 ("agency action" utilized for both § 706(1) and (2) claims). To avoid duplication, ACE NY provides a short response and again adopts Plaintiff States' fuller APA contrary to law arguments.

Even though Defendant agencies admit (and the record confirms) that they made no attempt to evaluate whether a Wind Ban would be "consistent with applicable law," they assert that it *must* be so because the Presidential Memorandum containing the Wind Directive provides as much. 90 Fed. Reg. 8327, 8363 (Jan. 29, 2025). But that boilerplate savings clause does not save the Wind Ban. *New York v. Trump*, 133 F.4th 51, 69 (1st Cir. 2025) (similar savings clause "was nothing more than window dressing on an unconstitutional directive by the Executive");

13

*California v. Trump*, No. 25-cv-10810-DJC, 2025 WL 1667949, at *9 (D. Mass. June 13, 2025)
(if executive order's phrase "consistent with law" makes it so, then "judicial review is a
meaningless exercise"); *Louisiana*, 622 F. Supp. 3d at 289 (same). And as Plaintiff States
explain, Justice Sotomayor's concurrence in *Trump v. Am. Fed'n of Gov't Emp.* supports that
agency implementation of an executive directive with a "consistent with applicable law" savings
clause may still be inconsistent with applicable law. 606 U.S. ---, 145 S. Ct. 2635 (2025) (J.
Sotomayor, concurring). The Wind Directive cannot, and does not, create a blank check—at
most, it expresses a policy preference only to the extent consistent with law, including the APA,
an inquiry the agencies wholly ignored. *Cf.* ECF 180 at 27 (speaking to "his [the President's]
instruction to act only within the bounds of various environmental permitting laws and the like").

Similarly, Defendants' argument that the Wind Ban is consistent with applicable law so
long as "one wind energy authorization deadline" is left to the discretion of an agency overlooks
the agency action and claims at issue here. ECF 180 at 28. Again, the issue is not whether ACE
NY's individual members could compel agency action under APA § 706(1) should they choose
to file such suits. *See* ECF 162 at 41. What is relevant here is that the pertinent statutes and
regulations prescribe procedures for processing and issuing permits, and *none* contain any
provision granting agencies unilateral authority to change those procedures by simply refusing to
administer the respective permitting programs.[6] Thus, the salient "statutory silence" here is on
authorizing, not prohibiting, the Wind Ban. *See* ECF 180 at 1.

---

[6] Contrary to Defendants' assertion, Plaintiffs *do* assert APA contrary to law claims against the
Bureau of Land Management ("BLM") under the Federal Land Policy and Management Act. *Cf.*
ECF No. 180 at 29 n.13. Indeed, BLM remains a Defendant in this case. *See* ECF 162 at 30.

14

## VI.    VACATUR OF THE WIND BAN IS THE PROPER REMEDY.

Only full vacatur of each Defendant agency's decision to adopt and implement the Wind

Directive will afford ACE NY's members complete relief. *See* ECF 176 at 25-27. Moreover, this

is the appropriate remedy for the claims asserted and agency actions challenged here. *See id.*;

*Harrington v. Chao*, 280 F.3d 50, 60 (1st Cir. 2002) (vacatur "is a proper remedy when an

agency fails to explain its reasoning adequately"). Defendants' cross-motion does not address the

vacatur remedy and raises straw man arguments. Under the APA § 706(2) claims here, there is

no basis for Defendants' contention that this Court can only order specific relief on specific

permit applications. *Id.* Nor do Defendants explain how their cursorily proffered relief would be

"practical and minimize risk of confusion" for agencies, relative to the straightforward remedy of

vacatur of the Wind Ban, and the ensuing resumption of agencies' well-understood wind energy

permitting functions consistent with applicable law. ECF 180 at 39-40.

## CONCLUSION

The Court should grant summary judgment to Plaintiffs and against Defendants, and

declare unlawful and vacate Defendant agencies' adoption and implementation of the Wind

Directive, so that wind-energy related permitting decisions and other approvals can resume.

Dated: August 22, 2025                          Respectfully submitted,

                                                BEVERIDGE & DIAMOND, P.C.

                                                */s/ Brook J. Detterman*
                                                Brook J. Detterman, BBO No. 675396
                                                James M. Auslander, *pro hac vice*
                                                155 Federal Street, Suite 1600
                                                Boston, MA 02110-1716
                                                (617) 419-2345
                                                bdetterman@bdlaw.com
                                                jauslander@bdlaw.com

                                                *Attorneys for Plaintiff-Intervenor*
                                                *Alliance for Clean Energy New York*

15

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on August 22, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

BEVERIDGE & DIAMOND, P.C.

*/s/ Brook J. Detterman*
Brook J. Detterman, BBO No. 675396
155 Federal Street
Suite 1600
Boston, MA 02110-1716
(617) 419-2345
bdetterman@bdlaw.com