# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, et al.,

               Plaintiffs,

      v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

               Defendants.

No. 25-cv-11221-WGY

## PLAINTIFF STATES' OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

    I.   The States Have Established Standing............................................................... 1

    II.  The States Are Entitled to Summary Judgment. ............................................... 6

         A.  The States Challenge Reviewable Final Agency Actions. ......................... 7

         B.  Defendants' Halts on Wind-Energy Permitting Are Arbitrary and Capricious. ......... 9

         C.  Defendants' Actions Are Contrary to Law. ............................................... 11

    III. Vacatur Is the Appropriate Remedy. ............................................................ 14

CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*,
766 F. Supp. 3d 74 (D.D.C. 2025) ........................................................................7

*Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*,
72 F.4th 1324 (D.C. Cir. 2023) ...........................................................................14

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
No. 1:25-cv-10787, 2025 WL 1822487 (D. Mass. July 2, 2025) ........................10

*Ass'n of Am. Univs. v. Nat'l Sci. Found.*,
No. 1:25-cv-11231, 2025 WL 1725857 (D. Mass. June 20, 2025).......................14

*Avenal Power Ctr., LLC v. EPA*,
787 F. Supp. 2d 1 (D.D.C. 2011) ........................................................................13

*Biden v. Texas*,
597 U.S. 785 (2022)..............................................................................................13

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .............................................................................12

*City of Arlington v. FCC*,
569 U.S. 290 (2013)................................................................................................6

*Custom Commc'ns, Inc. v. FTC*,
142 F.4th 1060 (8th Cir. 2025) ............................................................................14

*Diamond Alt. Energy, LLC v. EPA*,
145 S. Ct. 2121 (2025).........................................................................................2, 4

*Diné Citizens Against Ruining Our Env't v. Haaland*,
59 F.4th 1016 (10th Cir. 2023) ............................................................................14

*Drs. for Am. v. Off. of Pers. Mgmt.*,
No. 1:25-cv-00322, 2025 WL 1836009 (D.D.C. July 3, 2025) ...........................10

*Ensco Offshore Co. v. Salazar*,
781 F. Supp. 2d 332 (E.D. La. 2011) ....................................................................8

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)..................................................................................................................10

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)....................................................................................................................6

*FEC v. Akins*,
   524 U.S. 11 (1998)......................................................................................................................4

*FTC v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019) ...................................................................................................11

*Holland v. Apfel*,
   23 F. Supp. 2d 21 (D.D.C. 1998)...............................................................................................7

*Ins. Mktg. Coal. Ltd. v. FCC*,
   127 F.4th 303 (11th Cir. 2025) ................................................................................................14

*Kendall v. United States*,
   37 U.S. 524 (1838)....................................................................................................................11

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)....................................................................................................................6

*Louisiana v. Biden*,
   622 F. Supp. 3d 267 (W.D. La. 2022)...............................................................................5, 6, 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................................................2

*Marquette County Road Commissioner v. EPA*,
   726 Fed. App'x 461 (6th Cir. 2018) ..........................................................................................9

*Massachusetts v. Nat'l Insts. of Health*,
   770 F. Supp. 3d 277 (D. Mass. 2025) ......................................................................................15

*Massachusetts v. Nat'l Insts. of Health*,
   No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025)............................................14

*Massachusetts v. Trump*,
   No. 1:25-cv-11221, 2025 WL 1836592 (D. Mass. July 3, 2025) .......................1, 3, 5, 7, 8, 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)....................................................................................................................5

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001) ................................................................6

*New Jersey v. EPA*,
    989 F.3d 1038 (D.C. Cir. 2021) ...............................................................3

*N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*,
    340 F. Supp. 3d 1112 (D.N.M. 2018) ......................................................15

*N.Y. Legal Assistance Grp. v. Cardona*,
    No. 1:20-cv-01414, 2025 WL 871371 (S.D.N.Y. Mar. 20, 2025)..............14

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025)......................................................................7

*Orr v. Trump*,
    No. 1:25-cv-10313, 2025 WL 1145271 (D. Mass. Apr. 18, 2025)...............7

*Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*,
    461 U.S. 190 (1983)................................................................................3

*Penn. Mun. Auths. Ass'n v. Horinko*,
    292 F. Supp. 2d 95 (D.D.C. 2003) ...........................................................9

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ..................................................................14

*Seafreeze Shoreside, Inc. v. U. S. Dep't of the Interior*,
    123 F.4th 1 (1st Cir. 2024).......................................................................6

*Shawnee Trail Conservancy v. Nicholas*,
    343 F. Supp. 2d 687 (S.D. Ill. 2004).........................................................9

*Texas Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
    110 F.4th 762 (5th Cir. 2024) .................................................................14

*Thompson v. Evolve Bank & Trust*,
    728 F. Supp. 3d 202 (D. Mass. 2024) .......................................................9

*Trump v. Am. Fed'n of Gov't Emps. (AFGE)*,
    145 S. Ct. 2635 (2025)......................................................................11, 12

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .............................14

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ................................................................................8

*Vanda Pharms., Inc. v. FDA*,
    766 F. Supp. 3d 85 (D.D.C. 2025) .......................................................7

*Victim Rts. L. Ctr. v. Cardona*,
    No. 1:20-cv-11104, 2021 WL 3516475 (D. Mass. Aug. 10, 2021) ........14

*Webb v. Injured Workers Pharm.*,
    72 F.4th 365 (1st Cir. 2023) ................................................................2

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
    778 F. Supp. 3d 440 (D.R.I. 2025) ......................................................10

**Federal Statutes**

5 U.S.C.
    § 551(13) ............................................................................................14
    § 555(b) .........................................................................................11, 14
    § 558(c) .........................................................................................11, 14
    § 706(1) ...............................................................................................9
    § 706(2) ......................................................................................6, 9, 14

33 U.S.C.
    § 1342 ..................................................................................................2
    § 1344 .............................................................................................5, 13

43 U.S.C.
    § 1332(3) ..............................................................................................5

**Federal Regulations**

33 C.F.R.
    § 325.2 ............................................................................................5, 13

90 Fed. Reg. 8363 (Jan. 29, 2025) .............................................................10

**Miscellaneous Authorities**

BPU Docket No. QO21050824, Vacatur Order (Aug. 13, 2025) ....................5

T. Elliot Gaiser, et al., *The Truth of Erasure: Universal Remedies for Universal Agency
    Actions*, U. CHI. L. REV. ONLINE (2024) ................................................14

## INTRODUCTION

Far from demonstrating that they are entitled to summary judgment, Defendant federal agencies' filing further confirms that the States' motion for summary judgment should be granted. Defendants do not dispute that, pursuant to the Wind Directive, they have halted issuance of *every single wind-energy permit* across the nation. And they do not dispute that there is no end in sight. Instead, they play keep away: trivializing the States' weighty interests in the tens of thousands of megawatts (MW) of affordable, reliable, and renewable wind energy awaiting approvals; claiming that those interests are not protected under the permitting laws the agencies blatantly ignored; and contending courts may only review individual permit delays, but not a discrete decision to withhold *all* permits. Defendants' attempts to insulate their unlawful, harmful actions from review all fail. Nor do Defendants' merits arguments hold up. First, they identify no reasoned explanation for their actions, and they muster no defense for their failures to explain away past practice and findings, to consider reliance interests, and to reconcile stark inconsistencies between the Wind Directive and other contemporaneous actions. Second, Defendants misstate the law in claiming the States must show "there is *no* instance in which Defendants could temporarily suspend decision on a wind energy project approval 'consistent with applicable law.'" ECF 180 at 32. The States need only show that in *this* instance—based on the scant record proffered by Defendants—their indefinite, across-the-board suspensions are arbitrary, capricious, or contrary to law. The States have made that showing, and each Defendant's permitting halt should be vacated.

## ARGUMENT

### I.    The States Have Established Standing.

This Court already found the States demonstrated standing based not only on allegations, but also on "eminently rational" economic assumptions "backed up by concrete evidence in the form of declarations." *Massachusetts v. Trump*, No. 1:25-cv-11221, 2025 WL 1836592, at *8

(D. Mass. July 3, 2025) (ECF 162); *accord Diamond Alt. Energy*, *LLC v. EPA*, 145 S. Ct. 2121,

2138 (2025). The States have now bolstered that showing, *see* ECF 173 at 9–15 & ECF 174-1–31,

setting forth "by affidavit or other evidence 'specific facts'" that establish standing, *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56(e)). Defendants' unsupported

claims otherwise fail.

      As to injury, the States have established that each Defendant's continued pause on wind-

energy permitting creates an imminent and substantial risk of future harm to their concrete interests

stemming from delay or loss of specific projects—a standard Defendants altogether ignore. *See*

*Webb v. Injured Workers Pharm.*, 72 F.4th 365, 375 (1st Cir. 2023). Take the example that

Defendants invoke in attempting to show lack of imminence, ECF 180 at 13: the delay at least

until 2032 of delivery of SouthCoast Wind's 1,087 MW to Massachusetts. The pause *now* has

*already caused* the delay of those electrons to the grid by two years, and threatens additional

delays. ECF 174-5 [Brown] ¶¶ 15, 39–42, 54–55; ECF 174-20 [MA-Mahony] ¶¶ 34, 50–52, 58.

Indeed, since the States filed their motion for summary judgment, EPA informed SouthCoast that

due to the Wind Directive, it is further postponing decision on the project's Section 402 water

discharge permit by another year, until September 2026. *See* Supplemental Declaration of Michael

Brown ¶¶ 3–5. Similarly, the pause led the New York Public Service Commission to withdraw its

determination of need for—effectively canceling—a  transmission project that would have brought

thousands of MW of offshore-wind electricity into New York City by 2033 and substantial

production cost savings. ECF 174-30 [NY-Williams] ¶ 49. These and many other disruptions have

already caused and imminently risk further harms to the States. ECF 173 at 9–14.

      Defendants' claim that the States must show that "any particular wind project would be

authorized and completed but for" the pauses, ECF 180 at 12, repackages their redressability

argument—rejected at the dismissal stage—as precluding injury in fact. But Defendants have erected an insurmountable barrier to *every single* wind-energy project, an impediment that has caused, and imminently risks further, substantial harm to the States; removing that barrier will mitigate that risk. *See Massachusetts v. Trump*, 2025 WL 1836592, at *6 (citing, *e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)).

As to traceability, suspending wind-energy permitting is the cause of the States' harms. ECF 173 at 14–15. Defendants rehash a perplexing causal chain that—other than the admission that they are implementing the "temporary cessation directive," ECF 170 ¶ 142—is untethered to reality, *see* ECF 180 at 13; ECF 123 at 17, and gives short shrift to States' traditional role in determining their energy sources, *see Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190, 212 (1983). The States cannot replace overnight the planned electricity generation from wind energy projects, which take nearly a decade to permit and build. *See* ECF 173 at 10–11. Starting from scratch would yield significant capacity delays and associated harms, and the process of starting over would itself yield sovereign proprietary and regulatory harms. *See New Jersey v. EPA*, 989 F.3d 1038, 1045–49 (D.C. Cir. 2021). Indeed, due to geophysical or legal constraints, some States are simply unable to replace the pending wind-energy capacity with other resources like geothermal or nuclear. *E.g.*, ECF 174-20 [MA-Mahony] ¶¶ 54–55. And replacing wind energy's myriad benefits is more expensive and the process time- and resource- intensive for the States—three more cognizable harms. *Id.* ¶¶ 6, 39, 44–45, 56. Finally, the existence of state permitting programs and the fact that States are not permit recipients, ECF 180 at 13, does not defeat standing; the States' harms flow inexorably from Defendants' actions.

As to redressability, vacatur of the decisions to indefinitely pause all permitting will remove an insurmountable impediment to wind-energy development, remedying the States'

procedural harms and relieving the imminent risk of future harms. *See Massachusetts v. Trump*, 2025 WL 1836592, at *6; *accord FEC v. Akins*, 524 U.S. 11, 25 (1998) (redressability satisfied "even though the agency … might later, in the exercise of its lawful discretion, reach the same result for a different reason"); *see* ECF 70 at 21; ECF 144-1 at 4–5; ECF 173 at 14–15. "[C]ommonsense economic inferences about the operation of the" wind industry, along with concrete evidence before the Court, confirm that, once the pause is lifted, lawful permitting and progress toward development will resume. *Diamond Alternative Energy*, 145 S. Ct. at 2138; *see* ECF 174-5 [Brown] ¶¶ 56–57; ECF 55-2 [Wells] ¶ 17.

Defendants try a new tack on redressability, claiming the States' harms flow from unchallenged "specific downstream decisions to apply the Wind Directive to particular projects, not from Agency Defendants' categorical decision to follow the President's Wind Memo generally." ECF 180 at 15. Their own admissions refute their premise: Defendants already "determine[d] to follow the Wind Directive and temporarily cease wind energy permits and other authorizations pending completion of the Assessment and Review." ECF 180 at 24.[1] Delays to the SouthCoast and Atlantic Shores projects are but examples of the significant fallout from those operative decisions.[2] There is no distinct "downstream" application to remedy. ECF 180 at 15.

---

[1] *See, e.g.*, ECF 170, ¶ 142; ECF 173 at 7; ECF 123 at 32 (agencies "complying with temporary cessation"); ECF 123-1 [Stromberg] ¶ 6 & Exh. B (public notice memorializing pause on all BOEM approvals); ECF 123-2 [McElwain] ¶ 6 ("The Corps . . . does not intend to issue any permits until the comprehensive assessment discussed in Section 2(a) of the Presidential Memorandum is completed"); ECF 123-4 [Voyles] ¶ 5 (EPA "has not issued proposed actions for public comment or final actions"); ECF 123-5 [Maclin] ¶ 11 ("FWS has not issued any wind-related ESA Section 10 permits between January 20, 2025, and May 19, 2025"); ECF 123-6 [Ford] ¶ 9 ("[T]he Migratory Bird Program has temporarily paused issuance of permits to wind facilities, including all incidental take permits for bald and golden eagles.").

[2] Atlantic Shores' petition to vacate state project approval, "prompted by the federal government's withdrawal of the Clean Air Act permit based on the [Wind Directive]," ECF 174-

Finally, the States comfortably fit within the "zones-of-interest" of the laws under which their claims arise. *Contra id.* at 17–21. The standard for Administrative Procedure Act (APA) claims is "not meant to be especially demanding," and "the benefit of any doubt" on the relevant zone of interest "goes to the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quotation marks omitted). Thus, for example, in *Louisiana v. Biden,* the Court found that APA claims challenging a pause on oil and gas leasing were well within the zone of interests. 622 F. Supp. 3d 267, 290–91 (W.D. La. 2022). So too, here. The laws invoked by the States—many of the same laws at issue in *Louisiana*—concern the timeliness and the substance of permitting decisions, and they were clearly designed to benefit not only permittees but others that benefit from projects. The States' interests under the APA and other applicable laws arise from Defendants' duties under those laws' standards and timeframes. *See* ECF 173 at 24–29. Wind energy promotes the States' strong interests in procuring reliable and affordable energy generation while protecting public health and the environment, *see, e.g.*, ECF 174-30 [NY-Williams] ¶¶ 10–11 (discussing environmental review of New York's wind energy plan). But those goals cannot be achieved without Defendants' adherence to the standards and timeframes set forth in relevant law, like OCSLA's command that the Outer Continental Shelf be made "available for expeditious and orderly development," 43 U.S.C. § 1332(3), and the requirement that decisions on Clean Water Act Section 404 permits be made within 60 days, 33 C.F.R. § 325.2. As this Court recognized, plaintiffs "all seek to vindicate interests at least marginally related to the invoked statutes, which all have to do with some mix of environmental protection, responsible energy production, and expeditious land development." *Massachusetts v. Trump*, 2025 WL 1836592, at

---

24 (Perry) ¶¶ 48–53, has now been granted. BPU Docket No. QO21050824, Vacatur Order (Aug. 13, 2025), https://perma.cc/2YKT-W3T6.

*9. And the States have met their burden at this stage, *contra* ECF 180 at 18, by offering evidence detailing their significant interests impacted here, ECF 173 at 9–15 & ECF 174-1–31.

      *Seafreeze Shoreside, Inc. v. United States Department of the Interior* does not assist Defendants. 123 F.4th 1, 21 (1st Cir. 2024). *Contra* ECF 180 at 17–20. That court merely concluded that the interests protected under the Marine Mammal Protection Act were not germane to the plaintiffs' purpose of protecting commercial fishing. *Seafreeze,* 123 F.4th at 21. Defendants' attempt to distinguish *Louisiana*, ECF 180 at 20–21, fails because the court did not rest its zone-of-interests holding on the revenue-sharing purposes of relevant law. *See* 622 F. Supp. 3d at 290–91. And in finding injury-in-fact, the court also cited job losses and economic damage, *id.* at 285, injuries the States have shown here. The States have thus established standing.

## II.    The States Are Entitled to Summary Judgment.

      Defendants improperly collapse the arbitrary-or-capricious and contrary-to-law standards, ECF 180 at 26, and they meet neither one. Agency action is unlawful if it is *either* "arbitrary, capricious . . . *or* otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). The former requires that "agency action be reasonable and reasonably explained," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), while the latter considers "whether Congress has delegated to the agency the legal authority to take the action that is under dispute," *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001). In determining whether an agency acted unlawfully, it is the court's role "to decide whether the law means what the agency says;" the APA "prescribes no deferential standard for courts to employ." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quotation marks omitted); *contra* ECF 180 at 25. That unlawful action may be framed either as "exceeding . . . authority" or "exceeding authorized application," *see City of Arlington v. FCC*, 569 U.S. 290, 299 (2013), does not bear on the analytically distinct arbitrary-or-capricious standard, *Holland v. Apfel*, 23 F. Supp. 2d 21, 28 (D.D.C. 1998); *Vanda Pharms., Inc. v. FDA*,

766 F. Supp. 3d 85, 94 (D.D.C. 2025). Under these principles, the States should prevail.

A.    **The States Challenge Reviewable Final Agency Actions.**

Defendants now "agree that the challenged agency action . . . is the consummation" of their decision making. ECF 180 at 23. And their actions have obvious legal consequences, denying every wind-energy project (and its beneficiaries) the legal right to timely permitting decisions and, on the flip side, lifting Defendants' legal obligations to timely issue those decisions. *See Massachusetts v. Trump*, 2025 WL 1836592, at *10. Nothing has changed since this Court held that Defendants' pauses "constitutes final agency action," *Massachusetts v. Trump*, 2025 WL 1836592, at *11, beyond further admissions that the pauses exist, *e.g.*, ECF 170 ¶ 142.

Defendants hide the ball with various claims that the States have not challenged the legally consequential action. First, they argue, without support, that their pauses cannot be challenged because each was mandated by the Wind Directive. ECF 180 at 21–22. But "neither the Supreme Court nor any Court of Appeals has ever 'excepted a final rule from APA review because it carried out a presidential directive.'" *Orr v. Trump*, No. 1:25-cv-10313, 2025 WL 1145271, at *15 (D. Mass. Apr. 18, 2025) (citing *State v. Su*, 121 F.4th 1, 15 (9th Cir. 2024)). To do so "would allow the President and agencies to simply reframe agency action as orders or directives originating from the President to avoid APA review." *AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*, 766 F. Supp. 3d 74, 83 (D.D.C. 2025); *see also New York v. Trump*, 133 F.4th 51, 70 n.17 (1st Cir. 2025) (rejecting claim that agency directive was unreviewable because it implemented executive orders). Defendants cannot hide behind the President to evade APA review.

Second, Defendants claim that their pause has not had even a single legal consequence and is "merely a matter of internal agency process and procedure." ECF 180 at 23–24. But, as described above, the pause plainly amounts to "a kind of de facto suspension of the law"—with legal consequences for permittees and permitters alike. *Massachusetts v. Trump*, 2025 WL 1836592, at

7

*11. Indeed, in *Louisiana*, the court wrote that "[t]here [was] no real question that" the federal pause on energy approvals had legal consequences. 622 F. Supp. 3d at 291–92; *see also Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 336 (E.D. La. 2011) ("[A]gency delay in issuing or denying a [deepwater-drilling] permit, or the failure to act at all, is a final agency action made reviewable by the APA."). Here again Defendants point to supposed "downstream application" as the source of "legal consequences." *See* ECF 180 at 24; *see also id.* at 23 n.11. As already explained, however, the States challenged the operative agency actions: Agency Defendants' decisions to adopt and implement the pause on all permitting. *Supra* note 1. Plaintiffs could challenge particular permit delays, but, as this Court has found, they also can challenge the categorical pauses as discrete agency actions. *Massachusetts v. Trump*, 2025 WL 1836592, at *11.

Third, despite conceding consummation, Defendants again assert that final agency action can only exist once an ultimate permit decision is made. ECF 180 at 23. But that underscores the States' point: no permit decision can be made, and that is because of the action challenged here. As this Court recognized, ample case law "support[s] the proposition that significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate." *Massachusetts v. Trump*, 2025 WL 1836592, at *10. "[A]fter all, could an indefinite 'pause' on all agency action whatsoever be construed as intermediate and thus unreviewable?" *Id.*; *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601–02 (2016) ("The mere fact that permitting decisions are reviewable should not suffice to support an implication of exclusion as to other agency actions . . . ." (cleaned up)).

The cases invoked by Defendants are inapposite. *See* ECF 180 at 23–24. *Pennsylvania Municipal Authorities Association v. Horinko* dismissed a challenge to guidance documents because they were nonbinding, had not been adopted by the EPA Administrator, and did not

constitute final agency action. 292 F. Supp. 2d 95, 105 (D.D.C. 2003). Here, by contrast, Defendants admit to deciding to implement the Wind Directive categorically, across each agency, nationwide, and without requiring further sign-off. ECF 170 ¶ 142; ECF 180 at 21. In *Shawnee Trail Conservancy v. Nicholas*, a challenge to an agency process for revising a land-management plan pursuant to court order, plaintiffs "essentially admit[ted]" there was no final agency action "by failing to argue in their summary judgment motion that [APA] § 706(2) provides the correct standard of review." 343 F. Supp. 2d 687, 701 (S.D. Ill. 2004). In *Marquette County Road Commissioner v. EPA*, the court deemed EPA and the Corps's handling of a Section 404 permit application nonfinal because they had not consummated decision-making (unlike Defendants' admission here), not for want of legal consequences. 726 Fed. App'x 461, 468 (6th Cir. 2018).

Finally, Defendants repeat their failed argument that the States are "trying to challenge the lack of agency action" and should have brought a flood of individual claims under APA Section 706(1). ECF 180 at 24 (emphasis omitted). But that is not what the States are challenging, and those are not the claims they brought. The States' Section 706(2) challenge is to each Defendant's discrete and final agency action pausing wind-energy permitting. And the States, as plaintiffs, "determine in the first instance what law they will rely upon." *Thompson v. Evolve Bank & Trust*, 728 F. Supp. 3d 202, 205 (D. Mass. 2024) (cleaned up). Defendants cannot rewrite the States' complaint into one (or many ones) they would rather defend.

## B. Defendants' Halts on Wind-Energy Permitting Are Arbitrary and Capricious.

The States have demonstrated that each Defendant wholly failed to explain its categorical pause on wind-energy permitting, to justify its abrupt reversal from past permitting practices, findings, and support for wind energy, to account for the States' serious reliance interests, and to reconcile inconsistent Executive actions. ECF 173 at 17–23. At the summary judgment stage, Defendants still "do not meaningfully contest the substance of the Plaintiff States' arbitrary-or-

9

capricious claim." *Massachusetts v. Trump*, 2025 WL 1836592, at *13.

Instead, Defendants primarily hide behind the Wind Directive. ECF 180 at 26. But just as the Wind Directive does not render their decisions nonfinal, "the existence of an executive [mandate] does not automatically render an agency's implementing actions adequately reasoned." *Drs. for Am. v. Off. of Pers. Mgmt.*, No. 1:25-00322, 2025 WL 1836009, at *19 (D.D.C. July 3, 2025). "[F]urthering the President's wishes cannot be a blank check for the Agencies to do as they please." *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 472 (D.R.I. 2025) (quotation marks omitted). Were it otherwise, "the President could unilaterally eviscerate the judicial oversight that Congress contemplated in passing the APA." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health,* No. 1:25-cv-10787, 2025 WL 1822487, at *18 (D. Mass. July 2, 2025) (quotation marks omitted).

Nor does the Wind Directive supply the requisite reasoned basis. ECF 180 at 26–27. Its vague statements about "*alleged* . . . deficiencies" and "*potential* inadequacies" provide no specifics or support. 90 Fed. Reg. 8363 (Jan. 29, 2025) (emphases added). And, contrary to the vague concerns gestured at in the Wind Directive, courts have repeatedly rejected claims that wind-energy reviews were legally deficient. ECF 173 at 5–6 n.9 (citing cases). The President's "concerns" are of far less than "ideal clarity," ECF 180 at 27 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freights Sys., Inc.*, 419 U.S. 281, 286 (1974)), and not the reasoned, supported explanation the APA demands, *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

As to the States' remaining claims, Defendants fail to explain their departure from past policies, findings, and years of federal support for the wind-energy industry, including in the first Trump administration. ECF 173 at 19–20. They blithely wave at the President's "findings," ECF 180 at 26–27, but the President made no findings, much less supported ones. Defendants also

offer no argument regarding their failures to consider the States' serious reliance interests, ECF 173 at 20–21, or to address the Wind Directive's internal inconsistencies and conflicts with executive actions promoting other domestic-energy sources, ECF 173 at 21–23. Their actions are thus arbitrary and capricious and should be set aside.

### C.    Defendants' Actions Are Contrary to Law.

The States have demonstrated that each Defendant's categorical pause on all wind-energy permitting disregarded all relevant standards and process under numerous laws governing wind-energy permitting. *See* ECF 173 at 23–29. Those extra-statutory pauses are per se unreasonable—and thus unlawful—under the APA. *See e.g.*, 5 U.S.C. § 558(c) (agency to respond to application "within a reasonable time"); *see also id.* § 555(b) (decision required "within a reasonable time"). Defendants' rebuttal rests, again, on the Wind Directive and on their supposed discretionary authority, the "third scenario" they hypothesize. Neither claim persuades.

First, Defendants' actions are not insulated from review merely because the Wind Directive purportedly "required" them to act. ECF 180 at 21. The President cannot direct agencies to act "in a manner inconsistent with congressional mandates." *Trump v. Am. Fed'n of Gov't Emps.* (*AFGE*), 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring); *see Kendall v. United States*, 37 U.S. 524, 610 (1838) (Congress may "impose upon any executive officer any duty [it] may think proper … and in such cases, the duty and responsibility grow out of and are subject to the control of the law, and not to the direction of the President.").

Nor can Defendants take cover in the Wind Directive's so-called savings clause. ECF 180 at 3, 33 (quoting 90 Fed. Reg. 8363). The President's instruction to act "consistent with applicable law" is not proof that Defendants have done so, where the command they implemented directs unlawful action. *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 775 (7th Cir. 2019) ("The Supreme Court has long instructed that acts 'cannot be held to destroy [themselves]' through saving

clauses." (citation omitted)). Indeed, "[i]f 'consistent with law' precludes a court from examining whether [agency action] is consistent with law, judicial review is a meaningless exercise." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018). Here, the record and Defendants' admissions, *supra* note 1, reflect that they have decided to implement a categorical, indefinite pause on all wind-energy permitting, tacitly conceding that they have determined the Wind Directive is, in *every* application, consistent with applicable law. With each agency's across-the-board pause, they have cast aside—rather than acted consistent with—all such laws.

*AFGE* does not counsel otherwise. ECF 180 at 33. There, the plaintiffs challenged executive actions directing agencies to plan for reductions in force. In concurring in the grant of a stay, Justice Sotomayor stressed that "[t]he plans themselves are not before this Court, at this stage, and we thus have no occasion to consider whether they can and will be carried out consistent with the constraints of law." 145 S. Ct. at 2635 (Sotomayor, concurring). Here, by contrast, Defendants have already acted on the Wind Directive; the "plans themselves"—the across-the-board decisions to pause all permitting—are before this Court; and the States have shown those plans cannot be executed consistent with law.

Second, Defendants again attempt to kick the can to supposed downstream application, speculating that because they supposedly *could* have lawfully exercised discretion to temporarily pause individual permit proceedings for *some* reason, the Court cannot stop them from acting unlawfully here. That claim falls with their concessions that they have already paused all wind-energy permitting, across the board, pursuant only to the Wind Directive, *supra* note 1; any individual permit delay resulting from those decisions is plainly *not* the result of a lawful exercise of their "reasonable" discretion. ECF 180 at 28–32. Indeed, Defendants can point to nothing in their scant record to support such a contention. And to the extent Defendants suggest that they are

exercising discretion for reasons not apparent from the administrative record (*i.e.*, their posited "third scenario," ECF 180 at 28), this Court should reject the claim as impermissible post hoc rationalization. *See Biden v. Texas*, 597 U.S. 785, 810–11 (2022) ("[T]he bar on *post hoc* rationalization operates to ensure that the agency's supplemental explanation is anchored to 'the grounds that the agency invoked when it took the action.'").

Defendants' tortured hunt for discretion in Clean Water Act Section 404 underscores their extreme position: Congress and the Corps itself clearly directed prompt 404 permitting. *E.*g., 33 U.S.C. § 1344(q) (agencies "shall" collaborate to "minimize . . . delays" in permit issuance and "assure that, to the maximum extent practicable" decisions are reached "not later than" 90 days after notice of complete permit application); 33 C.F.R. § 325.2(d)(3) (Corps district engineer "will decide on all applications not later than 60 days after receipt of a complete application"). The Corps now claims transitive discretion to cast aside these firm directives in *every* instance under a narrow regulatory exemption applicable only if the district engineer needs additional information. How? Because, Defendants posit, district engineers hypothetically *could* need information from *other* agencies that have paused relevant permitting or reviews pursuant to the Wind Directive. ECF 180 at 32 (if agencies "lawfully suspend[] [their] activities . . . then that agency's suspension effectively transfers to the Corps"). In other words, "so long as Congress has left at least one wind energy authorization deadline to the discretion of an agency, that agency may determine that deadline can be temporarily suspended"—for any reason or no reason at all—and all of the other Defendants can use that initial delay to justify their own permitting moratoria. ECF 180 at 28. That is a slim reed indeed, and it is not the law. *Cf. Avenal Power Ctr., LLC v. EPA*, 787 F. Supp. 2d 1, 3 (D.D.C. 2011) (EPA could not override "clear and unambiguous" one-year permitting requirement, notwithstanding discretion "as to the procedural process that an applicant had to

comply with during that one-year period"). The States need only show, and have shown, that in *this* instance—based on Defendants' admissions and scant administrative record—that their decisions lack the "reasonable[ness]" the law requires. 5 U.S.C. §§ 555(b), 558(c).

## III.    Vacatur Is the Appropriate Remedy.

Defendants urge that any vacatur be "limited," *see* ECF 180 at 38-40, but the APA authorizes courts to "hold unlawful and set aside" agency action, 5 U.S.C. § 706(2), *i.e.*, "the whole or a part of an agency rule." 5 U.S.C. § 551(13). "Vacatur is the normal remedy when a rule is found unlawful." *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1342 (D.C. Cir. 2023) (quotation marks omitted);[3] *see* T. Elliot Gaiser, et al., *The Truth of Erasure: Universal Remedies for Universal Agency Actions*, U. Chi. L. Rev. Online *1, *15, *17 (2024) (APA vacatur "acts against agency action itself" and applies "universally"). Courts in this Circuit have consistently invalidated unlawful agency actions, rendering those actions inapplicable to *anyone*, not just the litigating parties.[4] That makes sense: the "limited vacatur" Defendants request would be plainly "unworkable" here and "taken to its logical extreme . . . require a profusion of actions to assure that [the vacated] Rule was never applied." *N.Y. Legal Assistance Grp. v. Cardona*, No. 1:20-cv-01414, 2025 WL 871371, at *4 (S.D.N.Y. Mar. 20, 2025) (quotation marks omitted); *see also Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025) ("It would be

---

[3] *Accord, e.g.*, *Custom Commc'ns, Inc. v. FTC*, 142 F.4th 1060, 1074 (8th Cir. 2025); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 317 (11th Cir. 2025); *Texas Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 779 (5th Cir. 2024); *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

[4] *E.g.*, *Victim Rts. L. Ctr. v. Cardona*, No. 1:20-cv-11104, 2021 WL 3516475, at *1 (D. Mass. Aug. 10, 2021); *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, No. 1:25-cv-11231, 2025 WL 1725857, at *20 (D. Mass. June 20, 2025); *Massachusetts v. Nat'l Insts. of Health*, No. 1:25-cv-10338, 2025 WL 1063760, at *2 (D. Mass. Apr. 4, 2025). The Supreme Court has not held otherwise. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at **8 n.10 (U.S. June 27, 2025).

anathema to reasonable jurisprudence that only the named Plaintiffs should be protected from the irreparable harms of an unlawful regulation."). It is not possible to limit vacatur of agency actions "in an intellectually honest manner . . . as to one state, one district, or one party." *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1112, 1183 (D.N.M. 2018).

Finally, even were "limited vacatur" available (it is not), ECF 180 at 38–39, the States have demonstrated significant harms from Defendants' actions. *See* ECF 173 at 9–15 & ECF 174-1–31. Thus, the States have established standing sufficient to enforce a vacatur order here.

## CONCLUSION

The Court should grant the States' Motion for Summary Judgment, deny Defendants' Cross-Motion for Summary Judgment, and vacate Defendants' decisions to pause all wind-energy permitting pursuant to the Wind Directive.

Respectfully submitted,                          Dated: August 22, 2025

**LETITIA JAMES**
  *Attorney General of New York*

By: */s/ Michael J. Myers*
Michael J. Myers*
  *Senior Counsel*
Laura Mirman-Heslin*
Rene F. Hertzog*
Joya C. Sonnenfeldt*
  *Assistant Attorneys General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2382
Michael.Myers@ag.ny.gov

*Counsel for the State of New York*

**ANDREA JOY CAMPBELL**
  *Attorney General of Massachusetts*

By: */s/ Turner H. Smith*
Turner H. Smith, BBO No. 684750
  *Assistant Attorney General & Deputy Chief*
Nathaniel Haviland-Markowitz, BBO No. 713940
  *Assistant Attorney General*
Jonathan Whitney, BBO No. 694760
  *Special Assistant Attorney General*
Energy and Environment Bureau
Office of the Attorney General
1 Ashburton Pl.
Boston, MA  02108
(617) 963-2277
Turner.Smith@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KRISTIN K. MAYES**
  *Attorney General of Arizona*

By: */s/ Mary M. Curtin*
Mary M. Curtin*
  *Senior Litigation Counsel*
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Mary.Curtin@azag.gov

*Counsel for the State of Arizona*

**ROB BONTA**
  *Attorney General of California*

By: */s/ Kate M. Hammond*
Kate M. Hammond*
  *Deputy Attorney General*
Jamie Jefferson*
  *Deputy Attorney General*
Vanessa Morrison*
  *Supervising Deputy Attorney General*
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6531
Kate.Hammond@doj.ca.gov
Jamie.Jefferson@doj.ca.gov
Vanessa.Morrison@doj.ca.gov

*Counsel for the State of California*

**PHILIP J. WEISER**
  *Attorney General of Colorado*

By: */s/ Carrie Noteboom*
Carrie Noteboom*
  *Assistant Deputy Attorney General*
Jessica L. Lowrey*
  *First Assistant Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203
(720) 508-6288 (Noteboom)
(720) 508-6167 (Lowrey)
Carrie.Noteboom@coag.gov
Jessica.Lowrey@coag.gov
FAX: (720) 508-6040

*Counsel for the State of Colorado*

**WILLIAM TONG**
  *Attorney General of Connecticut*

By: */s/ Jill Lacedonia*
Jill Lacedonia*
  *Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

*Counsel for the State of Connecticut*

**KATHLEEN JENNINGS**
  *Attorney General of Delaware*

By: */s/ Ian R. Liston*
Ian R. Liston*
  *Director of Impact Litigation*
Vanessa L. Kassab*
  *Deputy Attorney General*
Ralph Durstein III*
  *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov

*Counsel for the State of Delaware*

**KWAME RAOUL**
  *Attorney General of Illinois*

By: */s/ Jason E. James*
Jason E. James*
  *Assistant Attorney General*
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
Jason.James@ilag.gov

*Counsel for the State of Illinois*

**BRIAN L. SCHWALB**
  *Attorney General of the District of Columbia*

By: */s/ Estefania Y. Torres Paez*
Estefania Y. Torres Paez, BBO No. 705952
  *Assistant Attorney General*
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
Estefania.TorresPaez@dc.gov

*Counsel for the District of Columbia*

**AARON M. FREY**
  *Attorney General of Maine*

By: */s/ Caleb E. Elwell*
Caleb E. Elwell*
  *Assistant Attorney General*
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.Elwell@maine.gov

*Counsel for the State of Maine*

**ANTHONY G. BROWN**
   *Attorney General of Maryland*

By: */s/ Steven J. Goldstein*
Steven J. Goldstein*
   *Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Counsel for the State of Maryland*


**KEITH ELLISON**
   *Attorney General for the State of*
   *Minnesota*

By: */s/* Catherine Rios-Keating
Catherine Rios-Keating*
   *Special Assistant Attorney General*
Environmental and Natural
Resources Division
445 Minnesota Street, Suite 1800
Saint Paul, MN 55101
(651) 300-7302
Catherine.Rios-Keating@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

**RAÚL TORREZ**
   *Attorney General of New Mexico*

By: */s/ William Grantham*
William Grantham*
   *Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 717-3520
wgrantham@nmdoj.gov

*Counsel for the State of New Mexico*

**DANA NESSEL**
   *Attorney General of Michigan*

By: */s/ Lucas Wollenzien*
Lucas Wollenzien*
Michael Moody*
   *Assistant Attorneys General*
Michigan Department of Attorney General
P.O. Box 30755
Lansing, MI 48909
(517) 335-7627
WollenzienL@michigan.gov
Moodym2@michigan.gov

*Counsel for the People of the State of Michigan*


**MATTHEW J. PLATKIN**
   *Attorney General for the State of New Jersey*

By: */s/ Terel L. Klein*
Terel L. Klein*
   *Deputy Attorney General*
Office of the Attorney General
25 Market Street, 7th Floor
Trenton, NJ 08625
(609) 376-2818
Terel.Klein@law.njoag.gov

*Counsel for the State of New Jersey*


**DAN RAYFIELD**
   *Attorney General of Oregon*

By: */s/ Paul Garrahan*
Paul Garrahan*
   *Attorney-in-Charge*
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

*Counsel for the State of Oregon*

**PETER F. NERONHA**
  *Attorney General of Rhode Island*


By: */s/ Nicholas M. Vaz*
Nicholas M. Vaz, BBO No. 693629
  *Special Assistant Attorney General*
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov


*Counsel for the State of Rhode Island*

**NICHOLAS W. BROWN**
  *Attorney General of Washington*


By: */s/ Yuriy Korol*
Yuriy Korol*
  *Assistant Attorney General*
Washington Attorney General's Office
Environmental Protection Division
800 5th Ave Ste. 2000 TB-14
Seattle, WA 98104-3188
(206) 332-7098
Yuriy.Korol@atg.wa.gov


*Counsel for the State of Washington*

*\*admitted pro hac vice*

## CERTIFICATE OF SERVICE & RULE 7.1 CERTIFICATION

I, Jon Whitney, certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing. Parties may access this filing through the Court's electronic system. I further certify that counsel for Plaintiffs conferred with counsel for Defendants prior to the filing of cross-motions for summary judgment and understand that Defendants intend to oppose the Plaintiffs' motion for summary judgment in accordance with the schedule agreed to by the parties.

**/s/ Jon Whitney**
Jon Whitney